1 | **GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
2 | James A. Lowe (SBN 214383)
18400 Von Karman, Suite 300
3 | Irvine, California 92612
Telephone: (949) 553-1010
4 | Facsimile: (949) 553-2050
jal@gauntlettlaw.com
5 | ams@gauntlettlaw.com

6 | Attorneys for Plaintiff
STREET SURFING, LLC

7

8

9 | **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
10 | **SOUTHERN DIVISION**

11

12 | STREET SURFING, LLC, a Nevada limited )  Case No.:  SACV11-01027AG(ANx)
liability company,                     )
13 |                                        )
                 Plaintiff,             )
14 |                                        )
        vs.                             )  **COMPLAINT FOR**
15 |                                        )  **DECLARATORY RELIEF**
GREAT AMERICAN E&S INSURANCE            )  **ON DEFENDANT'S DUTY TO**
16 | COMPANY, a Delaware corporation,       )  **DEFEND AND DUTY TO SETTLE**
                                        )
17 |                 Defendant.             )
                                        )
18 | ─────────────────────────────────── )

19

20

21

22

23

24

25

26

27

28

170876.2-10580-001-7/11/2011                                        **COMPLAINT**

In this insurance coverage case Plaintiff Street Surfing, LLC ("Street Surfing") seeks a declaratory judgment that its general liability insurer, Defendant Great American E&S Insurance Company ("Great American") had a duty to defend and pay policy benefits in an action against Street Surfing styled *Rhyn Noll v. Street Surfing, LLC, et al.*, USDC, C.D. Cal., Case No. SACV08-00617 ("*Noll* action"). This includes reimbursement of the reasonable sums required to settle the *Noll* action following Great American's repeated refusal to defend Street Surfing in the *Noll* action.  The *Noll* action alleged, *inter alia*, that Street Surfing's use of its logo on skateboards and related products constituted unfair competition and false designation of origin likely to cause confusion and damage the *Noll* plaintiff. The *Noll* allegations potentially fall within the Great American "personal and advertising injury" policy offenses of "the use of another's advertising idea in your 'advertisement' " and "infringing upon another's copyright, trade dress or slogan in your 'advertisement.' " The underlying *Noll* plaintiff sought damages from Street Surfing. Great American was obligated to provide a defense to Street Surfing for the *Noll* Complaint and settle the case.

### THE PARTIES

1.    Plaintiff Street Surfing, LLC is a limited liability company organized under the laws of the State of Nevada with its principal place of business in Irvine, California. Street Surfing is a citizen of California.

2.    On information and belief, Defendant Great American E&S Insurance Company is a Delaware corporation with its principal place of business in Cincinnati, Ohio.  Street Surfing alleges that Great American is a citizen of Ohio.

### JURISDICTION

3.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is

complete diversity of citizenship between Street Surfing and Great American and there is more than $75,000 is in controversy in this action.

## VENUE AND APPLICABLE LAW

4.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(a)(c) in that the underlying suit for which Street Surfing seeks defense was filed in this District and Great American owed its insured a defense in this District.

5.     Great American does, on information and belief, sell insurance in California and defend lawsuits in California, including in this District.

6.     Great American sold and issued its insurance policy to Street Surfing in this District.

7.     This District is the place of performance under the policy and California law governs Great American's obligations to Street Surfing.

## THE GREAT AMERICAN POLICIES

8.     Great American issued to Street Surfing, as the named insured, a primary Businesspro general liability policy number PL 3791711 for the period August 22, 2005 through August 22, 2006 to Street Surfing.  It renewed the policy for the period September 22, 2006 through September 22, 2007, under policy number PL 3791711-02 ("Policies").  The Policies provide indemnity for "personal and advertising injury" caused by an offense committed during the policy period and promise a defense of suits that potentially seek those types of damages.  Copies of the Policies are attached as **Exhibits "1"** and **"2."**

9.     The Commercial General Liability Coverage Form and Advertising Injury Amendment of the Great American Policies state in pertinent part:

**COVERAGE B.   PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.      Insuring Agreement**

   a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. . . .

. . . .

1.      "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. . . .

. . . .

14.      "Personal and advertising injury" means injury . . . arising out of one or more of the following offenses:

   . . . .

   f.      the use of another's advertising idea in your "advertisement" . . . .

   g.      infringing upon another's copyright, trade dress or slogan in your "advertisement."

. . . .

2.      **Exclusions**

This insurance does not apply to:

   . . . .

   i.      **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade

secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your advertisement, of copyright, trade dress or slogan.

. . . .

Advertising Injury Amendment

This insurance does not apply to "advertising injury" arising out of any actual or alleged infringement of intellectual property rights or violation of laws relating to patents, trademarks, trade dress, trade names, trade secret and know-how.

## THE UNDERLYING *NOLL* ACTION

10.   Rhyn Noll initiated the *Noll* action by filing a complaint (the "Complaint") on June 3, 2008 in this District against Street Surfing. A copy of the *Noll* Complaint is attached as **Exhibit "3."**

11.   Noll filed a first amended complaint in the *Noll* action on September 12, 2008 and a second amended complaint on January 12, 2009.

12.   The *Noll* Complaint alleged that Street Surfing's use of the slogan and advertising idea "street surfing" in its advertisements, allegedly infringed the underlying plaintiff's "streetsurfer" advertising idea and slogan, constituting unfair competition and false designation of origin.

13.   The *Noll* Complaint sought damages as a result of Street Surfing's alleged use and infringement of the "street surfing" slogan in its advertisements.

14.   The *Noll* Complaint alleged in pertinent part:

13.   Plaintiff is a skateboard manufacturer who, since at

least 1994, has manufactured and sold skateboards, and skateboard accessories, including riser pads, wheels and clothing, under the trademark STREETSURFER.

. . . .

15.   Defendant   STREET   SURFING,   along   with Defendants Does 1 through 10, manufacture, **advertise** and sell a wheeled skateboard-like device bearing the word mark **"Street Surfing."**

. . . .

18.   Defendants' manufacture, **advertising** and sale of product bearing the **"Street Surfing" name in confusingly similar to Plaintiff's STREETSURFER** mark and is likely to cause and have caused confusion, mistake, or deception.

19. On information and belief Plaintiffs allege that since at least on or about January of 2005, or such other date as may be later determined, Defendants, and each of them, have been offering for sale, selling, distributing or **advertising wheeled skateboard devices in the United States using the "Street Surfing"** name including on the skateboards and **in advertising** for such skateboards.

20. In addition, on information and belief Plaintiffs allege that since at least on or about January of 2005, or such other date as may be later determined, Defendants have been offering for sale, selling, distributing, **advertising** or exporting from the United States to other countries, including those in Europe, Asia and Africa, **boards using**

the **"Street Surfing" and in advertising** for such boards.

. . . .

24. Defendants have been selling, offering for sale, distributing, or **advertising** skateboards and related **products using the "Street Surfing" logo** in commerce within the United States in a manner which is likely to cause confusion, mistake, or to deceive.

. . . .

26. Defendants have been **applying the "Street Surfing" logo**, to skateboards and related products and **in advertisements** intended to be used in commerce within the United States in connection with the sale, offering for sale, distribution, or advertising of their infringing products in a manner which use is likely to cause confusion, mistake, or to deceive.

27. Defendants, by **applying their "Street Surfing" logo, to** skateboards and **advertisements** used in international commerce including countries in Europe, Asia and Africa, have engaged in acts of American foreign commerce in a manner which is likely to cause confusion, mistake, or to deceive, which is sufficiently great to cause a direct and cognizable injury to Plaintiff. . . .

28.   **As a result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damage** to his business, including diversion of trade, loss of income and profits, and a dilution of the value of his rights in an amount

to be proven at trial.

. . . .

30.    Plaintiff has suffered and will suffer . . . due to the infringing conduct of Defendants unless Defendants are permanently enjoined from continuing such conduct, including in particular . . . **advertising** of their infringing skateboards or related products in commerce within the United States . . . **advertising** or export of their infringing skateboards and related products to other countries . . . and . . . **advertising** or export of their infringing skateboards and related products on their web site.

. . . .

## SECOND CLAIM FOR RELIEF
## UNFAIR COMPETITION AND FALSE
## DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

. . . .

33. Defendants' conduct with respect to **the use of the "Street Surfing" logo** on skateboards and related products, as alleged, constitutes a use **in commerce** within the United States of a symbol or false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' products or commercial activities by Plaintiff.

. . . .

35. **As a result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damage** to his business including diversion of trade, loss of income and

profits, and a dilution of the value of their rights in an amount to be proven at trial.

. . . .

42.    Defendants have been **applying their "Street Surfing" logo on** skateboards and related products and in **advertisements** intended to be used in connection with the sale, offering for sale, distribution, or **advertising** of their infringing products in California in a manner which is likely to cause confusion, mistake, or to deceive.

43.    **As a result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damage** to his business including diversion of trade, loss of income and profits, and a dilution of the value of his rights in an amount to be proven at trial.

(emphasis added).

15.    The alleged wrongful conduct by Street Surfing allegedly occurred within Great American 2005 and 2006 policy periods.

## STREET SURFING'S REQUEST FOR DEFENSE AND GREAT AMERICAN'S REFUSAL

16.    Street Surfing provided notice of the *Noll* action in September 2008.

17.    In response to Street Surfing's notice, Great American denied coverage on October 17, 2008. A copy of the denial letter is attached as **Exhibit "4."**

18.    Great American's denial letter stated:

Great American E&S Insurance Company ("Great American") has received and reviewed your tender (on behalf of Street Surfing, LLC) of the <u>Noll</u> action. The Noll

1  action is a trademark infringement lawsuit, with an
2  additional claim for unfair competition and unfair trade
3  practices relating to the infringement.

4   Great American has determined that no coverage is
5  afforded to Street Surfing, LLC for the <u>Noll</u> action under the
6  Great American Policy No. PL 3791711-02. Great American
7  therefore respectfully denies your tender of that lawsuit.

8  . . . .

9

10 **D. <u>"Use of Another's Advertising Idea In Your</u>**
11 **<u>'Advertisement'"</u>.**

12  The "personal and advertising injury" "offense" of
13 "use of another's advertising idea in your 'advertisement'"
14 may be alleged in the <u>Noll</u> action. The Complaint alleges
15 that the defendants infringed on plaintiff's registered
16 trademark ("Street surfer") by using the confusingly similar
17 name "Street Surfing." The Complaint also alleges that this
18 conduct constitutes a "false designation of origin." The
19 Complaint further alleges that the defendants used their
20 infringing mark ("Street Surfing") in advertisements. **Great**
21 **American acknowledges, without admitting, that this**
22 **may constitute a potential "offense" of "use of another's**
23 **advertising idea in your 'advertisement'."**

24  However, as noted above, the two trademark
25 infringement exclusions exclude coverage for this "offense."

26

27 **E. <u>"Infringing Upon Another's Copyright, Trade</u>**
28 **<u>Dress Or Slogan In Your 'Advertisement'"</u>.**

The <u>Noll</u> action does not allege the "offense" of "infringing upon another's copyright, trade dress or slogan in your 'advertisement'."

The <u>Noll</u> action does not allege infringement upon plaintiffs copyright(s) or slogan(s) in an advertisement. The name "Street surfer" was a registered trademark, not a copyright, and the <u>Noll</u> action alleges trademark infringement, not copyright infringement. Also, the <u>Noll</u> action does not allege infringement upon any "slogan" of the plaintiffs.

In addition, the <u>Noll</u> action does not allege infringement of plaintiffs "trade dress." There are no allegations of infringement of plaintiff's packaging, or of the overall look of the plaintiff's skateboard. Instead, the <u>Noll</u> action alleges that the defendants infringed on plaintiffs trademark – its registered name of "Street surfer." (emphasis added).

19.   Street Surfing sought reconsideration of Great American's denial and also informed it of its settlement obligations in a letter dated December 1, 2008.  A copy of the letter is attached as **Exhibit "5."**

20.   Great American reaffirmed its denial by letter dated December 17, 2008.  A copy of the letter is attached as **Exhibit "6."**

## NO EXCLUSIONS BAR COVERAGE

21.   Great American's policy benefits to Street Surfing is not barred by the exclusion for infringement of copyright, patent, trademark and trade secret (the "intellectual property exclusion").

22.   Great American's policy benefits to Street Surfing is not barred by the

Advertising Injury Amendment Endorsement .

23.   Damages allegedly suffered by the underlying *Noll* plaintiff, in addition to or as an alternative to damages for trademark infringement, are as a result of Street Surfing's alleged use of the "Street Surfing" advertising idea and infringement of a slogan in its advertisements.  Such damages did not arise out of the infringement of any intellectual property rights excluded by the Great American Policies' intellectual property exclusion or Advertising Injury Amendment.

## SETTLEMENT OF THE UNDERLYING *NOLL* ACTION

24.   In December 2009, Street Surfing settled the *Noll* action.

25.   At the time of settlement, Street Surfing reported significant sales figures for the wave skateboard and related products in which it used the underlying plaintiff's claimed advertising idea of a street surfer.

26.   According to Street Surfing's underlying counsel had the case proceeded to trial, the *Noll* court could apply a reasonable royalty percent of sales as a measure of damages.

27.   Street Surfing's exposure thus could have easily exceeded a million dollars plus underlying plaintiff's attorney fees.

28.   Street Surfing's settlement was reasonable in light of Street Surfing's exposure in the underlying action.

29.   Street Surfing's settlement was also reasonable in light of the substantial additional defense expenses that would have been incurred had the *Noll* action proceeded to trial.

## FIRST CAUSE OF ACTION
### Declaratory Relief – Duty to Defend

30.   Street Surfing incorporates the allegations in the above paragraphs of this

Complaint as though fully alleged herein.

31.   Valid contracts existed between Street Surfing and Great American, namely the Great American Policies.

32.   Street Surfing fully performed all of the obligations and conditions to be performed by it under the Great American Policies or has been excused from performing same as a result of Great American's breach of its duty to defend.

33.   By selling the Great American Policies, Great American agreed to provide a defense for suits seeking damages for "personal and advertising injury" offenses as defined in its Policies.

34.   The underlying *Noll* allegations potentially allege facts implicating coverage under Great American's general liability policy as "personal and advertising injury" thereby triggering Great American's obligation to defend Street Surfing from that action.

35.   Great American has wrongfully denied coverage and the potential for coverage of the *Noll* action under its Policies benefiting Street Surfing.

36.   An actual bona fide controversy exists between Street Surfing, on the one hand, and Great American, on the other, that requires judicial declaration by this Court of the parties' rights and duties regarding the potential for coverage under the Great American Policies, Great American's duty to defend Street Surfing in the *Noll* action, and the amount of defense expenses owed by Great American.

## SECOND CAUSE OF ACTION
### Declaratory Relief – Duty to Settle and Reimburse Settlement Payments

37.   Street Surfing incorporates the allegations in the above paragraphs of this Complaint as though fully alleged herein.

38.   Valid contracts existed between Street Surfing and Great American, namely the Great American Policies.

39.     The *Noll* action was settled between Street Surfing and the underlying plaintiffs.

40.     Great American had a duty to settle the *Noll* suit but breached its Policy duties by failing and refusing to pay the above settlement amount to the underlying *Noll* plaintiff, or to reimburse Street Surfing for its payment.

41.     Street Surfing fully performed all of the obligations and conditions to be performed by it under the Great American Policies or has been excused from performing same as a result of Great American's breach of its duty to settle or reimburse settlement payments made in the *Noll* action..

42.     All other conditions required by the Great American Policies or applicable law to trigger Great American's duty to settle the *Noll* action within the Policies' limits, and to pay or reimburse the settlement sum, have been satisfied.

43.     Great American has wrongfully denied coverage and the potential for coverage of the *Noll* action under its policies benefiting Street Surfing.

44.     An actual bona fide controversy exists between Street Surfing on the one hand, and Great American on the other, that requires judicial declaration by this Court of the parties' rights and duties regarding Great American's duty to settle and reimburse settlement payments made in the *Noll* action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Street Surfing prays for judgment against Defendant Great American as follows:

1.     A judicial declaration that Great American had a duty to defend Street Surfing in the *Noll* action under the Great American Policies it issued to Street Surfing;

2.     A judicial declaration that Great American had a duty to settle and reimburse settlement payments in the *Noll* action under the Great American Policies it issued to Street Surfing;

3.     A determination and award of general damages consisting of all reasonable defense expenses and settlement expenses, incurred by Street Surfing in defense of the *Noll* action;

4.     Award of Pre-judgment interest accruing from the date of each defense invoice and settlement payment at the statutory interest rate of 10% per annum;

5.     Award of costs of suit herein;

6.     Other and further relief as this Court may deem just and proper.


Dated:  July 11, 2011                              **GAUNTLETT & ASSOCIATES**


                                        By:_____
                                                David A. Gauntlett
                                                James A. Lowe

                                        Attorneys for Plaintiff
                                        STREET SURFING, LLC

1

## **EXHIBITS TO COMPLAINT**

2

3  **EXHIBIT 1**       Great American's General Liability Policy No. PL 3791711 for

4                       period August 22, 2005 through August 22, 2006

5

6  **EXHIBIT 2**       Great American's Renewal Policy No. PL 3791711-02 for period

7                       September 22, 2006 through September 22, 2007

8  **EXHIBIT 3**       *Noll* Action Second Amended Complaint filed January 12, 2009

9

10 **EXHIBIT 4**       Great American's October 17, 2008 denial letter

11 **EXHIBIT 5**       Street Surfing's December 1, 2008 letter to GAIC seeking

12                      reconsideration of denial

13

14 **EXHIBIT 6**       Great American's December 17, 2008 letter reaffirming denial

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

IL 70 01 (Ed. 05 92)

**Policy No. PL**   3791711   -
**Renewal Of**   NEW   -

## BUSINESSPRO POLICY COMMON DECLARATIONS

**NAMED INSURED** STREET SURFING, LLC

**AND ADDRESS:** 180 NEWPORT CENTER DRIVE, SUITE #180
NEWPORT BEACH, CA  92660

**IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**AGENT'S NAME AND ADDRESS:**
MARKETSCOUT CORPORATION
13727 NOEL ROAD, SUITE 700
DALLAS, TX  752412000

Insurance is afforded by the Company named below, a Capital Stock Corporation:
Great American E&S Insurance Company

**POLICY PERIOD:** From 08/22/2005   To 08/22/2006
12:01 A.M. Standard Time at the address of the Named Insured

This policy consists of the following Coverage Parts for which a premium is indicated. This premium may be subject to adjustment.

| | Premium |
|---|---|
| Commercial Property | $ |
| Commercial General Liability | $ 12,250 |
| Commercial Crime | $ |
| Commercial Inland Marine | $ |
| Commercial Boiler and Machinery | $ |
| Commercial Auto | $ |
| Commercial Umbrella | $ |
| | $ |
| | $ |
| | $ |
| **TOTAL** | $ 12,250 |

**FORMS AND ENDORSEMENTS** applicable to all Coverage Parts and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule
IL 88 01 (11/85).

**POLICY ALTERNATE MAILING ADDRESS:**

Notice   See enclosed endorsement for
"Surplus Lines Notification"

Countersigned  AUG 2 9      By  _[signature]_
                Date                Authorized Representative

**EXHIBIT**

**1**

ALL-STATE LEGAL®

EXH 1-1

BUSINESSPRO (Reg. U.S. Pat. Off.)



GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

**IL 88 01 (Ed. 11 85)**

## BUSINESSPRO FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | | ST | Date Added* or Date Deleted | Form Description |
|---|---|---|---|---|---|
| 1. | CG74001A | 11/85 | CA | | BUSINESSPRO GEN LIA COV PART DEC |
| 2. | AES3013 | 05/01 | CA | | DEDUCTIBLE ENDORSEMENT |
| 3. | AES4000 | 11/98 | CA | | COMMON POLICY CONDITIONS |
| 4. | AES3005 | 05/01 | CA | | COMMON POLICY CONDITION AMENDMENT |
| 5. | GAC3323 | 01/02 | CA | | ABSOLUTE MOLD EXCLUSION |
| 6. | CG2116 | 07/98 | CA | | EXCLUSION-DESIGNATED PROFESSIONAL SERVICES |
| 7. | CG8361 | 02/05 | CA | | SILICA OR RELATED DUST EXCLUSION |
| 8. | AES3012 | 07/04 | CA | | GENERAL SERVICES OF SUIT ENDORSEMENT |
| 9. | CG0001 | 10/01 | CA | | COMMERCIAL GENERAL LIABILITY COVERAGE FO... |
| 10. | CG2135 | 10/01 | CA | | EXCLUSION-COVERAGE C-MEDICAL PAYMENTS |
| 11. | IL0021 | 04/98 | CA | | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSE |
| 12. | CG0055 | 03/97 | CA | | AMENDMENT OF OTHER INSURING CONDITIONS |
| 13. | CG2147 | 07/98 | CA | | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| 14. | AES3016 | 05/01 | CA | | PRE-EXISTING DAMAGE EXCLUSION |
| 15. | AES3017 | 05/01 | CA | | ABSOLUTE POLLUTION EXCLUSION |
| 16. | AES3018 | 05/01 | CA | | ABSOLUTE ASBESTOS EXCLUSION |
| 17. | AES3019 | 05/01 | CA | | ABSOLUTE LEAD EXCLUSION |
| 18. | AES3007 | 05/01 | CA | | ADVERTISING INJ AMENDMENT |
| 19. | AES3004 | 05/01 | CA | | PREMIUM AUDIT CONDITION AMENDMENT |
| 20. | CG0062 | 12/02 | CA | | WAR LIABILITY EXCLUSION |
| 21. | SDM524 | 12/02 | CA | | GENERAL LIABILITY-RESTRICTION OF COVERAGE |
| 22. | GAC3324C | 01/03 | CA | | WAR AND TERRORISM EXCLUSION ENDORSEMENT |

*If not at inception

BUSINESSPRO (Reg. U.S. Pat. Off.)

EXH 1-2

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 88 01 (Ed. 11 85)

## BUSINESSPRO FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | | Date Added* or ST Date Deleted | Form Description |
|---|---|---|---|---|
| 1. | IL7210 | 01/03 | CA | DISCLOSURE PURSUANT TO TERRORISM RISK INSU |
| 2. | TAU2522 | 08/94 | CA | LIMITATION OF COVERAGE TO DESIGNATED PRODU |
| 3. | CASN | 03/04 | CA | SURPLUS LINES - CA |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |
| 21. | | | | |

*If not at inception

BUSINESSPRO (Reg. U.S. Pat. Off.)
IL 88 01 (Ed. 11/85) PRO                     (Page 1 of 1.)

EXH 1-3

**GREAT AMERICAN INSURANCE COMPANIES**
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

**CG 74 00 (Ed. 11 85)**

Policy No.   PL   3791711

## BUSINESSPRO GENERAL LIABILITY COVERAGE PART
### DECLARATIONS PAGE

| NAMED INSURED: STREET SURFING, LLC | POLICY PERIOD: 08/22/05 to 08/22/06 |
|---|---|

**LIMITS OF INSURANCE:**

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $2,000,000 | |
| Products - Completed Operations Aggregate Limit | $1,000,000 | |
| Personal and Advertising Injury Limit | $1,000,000 | |
| Each Occurrence Limit | $1,000,000 | |
| Fire Damage Limit | $ 50,000 | Any One Fire |
| Medical Expense Limit | $ EXCLUDED | Any One Person |

**RETROACTIVE DATE (CG 00 02 ONLY):** Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here:   NONE      (enter date or "none" if does not apply)

**DESCRIPTION OF BUSINESS:**

Form of Business:   ( ) Individual   ( ) Joint Venture   ( ) Partnership
                    ( X ) Organization (Other than Partnership or Joint Venture)

Business Description: MANUFACTURES A TWO WHEELED, INLINE SKATEBOARD

Location of All Premises You Own, Rent or Occupy:

**PREMIUM:**

| Classification | Code No. | * Premium Basis | Rates Pr/Co | Rates All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| SPORTING GOODS MFG. | 59306 | (d)$1,000,000 | $12.25 | INCL | $12,250 | INCL |

* (a) Admissions; (b) Area; (c) Each; (d) Gross Sales;
  (e) Payroll; (f) Total Cost; (g) Units; (h) Other

Total Advance Premium $ 12,250

Premium shown is payable: $ 12,250     at inception;
                          $

**FORMS AND ENDORSEMENTS** applicable to all Coverage Parts and made part of this policy at time of issue are listed on the attached Forms and Endorsements Schedule CG 88 01 (11/85).

BUSINESSPRO (Reg. U.S. Pat. Off.)
CG 74 00 (Ed. 11/85) PRO          (Page 1 of 1)                      EXH 1- 4



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AES 3013
(Ed. 05 01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### SCHEDULE

**DEDUCTIBLE AMOUNT AND COVERAGE**

| | | |
|---|---|---|
| $ | Bodily Injury Liability | |
| $ | Personal Injury and Advertising Injury Liability | |
| $ | Property Damage Liability | |
| $ | Bodily Injury and Property Damage Liability | |
| $5,000 | Bodily Injury, Personal Injury Advertising Injury and Property Damage Liability combined | |

**DEDUCTIBLE BASIS**

( X ) per claim

(    ) per occurrence

Applicable to the sum of damages, Supplementary Payments and defense costs

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement)

**APPLICATION OF ENDORSEMENT**

(Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury," "personal injury," "advertising injury," and "property damage," however caused):

1.  Our obligation under Bodily Injury Liability, Personal Injury Liability, Advertising Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

2.  The deductible applies for the deductible amount and coverage option and on the deductible basis indicated in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

    a.  **PER CLAIM BASIS** — If the deductible amount indicated in the Schedule is on a "per claim" basis, that deductible applies as follows:

        (1)  Under the Bodily Injury Liability, Personal Injury and Advertising Injury Liability or Property Damage Liability Coverage, respectively:

            (a)  to the sum of damages, supplementary payments and "defense costs" because of "bodily injury" sustained by any one person;

            (b)  to the sum of damages, supplementary payments and "defense costs" because of "personal injury" and "advertising injury" sustained by any one person; or

            (c)  to the sum of damages, supplementary payments and "defense costs" because of "property damage" sustained by any one person;

(2)   under Bodily Injury and/or Property Damage Liability Coverage combined to the sum of damages, supplementary payments and "defense costs" because of "bodily injury" and "property damage" sustained by any one person; or

(3)   under Bodily Injury, Personal Injury, Advertising Injury and/or Property Damage Liability Coverage combined to the sum of damages, supplementary payments and "defense costs" because of "bodily injury," "personal injury," "advertising injury" and "property damage" sustained by any one person as a result of any one "occurrence" or offense.

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury," a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "personal injury," "advertising injury" and "property damage," person includes organization.

**b.   PER OCCURRENCE BASIS** – If the deductible amount indicated in the Schedule is on a per "occurrence" basis, that deductible applies as follows:

(1)   under the Bodily Injury Liability Personal Injury and Advertising Injury Liability or Property Damage Liability Coverage, respectively:

    (a)   to the sum of damages, supplementary payments and "defense costs" because of "bodily injury";

    (b)   to the sum of damages, supplementary payments and "defense costs" because of "personal injury" and "advertising injury"; or

    (c)   to the sum of damages, supplementary payments and "defense costs" because "property damage";

(2)   under Bodily Injury and/or Property Damage Liability Coverage combined, to the sum of damages, supplementary payments and "defense costs" because of all "bodily injury" and "property damage"; or

(3)   under Bodily Injury, Personal Injury, Advertising Injury and/or Property Damage Liability Coverage combined, to the sum of damages, supplementary payments and "defense costs" because of "bodily injury," "personal injury," "advertising injury" and "property damage" as a result of any one "occurrence" or offense, regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

(4)   The terms of this insurance, including those with respect to:

    (a)   our right and duty to defend any "suits" seeking those damages; and

    (b)   your duties in the event of an "occurrence," offense, claim or "suit"

apply irrespective of the application of the deductible amount.

(5)   We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount that has been paid by us.

(6)   The deductible applies whether or not a payment for damages is made.

(7)   "Defense Costs" mean all expenses incurred in the investigation, defense and settlement of any claim or "suit" under this policy including attorneys fees, court reporter fees, charges for independent medical examinations and expert witnesses, provided such claim expense is incurred by us or with our prior written permission. "Defense Costs" will not include salaried employees, counsel on retainer and office expense of either you or us.



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AES 4000
(Ed. 11 98)

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. make inspections and surveys at any time;

   b. give you reports on the conditions we find; and

   c. recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. are safe or healthful; or

   b. comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

Copyright, Insurance Services Office, Inc. 1998
(Page 1 of 2)

EXH 1-7

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. is responsible for the payment of all premiums; and

2. will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

President

AES 4000 (Ed. 11/98) XS

Copyright, Insurance Services Office, Inc. 1998
(Page 2 of 2)

EXH 1- 8



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GREAT AMERICAN.
INSURANCE COMPANIES

AES 3005
(Ed. 05 01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## COMMON POLICY CONDITIONS AMENDMENT

The following Conditions are added to the COMMON POLICY CONDITIONS of this policy.

**G. Fraud and Misrepresentation**

a. This policy was issued based on the information supplied on an application and other correspondence including your claim or loss history. This information is considered to be part of this policy.

b. You should review this information carefully as the truth of this information was of paramount importance in influencing our decision to issue this policy.

c. You, for all the Insureds under this policy, do warrant the truth of such information to the best of your knowledge at the inception date of this policy.

d. If such information is false or misleading, it may cause denial of coverage or voiding of the policy.

**H. Premium Financing/Cancellation of Financed Policy**

a. When we receive notification that the premium for this policy has been advanced by a premium financed company, we will acknowledge receipt of the premium finance agreement to the finance company on our form, when requested, but we will not amend or extend this policy.

b. When we otherwise become aware that you financed all or part of this policy's premium, regardless of whether or not we receive a notice of premium financing, we will not be bound, as respects coverage we provide, by the terms of your finance agreement. This policy alone governs coverage.

c. When you sign a premium finance agreement, by the terms of the agreement, you may be giving the premium finance company the right, under certain conditions, to cancel this policy on your behalf. When we receive notice of cancellation from the finance company, we will recognize their request for termination of this insurance and we will pay any return premium due as directed by the premium finance company. The return premium will be calculated on a pro-rata basis.

d. The premium finance company will usually require that payment of any return premium be made directly to them and we will honor that request. If the requested termination date set by the premium finance company conflicts with other policy provisions or the operation of law, we will comply with the policy provision and/or applicable law. You must resolve any resulting premium differences directly with the finance company.

e. The twenty-five percent (25%) minimum retained premium described in A. Cancellation may not be financed as it is not refundable.

GAC 3323
(Ed. 01 02)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ABSOLUTE MOLD EXCLUSION

Regardless of cause, whether by proximate cause, efficient cause, sole cause, contributing cause, or as resulting damage from any such cause or causes, this policy does not apply to any loss, demand, claim or suit arising out of or related in any way to mold, mildew, fungus, spores or any similar or related biological entity, however designated.

The Company shall have no duty of any kind with respect to any such loss, demand, claim or suit.

This exclusion applies to all coverages under this policy.

**All other terms and conditions remain unchanged.**

GAC 3323 (Ed. 01/02) XS

EXH 1- 10

CG 21 16
(Ed. 07/98)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description Of Professional Services:**

1.  ALL OPERATIONS AND PRODUCTS OF THE INSURED INCLUDING BUT NOT LIMITED TO ANY PERSON OR ENTITY WORKING ON BEHALF OR UNDER THE SUPERVISION OF THE INSURED.

2.

3.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph 2., Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph 2., Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

Copyright, Insurance Services Office, Inc., 1997

CG 21 16 (Ed. 07/98) PRO

(Page 1 of 1)

EXH 1- 11



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

CG 83 61
(Ed. 02 05)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SILICA OR RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM – COVERAGE FOR OPERATIONS OF DESIGNATED CONTRACTOR

**A.** The following exclusion is added to paragraph **2., Exclusions,** of **SECTION I. Coverage A. Bodily Injury and Property Damage Liability,** of the **Commercial General Liability Coverage Form,** and to paragraph **2., Exclusions,** of **SECTION I. COVERAGES,** of the **Owners and Contractors Protective Liability Coverage Form - Coverage for Operations of Designated Contractor:**

**2. Exclusions**

This insurance does not apply to:

**Silica or Related Dust**

a. Any "bodily injury" which would not have occurred, in whole or in part, but for the actual, alleged, threatened, or suspected inhalation or ingestion of, exposure to, or contact with, "silica" or dust that includes or contains "silica."

b. Any "property damage" which would not have occurred, in whole or in part, but for the actual, alleged, threatened, or suspected contact with, exposure to, existence of, or presence of, "silica" or dust that includes or contains "silica."

c. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or dust that includes or contains "silica," by any insured or by any other person or entity.

This exclusion applies regardless of:

(i) the circumstances of or leading to such actual, alleged, threatened, or suspected inhalation, ingestion, exposure, contact, existence, or presence; and

(ii) whether the "silica" or dust that includes or contains "silica," is mixed or combined with, or also includes or contains, any other substance.

**B.** The following exclusion is added to paragraph **2., Exclusions** of **SECTION I. Coverage B. Personal and Advertising Injury Liability** of the **Commercial General Liability Coverage Form:**

**2. Exclusions**

This insurance does not apply to:

**Silica or Related Dust**

a. Any "personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged, threatened, or suspected inhalation or ingestion of, contact with, exposure to, existence of, or presence of, "silica" or dust that includes or contains "silica."

**b.** Any loss, cost, or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or dust that includes or contains "silica," by any insured or by any other person or entity.

This exclusion applies regardless of:

(i) the circumstances of or leading to such actual, alleged, threatened, or suspected inhalation, ingestion, exposure, contact, existence, or presence; and

(ii) whether the "silica" or dust that includes or contains "silica," is mixed or combined with, or also includes or contains, any other substance.

**C.** The following definition is added to the **Definitions** Section:

**"Silica"** means silicon dioxide $(SiO_2)$ in any form, from any source.

AES 3012
(Ed. 07 04)

## GENERAL SERVICE OF SUIT ENDORSEMENT
### (Not Applicable in Delaware or Pennsylvania)

Pursuant to any statute of any state or district of the United States of America that makes provision therefor, the Insurer hereby designates the commissioner, superintendent or director of insurance or other officer specified for that purpose in the statute and his or her successors in office and duly authorized deputies in the state where this policy is issued, as the Insurer's true and lawful attorney for service of legal process in any action, suit or proceeding brought in the state where this policy is issued by or on behalf of an insured or beneficiary against the Insurer arising out of the insurance issued under this policy. Any legal process received by such attorney for service of legal process shall be forwarded, except as provided below, to the attention of: Eve Cutler Rosen, General Counsel, Great American Insurance Company, 580 Walnut Street, Cincinnati, Ohio 45202.

In **California**, any legal process received by the Insurer's statutory attorney for service of process shall be forwarded to the attention of: Jere Keprios, The CT Corporation System, 818 West Seventh Street, Los Angeles, California 90017.

In **Maine**, the Insurer hereby designates CT Corporation System as its attorney for service of legal process in any action relating to this policy, and directs that all such legal process be mailed to: CT Corporation System, One Portland Square, Portland, Maine 04101.

In **Oregon**, the Insurer and the insured policyholder hereby agree to waive the provisions of Oregon Insurance Code Section 735.490 requiring that service of legal process in any action relating to this policy shall be served on the insurance agent who registered or delivered this policy, and instead agree that such service of legal process be mailed directly to Eve Cutler Rosen, General Counsel, Great American Insurance Company, 580 Walnut Street, Cincinnati, Ohio 45202.

In **Rhode Island**, the Insurer hereby designates CT Corporation System as its attorney for service of legal process in any action relating to this policy, and directs that all such legal process be mailed to: CT Corporation System, 10 Weybosset Street, Providence, Rhode Island 02903.

The foregoing designations of attorney for service of legal process upon the Insurer shall not constitute a waiver of the Insurer's rights to remove, remand, dismiss or transfer any suit or proceeding from any court, or to commence any suit or other proceeding in any court of competent jurisdiction.

CG 00 01
(Ed. 10 01)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "Insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – DEFINITIONS

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) the amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of

judgments or settlements under Coverages A. or B. or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A. and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) the "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no Insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed Insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any Insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

Copyright, ISO Properties, Inc., 2000
(Page 1 of 19)

EXH 1- 15

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any Insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1) reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   (2) receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   (3) becomes aware of any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

2. Exclusions

   This insurance does not apply to:

   a. Expected or Intended Injury

      "Bodily injury" or "property damage" expected or intended from the standpoint of the Insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. Contractual Liability

      "Bodily injury" or "property damage" for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) that the Insured would have in the absence of the contract or agreement; or

   (2) assumed in a contract or agreement that is an "insured contract"; provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an Insured are deemed to be damages because of "bodily injury" or "property damage," provided:

      (a) liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

      (b) such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   c. Liquor Liability

      "Bodily injury" or "property damage" for which any Insured may be held liable by reason of:

      (1) causing or contributing to the intoxication of any person;

      (2) the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

      This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

   d. Workers' Compensation and Similar Laws

      Any obligation of the Insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

Copyright, ISO Properties, Inc., 2000

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the Insured arising out of and in the course of:

   (a) employment by the Insured; or

   (b) performing duties related to the conduct of the Insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) whether the Insured may be liable as an employer or in any other capacity; and

(2) to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the Insured under an "insured contract."

**f. "Pollution"**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any Insured; However, this subparagraph does not apply to:

     (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

     (ii) "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site

or location has been added to your policy as an Additional Insured with respect to your ongoing operations performed for that Additional Insured at that premises, site or location and such premises , site or location is not and never was owned or occupied by, or rented or loaned to, any Insured, other than that Additional Insured; or

     (iii) "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

   (b) at or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste;

   (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

     (i) any Insured; or

     (ii) Any person or organization for whom you may be legally responsible; or

   (d) at or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such Insured, contractor or subcontractor. However, this subparagraph does not apply to:

     (i) "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical,

Copyright, ISO Properties, Inc., 2000
(Page 3 of 19)

hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such Insured, contractor or subcontractor;

(ii) "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

(e) At or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants."

(2) Any loss, cost, or expense arising out of any:

(a) request, demand, order or statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

However, this paragraph does not apply to liability for damages because of "property damage" that the Insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any Insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any Insured.

This exclusion does not apply to:

(1) a watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

Copyright, ISO Properties, Inc., 2000
(Page 4 of 19)

**(a)** less than 26 feet long; and

**(b)** not being used to carry persons or property for a charge;

**(3)** parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the Insured;

**(4)** liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment."

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** the transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any Insured; or

**(2)** the use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

**(1)** property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for

any reason, including prevention of injury to a person or damage to another's property;

**(2)** premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** property loaned to you;

**(4)** personal property in the care, custody or control of the Insured;

**(5)** that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Section III – Limits of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products—completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "your product";

(2) "your work"; or

(3) "impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury."

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in Section III - Limits of Insurance

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) the amount we will pay for damages is limited as described in Section III; Limits of Insurance, and

(2) our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages A. or B. or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A. and B.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

Copyright, ISO Properties, Inc., 2000

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the Insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the Insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the Insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the Insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement."

**i. Infringement Of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an Insured whose business is:

**(1)** advertising, broadcasting, publishing or telecasting;

**(2)** designing or determining content of websites for others; or

**(3)** an Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

Copyright, ISO Properties, Inc., 2000

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Polution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Polution-Related**

Any loss, cost or expense arising out of any:

**(1)** request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

## COVERAGE C. MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident

**(1)** on premises you own or rent;

**(2)** on ways next to premises you own or rent; or

**(3)** because of your operations;

provided that:

**(1)** the accident takes place in the "coverage territory" and during the policy period;

**(2)** the expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** the injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable Limit of Insurance. We will pay reasonable expenses for:

**(1)** first aid administered at the time of an accident;

**(2)** necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any Insured, except "volunteer workers."

**b. Hired Person**

To a person hired to do work for or on behalf of any Insured or a tenant of any Insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

Copyright, ISO Properties, Inc., 2000
(Page 8 of 19)

### d. Workers Compensation And Similar Laws

To a person, whether or not an "employee" of any Insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

### e. Athletics Activities

To a person injured while taking part in athletics.

### f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard."

### g. Coverage A. Exclusions

Excluded under Coverage A.

### h. War

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A. AND B.

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an Insured we defend:

    a. All expenses we incur.

    b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

    c. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

    d. All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

    e. All costs taxed against the Insured in the "suit."

    f. Prejudgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the Limits of Insurance.

2. If we defend an Insured against a "suit" and an indemnitee of the Insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

    a. the "suit" against the indemnitee seeks damages for which the Insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

    b. this insurance applies to such liability assumed by the Insured;

    c. the obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the Insured in the same "insured contract";

    d. the allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the Insured and the interests of the indemnitee;

    e. the indemnitee and the Insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the Insured and the indemnitee; and

    f. The indemnitee:

        (1) agrees in writing to:

Copyright, ISO Properties, Inc., 2000

(a) cooperate with us in the investigation, settlement or defense of the "suit";

(b) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) notify any other insurer whose coverage is available to the indemnitee; and

(d) cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) provides us with written authorization to:

(a) obtain records and other information related to the "suit"; and

(b) conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage A. – Bodily Injury and Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. we have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

b. the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

Copyright, ISO Properties, Inc., 2000

(a) to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) to the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) arising out of his or her providing or failing to provide professional health care services.

(2) "property damage" to property:

(a) owned, occupied or used by,

(b) rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees," "volunteer workers," any partner or member (if you are a partnership or joint venture) or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) with respect to liability arising out of the maintenance or use of that property; and

(2) until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an Insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an Insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an Insured with respect to:

a. "bodily injury" to a co-"employee" of the person driving the equipment; or

b. "property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an Insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A. does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B. does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

Copyright, ISO Properties, Inc., 2000

No person or organization is an Insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. insureds;

   b. claims made or "suits" brought; or

   c. persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. medical expenses under Coverage C.;

   b. damages under Coverage A. except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A. for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B. for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. damages under Coverage A.; and

   b. medical expenses under Coverage C.

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the Damage To Premises Rented to You Limit is the most we will pay under Coverage A. for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C. for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the Insured or of the Insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) how, when and where the "occurrence" or offense took place;

      (2) the names and addresses of any injured persons and witnesses; and

      (3) the nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any Insured, you must:

Copyright, ISO Properties, Inc., 2000
(Page 12 of 19)

(1) immediately record the specifics of the claim or "suit" and the date received; and

(2) notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved Insured must:

(1) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) authorize us to obtain records and other information;

(3) cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

d. No Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. to join us as a party or otherwise bring us into a "suit" asking for damages from an Insured; or

b. to sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and

release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

If other valid and collectible insurance is available to the Insured for a loss we cover under Coverages **A.** or **B.** of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) that is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) that is Fire insurance for premises rented to you; or or temporarily occupied by you with permission of the owner.

(c) that is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) if the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I − Coverage **A.** − Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or oper-

Copyright, ISO Properties, Inc., 2000
(Page 13 of 19)

ations for which you have been added as an Additional Insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverage **A.** or **B.** to defend the Insured against any "suit" if any other insurer has a duty to defend the Insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) the total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. the statements in the Declarations are accurate and complete;

b. those statements are based upon representations you made to us; and

c. we have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. as if each Named Insured were the only Named Insured; and

b. separately to each Insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the Insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to

Copyright, ISO Properties, Inc., 2000

us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a. notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b. regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

    a. the United States of America (including its territories and possessions), Puerto Rico and Canada;

    b. international waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

    c. All other parts of the world if the injury or damage arises out of:

        (1) goods or products made or sold by you in the territory described in a. above;

        (2) the activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

        (3) "personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

    provided the Insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    a. it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. you have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    a. the repair, replacement, adjustment or removal of "your product" or "your work"; or

    b. your fulfilling the terms of the contract or agreement.

Copyright, ISO Properties, Inc., 2000
(Page 15 of 19)

9. "Insured contract" means:

   a. a contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. a sidetrack agreement;

   c. any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. an elevator maintenance agreement;

   f. that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

     (a) preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

     (b) giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

     (3) under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

11. "Loading or unloading" means the handling of property:

   a. after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. while it is in or on an aircraft, watercraft or "auto"; or

   c. while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. vehicles maintained for use solely on or next to premises you own or rent;

   c. vehicles that travel on crawler treads;

Copyright, ISO Properties, Inc., 2000

d. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    (1) power cranes, shovels, loaders, diggers or drills; or

    (2) road construction or resurfacing equipment such as graders, scrapers or rollers;

e. vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    (1) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    (2) cherry pickers and similar devices used to raise or lower workers;

f. vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    (1) equipment designed primarily for:

        (a) snow removal;

        (b) road maintenance, but not construction or resurfacing; or

        (c) street cleaning;

    (2) cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    (3) air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following offenses:

a. false arrest, detention or imprisonment;

b. malicious prosecution;

c. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except

    (1) products that are still in your physical possession; or

    (2) work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

Copyright, ISO Properties, Inc., 2000

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any Insured;

(2) the existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. an arbitration proceeding in which such damages are claimed and to which the Insured must submit or does submit with our consent; or

b. any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) you;

(b) others trading under your name; or

(c) a person or organization whose business or assets you have acquired; and

(2) containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) the providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) work or operations performed by you or on your behalf; and

(2) materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

(2) the providing of or failure to provide warnings or instructions.

Copyright, ISO Properties, Inc., 2000

CG 21 35
(Ed. 10 01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION--COVERAGE C--MEDICAL PAYMENTS**

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description and Location of Premises or Classification:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1.    Section I Coverage C Medical Payments does not apply and none of the references to it in the Coverage Part apply; and

2.    The following is added to Section I Supplementary Payments:

    h.    Expenses incurred by the Insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

Copyright, ISO Properties, Inc., 2000

CG 21 35 (Ed. 10/01) PRO           (Page 1 of 1)           EXH 1- 34



GREAT AMERICAN INSURANCE COMPANIES®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 00 21
(Ed. 04 98)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

    BUSINESSOWNERS POLICY
    COMMERCIAL AUTO COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    EMPLOYMENT—RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PROFESSIONAL LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT
       OF TRANSPORTATION
    UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

  **A.** Under any Liability Coverage, to "bodily injury" or "property damage:"

   **(1)** with respect to which an "Insured" under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or

any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

  **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

  **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

   **(1)** the "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "Insured" or (b) has been discharged or dispersed therefrom;

Copyright, Insurance Services Office, Inc., 1997
(Page 1 of 2)

EXH 1- 35

(2) the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "Insured"; or

(3) the "bodily injury" or "property damage" arises out of the furnishing by an "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"hazardous properties" includes radioactive, toxic or explosive properties;

"nuclear material" means "source material," "special nuclear material" or "by-product material";

"source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source ma-

terial" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) any "nuclear reactor";

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

(c) any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1997

CG 00 55
(Ed. 03 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF OTHER INSURANCE CONDITION
## (OCCURRENCE VERSION)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph **4.b.** of the **Other Insurance** Condition – (**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**) is replaced by the following:

**4. Other Insurance**

  **b. Excess Insurance**

   This insurance is excess over:

   (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

    (a) that is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    (b) that is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

    (c) if the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of **Coverage A (Section I).**

   (2) Any other primary insurance available to you covering liability for damages arising out of the premises or oper-

ations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under **Coverages A** or **B** to defend the Insured against any "suit" if any other insurer has a duty to defend the Insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   (1) the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   (2) the total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Copyright, Insurance Services Office, Inc., 1996

EXH 1- 37

CG 21 47
(Ed. 07 98)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EMPLOYMENT-RELATED PRACTICES EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

1. a person arising out of any:

   (a) refusal to employ that person;

   (b) termination of that person's employment; or

   (c) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2. the spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b) or (c) above is directed.

   This exclusion applies:

   1. whether the Insured may be liable as an employer or in any other capacity; and

   2. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

1. A person arising out of any:

   (a) refusal to employ that person;

   (b) termination of that person's employment; or

   (c) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, decipline, defamation, harassment, humiliation, discrimination directed at that person; or

2. the spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b) or (c) above is directed.

   This exclusion applies:

   1. whether the Insured may be liable as an employer or in any other capacity; and

   2. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1998

EXH 1- 38



**GREATAMERICAN.**
INSURANCE COMPANIES

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AES 3016
(Ed. 05 01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PRE-EXISTING DAMAGE EXCLUSION

This insurance does not apply to:

1. Any loss or claim for damages related to "bodily injury" or "property damage" whether known or unknown:

   a. which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier); or

   b. which is, or is alleged to be, in the process of occurring as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier).

2. Any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier).

We will have no duty to defend any Insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

AES 3016 (Ed. 05/01) XS



**GREAT AMERICAN.**
INSURANCE COMPANIES

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AES 3017
(Ed. 05 01)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ABSOLUTE POLLUTION EXCLUSION

This insurance does not apply to:

a. "Bodily injury," "property damage" or "personal injury" arising, whether in whole or in part, and whether directly or indirectly, out of the actual, alleged, suspected, threatened or feared discharge, dispersal, seepage, migration, release or escape of any "pollutant," at any time or place and under any circumstance.

b. Any loss, cost or expense arising out of any:

    (1) request, demand, order, writ, injunction or judgment that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, prevent, abate, or in any way respond to, or assess the presence or effect of any "pollutant" ; or

    (2) claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, preventing, abating, or in any way responding to, or assessing the presence or effect of any "pollutant."

"Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant including, but not limited to, smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

AES 3017 (Ed. 05/01) XS



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AES 3018
(Ed. 05 01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ABSOLUTE ASBESTOS EXCLUSION

This insurance does not apply to:

a. "Bodily injury," "property damage" or "personal injury" arising, whether in whole or in part, and whether directly or indirectly, out of any kind of asbestos including, but not limited to, any kind of asbestos contained or incorporated in any material or product.

b. Any loss, cost or expense arising out of any:

(1) request, demand, order, writ, injunction or judgment that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, prevent, abate, or in any way respond to, or assess the presence or effect of asbestos; or

(2) claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, preventing, abating, or in any way responding to, or assessing the presence or effect of asbestos.

AES 3018 (Ed. 05/01) XS



**GREAT AMERICAN.**
INSURANCE COMPANIES

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AES 3019
(Ed. 05 01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ABSOLUTE LEAD EXCLUSION

This insurance does not apply to:

**a.** "Bodily injury," "property damage" or "personal injury" arising, whether in whole or in part, and whether directly or indirectly, out of lead, including, but not limited to, lead contained or incorporated in any material or product.

**b.** Any loss, cost or expense arising out of any:

    **(1)** request, demand, order, writ, injunction or judgment that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, prevent, abate, or in any way respond to, or assess the presence or effect of any kind of lead; or

    **(2)** claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, preventing, abating, or in any way responding to, or assessing the presence or effect of any kind of lead.

AES 3019 (Ed. 05/01) XS

EXH 1- 42



**GREAT**AMERICAN.
INSURANCE COMPANIES

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AES 3007**
(Ed. 05 01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADVERTISING INJURY AMENDMENT

This insurance does not apply to "advertising injury" arising out of any actual or alleged infringement of intellectual property rights or violation of laws relating to patents, trademarks, trade dress, trade names, trade secrets and know–how.

AES 3007 (Ed. 05/01) XS



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AES 3004**
**(Ed. 05 01)**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PREMIUM AUDIT CONDITION AMENDMENT

Condition 5., Premium Audit (Section IV ) is replaced by the following:

**5. Premium Audit, Minimum Premium - Minimum Retained Premium**

   **a.** We will compute all premiums for this Coverage Form in accordance with the terms and conditions of this policy.

   **b.** Premium shown in this policy as Advance Premium is a deposit premium. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable upon notice to the first Named Insured. If the sum of the Advance and Audit Premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured, subject to the minimum and minimum retained premiums described below.

   **c.** In no event will the final premium retained by us be less than the minimum premium shown in the Declarations of this policy. If no other premium is designated specifically as a minimum premium. Such minimum premium, the Advance Premium shown in the Declarations is the minimum premium. Such minimum premium is subject to the short rate or prorate adjustment according to policy provisions in case of cancellation of the policy.

   **d.** This policy is also subject to a minimum retained premium of 25% of the Advance Premium shown in the Declarations of this policy. Such minimum retained premium is not subject to prorate or short rate adjustment in the event of cancellation by you and we shall retain no less than the minimum retained premium regardless of the policy term. Cancellation of the policy for non-payment of premium shall be deemed a request by you for cancellation of this policy thereby invoking the minimum retained premium, unless the short rate calculation earns more than the minimum retained premium.

   **e.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

CG 00 62
(Ed. 12 02)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WAR LIABILITY EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABIL-ITY** is replaced by the following:

**2. Exclusions**

The insurance does not apply to:

**i. War**

"Bodily injury" or "property damage," however caused, arising, directly or indirectly, out of:

**(1)** war, including undeclared or civil war; or

**(2)** warlike action by a military force, including action in hindering or defending against an actual or ex-pected attack, by any govern-ment, sovereign or other author-ity using military personnel or other agents; or

**(3)** insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hin-dering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2. Exclusions**

This insurance does not apply to:

**War**

"Personal and advertising injury," however caused, arising, directly or indirectly, out of:

**a.** war, including undeclared or civil war; or

**b.** warlike action by a military force, in-cluding action in hindering or defend-ing against an actual or expected at-tack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **SECTION I - COVERAGE C - MEDICAL PAYMENTS** does not apply.

Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **SECTION I - COVERAGE C - MEDICAL PAYMENTS** since "bodily injury" arising out of war is now excluded under Coverage A.

Copyright, ISO Properties, Inc., 2002

CG 00 62 (Ed. 12/02) XS



**Administrative Offices**
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

## GENERAL LIABILITY

## NOTICE TO POLICYHOLDERS

## RESTRICTIONS OF COVERAGE

This notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of any significant restrictions of coverage that were made in each policy form and endorsement.

The endorsements below replace the current war exclusion to expand beyond contractually assumed liabilities and medical payments or introduce a war exclusion in forms which did not contain one.

Please read your policy, and the endorsements attached to your policy, carefully.

**CG 00 62 12 02 - War Liability Exclusion (Commercial General Liability Coverage Part)**

When this endorsement is attached to your policy, coverage is restricted to exclude bodily injury, property damage, or personal and advertising injury, however caused, arising, directly or indirectly, out of:

* war, including undeclared or civil war;
* warlike action by a military force; or
* insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

A specific Medical Payments Exclusion is no longer needed in the policy due to the fact that they are now subject to Exclusion **g.** of Paragraph **2. Exclusions** of **SECTION I - COVERAGE C - MEDICAL PAYMENTS,** which are now excluded under Coverage A.

**CG 00 63 12 02 - War Liability Exclusion (Owners and Contractors Protective Liability Coverage Part and Products/Completed Operations Liability Coverage Part)**

When this endorsement is attached to your policy, coverage is restricted to exclude bodily injury or property damage, however caused, arising, directly or indirectly, out of:

* war, including undeclared or civil war;
* warlike action by a military force; or
* insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**CG 00 64 12 02 - War Liability Exclusion (Liquor Liability Coverage Part, Pollution Liability Coverage Part, Railroad Protective Liability Coverage Part, and Underground Storage Tank Policy)**

When this endorsement is attached to your policy, a war exclusion is added to exclude injury or damage, however caused, arising, directly or indirectly, out of:

* war, including undeclared or civil war;
* warlike action by a military force; or
* insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

SDM-524 (Ed. 12/02) XS

EXH 1- 46

GAC 3324C
(Ed. 01 03)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto, it is agreed that this insurance does not apply to any liability, loss, damage, cost or expense of whatsoever nature, directly or indirectly, regardless of any other cause or event contributing concurrently or in any other sequence and caused by or resulting from or in connection with:

**A.   War and Military Action**

Any war, invasion, acts of foreign or domestic enemies, hostilities, (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property, including loss of access, by or under the order of any government or public or local authority.

**B.   Terrorism**

Any terrorist act, including but not limited to an act of terrorism, or preparation in respect of action, or threat of action, designed to influence the government de jure or de facto of any nation or any political division thereof, or in pursuit of political, religious, ideological, or similar purposes to intimidate the public or a section of the public of any nation by any person or group(s) of persons whether acting alone or on behalf of or in connection with any organization(s) or government(s) de jure or de facto, and which (i) involves violence against one or more persons; or (ii) involves damage to property; or (iii) endangers life other than that of the person committing the action; or (iv) creates a risk to health or safety of the public or a section of the public.

**C.   Biological or Chemical Incident**

Any incident involving the threat or actual use, release or escape of pathogenic or poisonous biological or chemical materials or of nuclear materials, or to any incident that directly or indirectly results in nuclear reaction or radiation or radioactive contamination. This provision supersedes any other exclusion relating to nuclear reaction, nuclear radiation or radioactive contamination.

The Company shall not have a duty of any kind including the duty to defend any claim or suit seeking to impose such loss, costs, expenses, liability for damages, or any other relief.

This exclusion applies to all coverages under this policy.

**All other terms and conditions remain unchanged.**



**GREAT**AMERICAN.
INSURANCE COMPANIES

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**IL 72 10**
(Ed. 01 03)

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

**A.  Rejection Of Offer**

You have rejected the offer of terrorism coverage for Acts of Terrorism that are certified under the Terrorism Risk Insurance Act of 2002 as an Act of Terrorism. An exclusion of terrorism losses has been made a part of this policy.

**B.  Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceed the applicable insurer retention. **You have rejected this offer of coverage.**

IL 72 10 (Ed. 01/03) XS

EXH 1- 48



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**TAU 2522**
(Ed. 08 94)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LIMITATION OF COVERAGE TO DESIGNATED PRODUCTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### SCHEDULE

**Description of your product:**

TWO WHEELED, INLINE SKATEBOARD

This insurance applies only to "bodily injury," "property damage," "personal injury" or "advertising injury" included in the "products-completed operations hazard" and arising out of "your product" shown in the Schedule.

TAU 2522 (Ed. 08/94) PRO                    (Page 1 of 1)

EXH 1- 49

**GREAT  AMERICAN  E  &  S  INSURANCE  COMPANY**

**PLEASE  READ  THIS  CAREFULLY.**

**SURPLUS  LINES  NOTIFICATION**

NOTICE:

1.  THE INSURANCE POLICY THAT YOU ( x ) HAVE PURCHASED (   ) ARE APPLYING TO PURCHASE IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE INSURERS ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2.  THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLIES TO CALIFORNIA LICENSED INSURERS.

3.  THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4.  CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINE INSURERS APPROVED BY THE INSURANCE COMMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THE LIST.

5.  FOR ADDITIONAL INFORMATION ABOUT THE INSURER, ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CALL THE CALIFORNIA DEPARTMENT OF INSURANCE TOLL-FREE TELEPHONE NUMBER 1-800-927-4357.

# EXHIBIT 2

AES 3061 (Ed. 12 05)

| | | | |
|---|---|---|---|
| **Policy No.** | PL | 3791711 | - 02 |
| **Renewal Of** | PL | 3791711 | - 00 |

## BUSINESSPRO® POLICY COMMON DECLARATIONS

**NAMED INSURED**   STREET SURFING, LLC

**AND ADDRESS:**   4299 MACARTHUR BOULEVARD
NEWPORT BEACH, CA 92660

IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**AGENT'S NAME AND ADDRESS:**
MARKETSCOUT CORPORATION
13727 NOEL ROAD, SUITE 700
DALLAS, TX 75241-2000

Insurance is afforded by the Company named below, a Capital Stock Corporation:
GREAT AMERICAN E & S INSURANCE COMPANY

**POLICY PERIOD:**   From 09/22/2006   To 09/22/2007
12:01 A.M. Standard Time at the address of the Named Insured

This policy consists of the following Coverage Parts for which a premium is indicated. This premium may be subject to adjustment.

|  | | Premium |
|---|---|---|
| Commercial Property | $ | |
| Commercial General Liability | $ | 33,000 |
| Commercial Crime | $ | |
| Commercial Inland Marine | $ | |
| Commercial Boiler and Machinery | $ | |
| Commercial Auto | $ | |
| Commercial Umbrella | $ | |
| | $ | |
| | $ | |
| | $ | |

| | | | | |
|---|---|---|---|---|
| BROKER FEE | $250.00 | | | |
| SURPLUS LINES TAX | $990.00 | | | |
| STAMPING FEE | $ 57.75 | **TOTAL** | $ | 33,000 |

**FORMS AND ENDORSEMENTS** applicable to all Coverage Parts and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule IL 88 01 (11/85).

**POLICY ALTERNATE MAILING ADDRESS:**

**NOTICE – See enclosed endorsement for "Surplus Lines Notification"**

**EXHIBIT**
**2**
ALL-STATE LEGAL®

AES 3061 (Ed. 12/05) PRO                    (Page 1 of 1)

EXH 2- 1



GREAT AMERICAN INSURANCE COMPA...ES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 88 01 (Ed. 11 85)

## BUSINESSPRO FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | ST | Date Added* or Date Deleted | Form Description |
|---|---|---|---|---|
| 1. | CG74001A | 11/85 | CA | BUSINESSPRO GEN LIA COV PART DEC |
| 2. | AES3013 | 05/01 | CA | DEDUCTIBLE ENDORSEMENT |
| 3. | AES4000 | 11/98 | CA | COMMON POLICY CONDITIONS |
| 4. | AES3005 | 05/01 | CA | COMMON POLICY CONDITION AMENDMENT |
| 5. | GAC3323 | 01/02 | CA | ABSOLUTE MOLD EXCLUSION |
| 6. | CG2116 | 07/98 | CA | EXCLUSION-DESIGNATED PROFESSIONAL SERVICES |
| 7. | CG8361 | 02/05 | CA | SILICA OR RELATED DUST EXCLUSION |
| 8. | AES3012 | 07/04 | CA | GENERAL SERVICES OF SUIT ENDORSEMENT |
| 9. | CG0001 | 10/01 | CA | COMMERCIAL GENERAL LIABILITY COVERAGE FO |
| 10. | CG2135 | 10/01 | CA | EXCLUSION-COVERAGE C-MEDICAL PAYMENTS |
| 11. | IL0021 | 04/98 | CA | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSE |
| 12. | CG0055 | 03/97 | CA | AMENDMENT OF OTHER INSURING CONDITIONS |
| 13. | CG2147 | 07/98 | CA | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| 14. | AES3016 | 05/01 | CA | PRE-EXISTING DAMAGE EXCLUSION |
| 15. | AES3017 | 05/01 | CA | ABSOLUTE POLLUTION EXCLUSION |
| 16. | AES3018 | 05/01 | CA | ABSOLUTE ASBESTOS EXCLUSION |
| 17. | AES3019 | 05/01 | CA | ABSOLUTE LEAD EXCLUSION |
| 18. | AES3007 | 05/01 | CA | ADVERTISING INJ AMENDMENT |
| 19. | AES3004 | 05/01 | CA | PREMIUM AUDIT CONDITION AMENDMENT |
| 20. | CG0067 | 03/05 | CA | EXCL. VIOLATION OF STATUTES THAT GOVERN EM |
| 21. | CG0062 | 12/02 | CA | WAR LIABILITY EXCLUSION |
| 22. | SDM524 | 12/02 | CA | GENERAL LIABILITY-RESTRICTION OF COVERAGE |

*If not at inception

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 88 01 (Ed. 11 85)

## BUSINESSPRO FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | ST | Date Added* or Date Deleted | Form Description |
|---|---|---|---|---|
| 1. | GAC3324C | 01/03 | CA | WAR AND TERRORISM EXCLUSION ENDORSEMENT |
| 2. | IL7210 | 01/03 | CA | DISCLOSURE PURSUANT TO TERRORISM RISK INSU |
| 3. | TAU2522 | 08/94 | CA | LIMITATION OF COVERAGE TO DESIGNATED PRODU |
| 4. | CG2015 | 11/88 | CA | ADDL INSUREDS--VENDORS |
| 5. | AES3103 | 06/04 | CA | METAL GAS EXCLUSION-MANGANESE, ZINC ETC. |
| 6. | CG8225 | 03/98 | CA | BLANKET ADDITIONAL INS |
| 7. | CASN | 01/05 | CA | SURPLUS LINES NOTIFICATION |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |
| 13. | | | | |
| 14. | | | | |
| 15. | | | | |
| 16. | | | | |
| 17. | | | | |
| 18. | | | | |
| 19. | | | | |
| 20. | | | | |
| 21. | | | | |

*If not at inception

GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CG 74 00 (Ed. 11 85)

Policy No.  PL  3791711      - 02

## BUSINESSPRO GENERAL LIABILITY COVERAGE PART
### DECLARATIONS PAGE

| NAMED INSURED: STREET SURFING, LLC | POLICY PERIOD:<br>09/22/06 to 09/22/07 |
|---|---|

### LIMITS OF INSURANCE:

General Aggregate Limit (Other Than Products -
   Completed Operations)                         $2,000,000
Products - Completed Operations Aggregate Limit  $1,000,000
Personal and Advertising Injury Limit       $1,000,000
Each Occurrence Limit                     $1,000,000
Fire Damage Limit                        $   50,000   Any One Fire
Medical Expense Limit                   $EXCLUDED  Any One Person

**RETROACTIVE DATE (CG 00 02 ONLY):** Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here:  NONE      (enter date or "none" if does not apply)

### DESCRIPTION OF BUSINESS:

Form of Business:  (  ) Individual  (  ) Joint Venture  (  ) Partnership
                  ( X ) Organization (Other than Partnership or Joint Venture)

Business Description: MANUFACTURES A TWO WHEELED, INLINE SKATEBOARD

Location of All Premises You Own, Rent or Occupy:

### PREMIUM:

| Classification | Code<br>No. | *<br>Premium<br>Basis | Rates | | Advance Premium | |
|---|---|---|---|---|---|---|
| | | | Pr/Co | All Other | Pr/Co | All Other |
| SPORTING<br>GOODS MFG. | 59306 | (d)$3,000,000 | $11.00 | INCL | $33,000 | INCL |

\* (a) Admissions; (b) Area; (c) Each; (d) Gross Sales;
  (e) Payroll; (f) Total Cost; (g) Units; (h) Other

**Total Advance Premium $ 33,000**

Premium shown is payable: $ 33,000      at inception;
    $

**FORMS AND ENDORSEMENTS** applicable to all Coverage Parts and made part of this policy at time of issue are listed on the attached Forms and Endorsements Schedule CG 88 01 (11/85).

BUSINESSPRO (Reg. U.S. Pat. Off.)
CG 74 00 (Ed. 11/85) PRO       (Page 1 of 1)

EXH 2-4



**GREAT**AMERICAN.
INSURANCE COMPANIES

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AES 3013**
(Ed. 05 01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### SCHEDULE

| DEDUCTIBLE AMOUNT AND COVERAGE | DEDUCTIBLE BASIS |
|---|---|
| $      Bodily Injury Liability | ( X ) per claim |
| $      Personal Injury and Advertising Injury Liability | (   ) per occurrence |
| $      Property Damage Liability | Applicable to the sum of |
| $      Bodily Injury and Property Damage Liability | damages, Supplementary Payments and defense costs |
| $ 5,000    Bodily Injury, Personal Injury Advertising Injury and Property Damage Liability combined | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT**

(Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury," "personal injury," "advertising injury," and "property damage," however caused):

1. Our obligation under Bodily Injury Liability, Personal Injury Liability, Advertising Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

2. The deductible applies for the deductible amount and coverage option and on the deductible basis indicated in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

   a. **PER CLAIM BASIS** − If the deductible amount indicated in the Schedule is on a "per claim" basis, that deductible applies as follows:

      (1) Under the Bodily Injury Liability, Personal Injury and Advertising Injury Liability or Property Damage Liability Coverage, respectively:

         (a) to the sum of damages, supplementary payments and "defense costs" because of "bodily injury" sustained by any one person;

         (b) to the sum of damages, supplementary payments and "defense costs" because of "personal injury" and "advertising injury" sustained by any one person; or

         (c) to the sum of damages, supplementary payments and "defense costs" because of "property damage" sustained by any one person;

AES 3013 (Ed. 05/01) PRO        (Page 1 of 2)        EXH 2- 5

(2) under Bodily Injury and/or Property Damage Liability Coverage combined to the sum of damages, supplementary payments and "defense costs" because of "bodily injury" and "property damage" sustained by any one person; or

(3) under Bodily Injury, Personal Injury, Advertising Injury and/or Property Damage Liability Coverage combined to the sum of damages, supplementary payments and "defense costs" because of "bodily injury," "personal injury," "advertising injury" and "property damage" sustained by any one person as a result of any one "occurrence" or offense.

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury," a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "personal injury," "advertising injury" and "property damage," person includes organization.

**b.    PER OCCURRENCE BASIS** – If the deductible amount indicated in the Schedule is on a per "occurrence" basis, that deductible applies as follows:

(1) under the Bodily Injury Liability Personal Injury and Advertising Injury Liability or Property Damage Liability Coverage, respectively:

(a) to the sum of damages, supplementary payments and "defense costs" because of "bodily injury";

(b) to the sum of damages, supplementary payments and "defense costs" because of "personal injury" and "advertising injury"; or

(c) to the sum of damages, supplementary payments and "defense costs" because of "property damage";

(2) under Bodily Injury and/or Property Damage Liability Coverage combined, to the sum of damages, supplementary payments and "defense costs" because of all "bodily injury" and "property damage"; or

(3) under Bodily Injury, Personal Injury, Advertising Injury and/or Property Damage Liability Coverage combined, to the sum of damages, supplementary payments and "defense costs" because of "bodily injury," "personal injury," "advertising injury" and "property damage" as a result of any one "occurrence" or offense, regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

(4) The terms of this insurance, including those with respect to:

(a) our right and duty to defend any "suits" seeking those damages; and

(b) your duties in the event of an "occurrence," offense, claim or "suit"

apply irrespective of the application of the deductible amount.

(5) We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount that has been paid by us.

(6) The deductible applies whether or not a payment for damages is made.

(7) "Defense Costs" mean all expenses incurred in the investigation, defense and settlement of any claim or "suit" under this policy including attorneys fees, court reporter fees, charges for independent medical examinations and expert witnesses, provided such claim expense is incurred by us or with our prior written permission. "Defense Costs" will not include salaried employees, counsel on retainer and office expense of either you or us.



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AES 4000**
(Ed. 11 98)

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our

consent. This policy's terms can be amended or waived only by endorsement issued by us and made part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. make inspections and surveys at any time;

   b. give you reports on the conditions we find; and

   c. recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. are safe or healthful; or

   b. comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

Copyright, Insurance Services Office, Inc. 1998
(Page 1 of 2)

EXH 2-7

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

**1.** is responsible for the payment of all premiums; and

**2.** will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**IN WITNESS WHEREOF,** we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

President

Copyright, Insurance Services Office, Inc. 1998
(Page 2 of 2)

EXH 2- 8



**GREAT**AMERICAN.
INSURANCE COMPANIES

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AES 3005**
(Ed. 05 01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## COMMON POLICY CONDITIONS AMENDMENT

The following Conditions are added to the **COMMON POLICY CONDITIONS** of this policy.

**G. Fraud and Misrepresentation**

**a.** This policy was issued based on the information supplied on an application and other correspondence including your claim or loss history. This information is considered to be part of this policy.

**b.** You should review this information carefully as the truth of this information was of paramount importance in influencing our decision to issue this policy.

**c.** You, for all the insureds under this policy, do warrant the truth of such information to the best of your knowledge at the inception date of this policy.

**d.** If such information is false or misleading, it may cause denial of coverage or voiding of the policy.

**H. Premium Financing/Cancellation of Financed Policy**

**a.** When we receive notification that the premium for this policy has been advanced by a premium financed company, we will acknowledge receipt of the premium finance agreement to the finance company on our form, when requested, but we will not amend or extend this policy.

**b.** When we otherwise become aware that you financed all or part of this policy's premium, regardless of whether or not we receive a notice of premium financing, we will not be bound, as respects coverage we provide, by the terms of your finance agreement. This policy alone governs coverage.

**c.** When you sign a premium finance agreement, by the terms of the agreement, you may be giving the premium finance company the right, under certain conditions, to cancel this policy on your behalf. When we receive notice of cancellation from the finance company, we will recognize their request for termination of this insurance and we will pay any return premium due as directed by the premium finance company. The return premium will be calculated on a pro-rata basis.

**d.** The premium finance company will usually require that payment of any return premium be made directly to them and we will honor that request. If the requested termination date set by the premium finance company conflicts with other policy provisions or the operation of law, we will comply with the policy provision and/or applicable law. You must resolve any resulting premium differences directly with the finance company.

**e.** The twenty-five percent (25%) minimum retained premium described in **A. Cancellation** may not be financed as it is not refundable.

AES 3005 (Ed. 05/01) XS

EXH 2- 9

**GAC 3323**
(Ed. 01 02)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ABSOLUTE MOLD EXCLUSION

Regardless of cause, whether by proximate cause, efficient cause, sole cause, contributing cause, or as resulting damage from any such cause or causes, this policy does not apply to any loss, demand, claim or suit arising out of or related in any way to mold, mildew, fungus, spores or any similar or related biological entity, however designated.

The Company shall have no duty of any kind with respect to any such loss, demand, claim or suit.

This exclusion applies to all coverages under this policy.

**All other terms and conditions remain unchanged.**

GAC 3323 (Ed. 01/02) XS

CG 21 16
(Ed. 07/98)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description Of Professional Services:**

1.  ALL OPERATIONS AND PRODUCTS OF THE INSURED INCLUDING BUT NOT LIMITED TO ANY PERSON OR ENTITY WORKING ON BEHALF OR UNDER THE SUPERVISION OF THE INSURED.

2.

3.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

Copyright, Insurance Services Office, Inc., 1997



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

CG 83 61
(Ed. 02 05)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SILICA OR RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM – COVERAGE
FOR OPERATIONS OF DESIGNATED CONTRACTOR

**A.** The following exclusion is added to paragraph **2., Exclusions**, of **SECTION I. Coverage A. Bodily Injury and Property Damage Liability**, of the **Commercial General Liability Coverage Form**, and to paragraph **2., Exclusions**, of **SECTION I. COVERAGES**, of the **Owners and Contractors Protective Liability Coverage Form - Coverage for Operations of Designated Contractor**:

**2. Exclusions**

This insurance does not apply to:

**Silica or Related Dust**

**a.** Any "bodily injury" which would not have occurred, in whole or in part, but for the actual, alleged, threatened, or suspected inhalation or ingestion of, exposure to, or contact with, "silica" or dust that includes or contains "silica."

**b.** Any "property damage" which would not have occurred, in whole or in part, but for the actual, alleged, threatened, or suspected contact with, exposure to, existence of, or presence of, "silica" or dust that includes or contains "silica."

**c.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or dust that includes or contains "silica," by any insured or by any other person or entity.

This exclusion applies regardless of:

(i) the circumstances of or leading to such actual, alleged, threatened, or suspected inhalation, ingestion, exposure, contact, existence, or presence; and

(ii) whether the "silica" or dust that includes or contains "silica," is mixed or combined with, or also includes or contains, any other substance.

**B.** The following exclusion is added to paragraph **2., Exclusions** of **SECTION I. Coverage B. Personal and Advertising Injury Liability** of the **Commercial General Liability Coverage Form**:

**2. Exclusions**

This insurance does not apply to:

**Silica or Related Dust**

**a.** Any "personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged, threatened, or suspected inhalation or ingestion of, contact with, exposure to, existence of, or presence of, "silica" or dust that includes or contains "silica."

**b.** Any loss, cost, or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or dust that includes or contains "silica," by any insured or by any other person or entity.

This exclusion applies regardless of:

(i) the circumstances of or leading to such actual, alleged, threatened, or suspected inhalation, ingestion, exposure, contact, existence, or presence; and

(ii) whether the "silica" or dust that includes or contains "silica," is mixed or combined with, or also includes or contains, any other substance.

**C.** The following definition is added to the **Definitions** Section:

**"Silica"** means silicon dioxide ($SiO_2$) in any form, from any source.

AES 3012
(Ed. 07 04)

## GENERAL SERVICE OF SUIT ENDORSEMENT
### (Not Applicable in Delaware or Pennsylvania)

Pursuant to any statute of any state or district of the United States of America that makes provision therefor, the Insurer hereby designates the commissioner, superintendent or director of insurance or other officer specified for that purpose in the statute and his or her successors in office and duly authorized deputies in the state where this policy is issued, as the Insurer's true and lawful attorney for service of legal process in any action, suit or proceeding brought in the state where this policy is issued by or on behalf of an insured or beneficiary against the Insurer arising out of the insurance issued under this policy. Any legal process received by such attorney for service of legal process shall be forwarded, except as provided below, to the attention of: Eve Cutler Rosen, General Counsel, Great American Insurance Company, 580 Walnut Street, Cincinnati, Ohio 45202.

In **California**, any legal process received by the Insurer's statutory attorney for service of process shall be forwarded to the attention of: Jere Keprios, The CT Corporation System, 818 West Seventh Street, Los Angeles, California 90017.

In **Maine**, the Insurer hereby designates CT Corporation System as its attorney for service of legal process in any action relating to this policy, and directs that all such legal process be mailed to: CT Corporation System, One Portland Square, Portland, Maine 04101.

In **Oregon**, the Insurer and the insured policyholder hereby agree to waive the provisions of Oregon Insurance Code Section 735.490 requiring that service of legal process in any action relating to this policy shall be served on the insurance agent who registered or delivered this policy, and instead agree that such service of legal process be mailed directly to Eve Cutler Rosen, General Counsel, Great American Insurance Company, 580 Walnut Street, Cincinnati, Ohio 45202.

In **Rhode Island**, the Insurer hereby designates CT Corporation System as its attorney for service of legal process in any action relating to this policy, and directs that all such legal process be mailed to: CT Corporation System, 10 Weybosset Street, Providence, Rhode Island 02903.

The foregoing designations of attorney for service of legal process upon the Insurer shall not constitute a waiver of the Insurer's rights to remove, remand, dismiss or transfer any suit or proceeding from any court, or to commence any suit or other proceeding in any court of competent jurisdiction.

CG 00 01
(Ed. 10 01)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - DEFINITIONS

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But

      **(1)** the amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      **(2)** our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of

judgments or settlements under Coverages A. or B. or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A. and B.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** the "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

Copyright, ISO Properties, Inc., 2000

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any Insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)** reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **(2)** receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   **(3)** becomes aware of any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**2. Exclusions**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the Insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

   **(1)** that the Insured would have in the absence of the contract or agreement; or

   **(2)** assumed in a contract or agreement that is an "insured contract"; provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an Insured are deemed to be damages because of "bodily injury" or "property damage," provided:

     **(a)** liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

     **(b)** such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any Insured may be held liable by reason of:

   **(1)** causing or contributing to the intoxication of any person;

   **(2)** the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   **(3)** any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation and Similar Laws**

Any obligation of the Insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the Insured arising out of and in the course of:

    (a) employment by the Insured; or

    (b) performing duties related to the conduct of the Insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) whether the Insured may be liable as an employer or in any other capacity; and

(2) to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the Insured under an "insured contract."

**f. "Pollution"**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any Insured; However, this subparagraph does not apply to:

        (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

        (ii) "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an Additional Insured with respect to your ongoing operations performed for that Additional Insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any Insured, other than that Additional Insured; or

        (iii) "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

    (b) at or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

        (i) any Insured; or

        (ii) Any person or organization for whom you may be legally responsible; or

    (d) at or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such Insured, contractor or subcontractor. However, this subparagraph does not apply to:

        (i) "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical,

Copyright, ISO Properties, Inc., 2000
(Page 3 of 19)

hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such Insured, contractor or subcontractor;

(ii) "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

(e) At or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants."

(2) Any loss, cost, or expense arising out of any:

(a) request, demand, order or statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

However, this paragraph does not apply to liability for damages because of "property damage" that the Insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any Insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any Insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any Insured.

This exclusion does not apply to:

(1) a watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

Copyright, ISO Properties, Inc., 2000

(a) less than 26 feet long; and

(b) not being used to carry persons or property for a charge;

(3) parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the Insured;

(4) liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment."

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) the transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any Insured; or

(2) the use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

(1) property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for

any reason, including prevention of injury to a person or damage to another's property;

(2) premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) property loaned to you;

(4) personal property in the care, custody or control of the Insured;

(5) that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Section III – Limits of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products–completed operations hazard."

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

Copyright, ISO Properties, Inc., 2000

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products–completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "your product";

(2) "your work"; or

(3) "impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury."

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in Section III – Limits of Insurance

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) the amount we will pay for damages is limited as described in Section III; Limits of Insurance, and

(2) our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages A. or B. or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A. and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

Copyright, ISO Properties, Inc., 2000

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the Insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the Insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the Insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the Insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement."

**i. Infringement Of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an Insured whose business is:

**(1)** advertising, broadcasting, publishing or telecasting;

**(2)** designing or determining content of websites for others; or

**(3)** an Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the Insured hosts, owns, or over which the Insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Polution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Polution-Related**

Any loss, cost or expense arising out of any:

(1) request, demand or order that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

## COVERAGE C. MEDICAL PAYMENTS

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1) on premises you own or rent;

   (2) on ways next to premises you own or rent; or

(3) because of your operations;

provided that:

(1) the accident takes place in the "coverage territory" and during the policy period;

(2) the expenses are incurred and reported to us within one year of the date of the accident; and

(3) the injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable Limit of Insurance. We will pay reasonable expenses for:

(1) first aid administered at the time of an accident;

(2) necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

   To any Insured, except "volunteer workers."

   b. **Hired Person**

   To a person hired to do work for or on behalf of any Insured or a tenant of any Insured.

   c. **Injury On Normally Occupied Premises**

   To a person injured on that part of premises you own or rent that the person normally occupies.

Copyright, ISO Properties, Inc., 2000

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any Insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products—completed operations hazard."

**g. Coverage A. Exclusions**

Excluded under Coverage A.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A. AND B.

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an Insured we defend:

   **a.** All expenses we incur.

   **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

   **d.** All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the Insured in the "suit."

**f.** Prejudgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the Limits of Insurance.

2. If we defend an Insured against a "suit" and an indemnitee of the Insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

   **a.** the "suit" against the indemnitee seeks damages for which the Insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   **b.** this insurance applies to such liability assumed by the Insured;

   **c.** the obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the Insured in the same "insured contract";

   **d.** the allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the Insured and the interests of the indemnitee;

   **e.** the indemnitee and the Insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the Insured and the indemnitee; and

   **f.** The indemnitee:

   (1) agrees in writing to:

(a) cooperate with us in the investigation, settlement or defense of the "suit";

(b) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) notify any other insurer whose coverage is available to the indemnitee; and

(d) cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) provides us with written authorization to:

(a) obtain records and other information related to the "suit"; and

(b) conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I − Coverage A. − Bodily Injury and Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an Insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** we have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

**b.** the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are Insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an Insured. Your members, your partners, and their spouses are also Insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an Insured. Your members are also Insureds, but only with respect to the conduct of your business. Your managers are Insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an Insured. Your "executive officers" and directors are Insureds, but only with respect to their duties as your officers or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an Insured. Your trustees are also Insureds, but only with respect to their duties as trustees.

2. Each of the following is also an Insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are Insureds for:

      **(1)** "Bodily injury" or "personal and advertising injury":

Copyright, ISO Properties, Inc., 2000

CG 00 01 (Ed. 10/01) XS

EXH 2- 24

**(a)** to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co–"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** to the spouse, child, parent, brother or sister of that co–"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

**(c)** for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

**(d)** arising out of his or her providing or failing to provide professional health care services.

**(2)** "property damage" to property:

**(a)** owned, occupied or used by,

**(b)** rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees," "volunteer workers," any partner or member (if you are a partnership or joint venture) or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** with respect to liability arising out of the maintenance or use of that property; and

**(2)** until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an Insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an Insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an Insured with respect to:

**a.** "bodily injury" to a co–"employee" of the person driving the equipment; or

**b.** "property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an Insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage A. does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B. does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

Copyright, ISO Properties, Inc., 2000

No person or organization is an Insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. insureds;

   b. claims made or "suits" brought; or

   c. persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. medical expenses under Coverage C.;

   b. damages under Coverage A. except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A. for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B. for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. damages under Coverage A.; and

   b. medical expenses under Coverage C.

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the Damage To Premises Rented to You Limit is the most we will pay under Coverage A. for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C. for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the Insured or of the Insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) how, when and where the "occurrence" or offense took place;

      (2) the names and addresses of any injured persons and witnesses; and

      (3) the nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any Insured, you must:

Copyright, ISO Properties, Inc., 2000
(Page 12 of 19)

EXH 2- 26

(1) immediately record the specifics of the claim or "suit" and the date received; and

(2) notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved Insured must:

(1) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) authorize us to obtain records and other information;

(3) cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

d. No Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. to join us as a party or otherwise bring us into a "suit" asking for damages from an Insured; or

b. to sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an Insured but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and

release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the Insured for a loss we cover under Coverages **A.** or **B.** of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) that is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) that is Fire insurance for premises rented to you; or or temporarily occupied by you with permission of the owner.

(c) that is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) if the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I − Coverage **A.** − Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or oper-

Copyright, ISO Properties, Inc., 2000

ations for which you have been added as an Additional Insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverage A. or B. to defend the Insured against any "suit" if any other insurer has a duty to defend the Insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) the total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. the statements in the Declarations are accurate and complete;

b. those statements are based upon representations you made to us; and

c. we have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. as if each Named Insured were the only Named Insured; and

b. separately to each Insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the Insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to

us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   **a.** the United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** international waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   **c.** All other parts of the world if the injury or damage arises out of:

      **(1)** goods or products made or sold by you in the territory described in **a.** above;

      **(2)** the activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

      **(3)** "personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the Insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   **a.** it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** you have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   **a.** the repair, replacement, adjustment or removal of "your product" or "your work"; or

   **b.** your fulfilling the terms of the contract or agreement.

Copyright, ISO Properties, Inc., 2000

**9.** "Insured contract" means:

   **a.** a contract for a lease of premises. How-ever, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or tem-porarily occupied by you with permission of the owner is not an "insured contract";

   **b.** a sidetrack agreement;

   **c.** any easement or license agreement, ex-cept in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** an obligation, as required by ordinance, to indemnify a municipality, except in con-nection with work for a municipality;

   **e.** an elevator maintenance agreement;

   **f.** that part of any other contract or agree-ment pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

    **(1)** that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition op-erations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

    **(2)** that indemnifies an architect, engineer or surveyor for injury or damage aris-ing out of:

     **(a)** preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, sur-veys, field orders, change orders or drawings and specifications; or

     **(b)** giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    **(3)** under which the Insured, if an archi-tect, engineer or surveyor, assumes li-ability for an injury or damage arising out of the Insured's rendering or fail-ure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agree-ment between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not in-clude a "temporary worker."

**11.** "Loading or unloading" means the handling of property:

   **a.** after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** while it is in or on an aircraft, watercraft or "auto"; or

   **c.** while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a me-chanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

**12.** "Mobile equipment" means any of the follow-ing types of land vehicles, including any at-tached machinery or equipment:

   **a.** bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** vehicles maintained for use solely on or next to premises you own or rent;

   **c.** vehicles that travel on crawler treads;

Copyright, ISO Properties, Inc., 2000

**d.** vehicles, whether self–propelled or not, maintained primarily to provide mobility to permanently mounted:

   **(1)** power cranes, shovels, loaders, diggers or drills; or

   **(2)** road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** vehicles not described in **a., b., c.** or **d.** above that are not self–propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **(1)** air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   **(2)** cherry pickers and similar devices used to raise or lower workers;

**f.** vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self–propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **(1)** equipment designed primarily for:

     **(a)** snow removal;

     **(b)** road maintenance, but not construction or resurfacing; or

     **(c)** street cleaning;

   **(2)** cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **(3)** air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following offenses:

   **a.** false arrest, detention or imprisonment;

   **b.** malicious prosecution;

   **c.** the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products–completed operations hazard":

   **a.** includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

     **(1)** products that are still in your physical possession; or

     **(2)** work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

Copyright, ISO Properties, Inc., 2000

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or un-loading" of that vehicle by any Insured;

(2) the existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. an arbitration proceeding in which such damages are claimed and to which the Insured must submit or does submit with our consent; or

b. any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee," and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) you;

(b) others trading under your name; or

(c) a person or organization whose business or assets you have acquired; and

Copyright, ISO Properties, Inc., 2000

(2) containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

(1) warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) the providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

(1) work or operations performed by you or on your behalf; and

(2) materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

(1) warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

(2) the providing of or failure to provide warnings or instructions.

Copyright, ISO Properties, Inc., 2000

CG 21 35
(Ed. 10 01)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION--COVERAGE C--MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description and Location of Premises or Classification:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1.  Section I Coverage C Medical Payments does not apply and none of the references to it in the Coverage Part apply; and

2.  The following is added to Section I Supplementary Payments:

    h.  Expenses incurred by the Insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

Copyright, ISO Properties, Inc., 2000
(Page 1 of 1)
EXH 2- 34



GREAT AMERICAN INSURANCE COMPANIES®
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

IL 00 21
(Ed. 04 98)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT—RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT
    OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) with respect to which an "Insured" under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

      (1) the "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "Insured" or (b) has been discharged or dispersed therefrom;

Copyright, Insurance Services Office, Inc., 1997

(Page 1 of 2)

EXH 2- 35

(2) the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "Insured"; or

(3) the "bodily injury" or "property damage" arises out of the furnishing by an "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"hazardous properties" includes radioactive, toxic or explosive properties;

"nuclear material" means "source material," "special nuclear material" or "by-product material";

"source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) any "nuclear reactor";

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste";

(c) any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1997

IL 00 21 (Ed. 04/98) XS

EXH 2- 36

CG 00 55
(Ed. 03 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF OTHER INSURANCE CONDITION
## (OCCURRENCE VERSION)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph **4.b.** of the **Other Insurance** Condition – **(SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS)** is replaced by the following:

**4. Other Insurance**

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) that is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) that is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(c) if the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of **Coverage A (Section I).**

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or oper-

ations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under **Coverages A** or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) the total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Copyright, Insurance Services Office, Inc., 1996

CG 21 47
(Ed. 07 98)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

1. a person arising out of any:

   (a) refusal to employ that person;

   (b) termination of that person's employment; or

   (c) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2. the spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b) or (c) above is directed.

   This exclusion applies:

   1. whether the insured may be liable as an employer or in any other capacity; and

   2. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

1. A person arising out of any:

   (a) refusal to employ that person;

   (b) termination of that person's employment; or

   (c) employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, decipline, defamation, harassment, humiliation, discrimination directed at that person; or

2. the spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b) or (c) above is directed.

   This exclusion applies:

   1. whether the insured may be liable as an employer or in any other capacity; and

   2. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1998

EXH 2-38



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AES 3016**
**(Ed. 05 01)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PRE-EXISTING DAMAGE EXCLUSION**

This insurance does not apply to:

1. Any loss or claim for damages related to "bodily injury" or "property damage" whether known or unknown:

   a. which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier); or

   b. which is, or is alleged to be, in the process of occurring as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier).

2. Any loss or claim for damages arising out of or related to "bodily injury" or "property damage," whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier).

We will have no duty to defend any Insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.

AES 3016 (Ed. 05/01) XS



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AES 3017**
**(Ed. 05 01)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ABSOLUTE POLLUTION EXCLUSION

This insurance does not apply to:

a. "Bodily injury," "property damage" or "personal injury" arising, whether in whole or in part, and whether directly or indirectly, out of the actual, alleged, suspected, threatened or feared discharge, dispersal, seepage, migration, release or escape of any "pollutant," at any time or place and under any circumstance.

b. Any loss, cost or expense arising out of any:

(1) request, demand, order, writ, injunction or judgment that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, prevent, abate, or in any way respond to, or assess the presence or effect of any "pollutant" ; or

(2) claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, preventing, abating, or in any way responding to, or assessing the presence or effect of any "pollutant."

"Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant including, but not limited to, smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

AES 3017 (Ed. 05/01) XS

EXH 2- 40



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AES 3018
(Ed. 05 01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ABSOLUTE ASBESTOS EXCLUSION

This insurance does not apply to:

**a.** "Bodily injury," "property damage" or "personal injury" arising, whether in whole or in part, and whether directly or indirectly, out of any kind of asbestos including, but not limited to, any kind of asbestos contained or incorporated in any material or product.

**b.** Any loss, cost or expense arising out of any:

**(1)** request, demand, order, writ, injunction or judgment that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, prevent, abate, or in any way respond to, or assess the presence or effect of asbestos; or

**(2)** claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, preventing, abating, or in any way responding to, or assessing the presence or effect of asbestos.

AES 3018 (Ed. 05/01) XS



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**AES 3019**
**(Ed. 05 01)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ABSOLUTE LEAD EXCLUSION

This insurance does not apply to:

a. "Bodily injury," "property damage" or "personal injury" arising, whether in whole or in part, and whether directly or indirectly, out of lead, including, but not limited to, lead contained or incorporated in any material or product.

b. Any loss, cost or expense arising out of any:

(1) request, demand, order, writ, injunction or judgment that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, prevent, abate, or in any way respond to, or assess the presence or effect of any kind of lead; or

(2) claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, preventing, abating, or in any way responding to, or assessing the presence or effect of any kind of lead.

AES 3019 (Ed. 05/01) XS

EXH 2-42



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AES 3007
(Ed. 05 01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADVERTISING INJURY AMENDMENT

This insurance does not apply to "advertising injury" arising out of any actual or alleged infringement of intellectual property rights or violation of laws relating to patents, trademarks, trade dress, trade names, trade secrets and know–how.

AES 3007 (Ed. 05/01) XS



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

AES 3004
(Ed. 05 01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PREMIUM AUDIT CONDITION AMENDMENT

Condition **5.**, Premium Audit (Section **IV** ) is replaced by the following:

**5. Premium Audit, Minimum Premium - Minimum Retained Premium**

**a.** We will compute all premiums for this Coverage Form in accordance with the terms and conditions of this policy.

**b.** Premium shown in this policy as Advance Premium is a deposit premium. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable upon notice to the first Named Insured. If the sum of the Advance and Audit Premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured, subject to the minimum and minimum retained premiums described below.

**c.** In no event will the final premium retained by us be less than the minimum premium shown in the Declarations of this policy. If no other premium is designated specifically as a minimum premium. Such minimum premium, the Advance Premium shown in the Declarations is the minimum premium. Such minimum premium is subject to the short rate or prorate adjustment according to policy provisions in case of cancellation of the policy.

**d.** This policy is also subject to a minimum retained premium of 25% of the Advance Premium shown in the Declarations of this policy. Such minimum retained premium is not subject to prorate or short rate adjustment in the event of cancellation by you and we shall retain no less than the minimum retained premium regardless of the policy term. Cancellation of the policy for non-payment of premium shall be deemed a request by you for cancellation of this policy thereby invoking the minimum retained premium, unless the short rate calculation earns more than the minimum retained premium.

**e.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

CG 00 67
(Ed. 03 05)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph **2., Exclusions** of **SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**2. Exclusions**

This insurance does not apply to:

**Distribution of Material in Violation of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. the CAN–SPAM Act of 2003, including any amendment of or addition to such law; or

c. any statute, ordinance or regulation, other than the TCPA or CAN–SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to paragraph **2., Exclusions** of **SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2. Exclusions**

This insurance does not apply to:

**Distribution of Material in Violation of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. the CAN–SPAM Act of 2003, including any amendment of or addition to such law; or

c. any statute, ordinance or regulation, other than the TCPA or CAN–SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Copyright, ISO Properties, Inc., 2004

EXH 2- 45

CG 00 62
(Ed. 12 02)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WAR LIABILITY EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABIL-ITY** is replaced by the following:

**2. Exclusions**

The insurance does not apply to:

**i. War**

"Bodily injury" or "property damage," however caused, arising, directly or indirectly, out of:

**(1)** war, including undeclared or civil war; or

**(2)** warlike action by a military force, including action in hindering or defending against an actual or ex-pected attack, by any govern-ment, sovereign or other author-ity using military personnel or other agents; or

**(3)** insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hin-dering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:**

**2. Exclusions**

This insurance does not apply to:

**War**

"Personal and advertising injury," however caused, arising, directly or indirectly, out of:

**a.** war, including undeclared or civil war; or

**b.** warlike action by a military force, in-cluding action in hindering or defend-ing against an actual or expected at-tack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **SECTION I - COVERAGE C - MEDICAL PAYMENTS** does not apply.

Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **SECTION I - COVERAGE C - MEDICAL PAYMENTS** since "bodily injury" arising out of war is now excluded under Coverage A.

Copyright, ISO Properties, Inc., 2002

CG 00 62 (Ed. 12/02) XS

EXH 2- 46



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

## GENERAL LIABILITY

## NOTICE TO POLICYHOLDERS

## RESTRICTIONS OF COVERAGE

This notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of any significant restrictions of coverage that were made in each policy form and endorsement.

The endorsements below replace the current war exclusion to expand beyond contractually assumed liabilities and medical payments or introduce a war exclusion in forms which did not contain one.

Please read your policy, and the endorsements attached to your policy, carefully.

**CG 00 62 12 02 – War Liability Exclusion (Commercial General Liability Coverage Part)**

When this endorsement is attached to your policy, coverage is restricted to exclude bodily injury, property damage, or personal and advertising injury, however caused, arising, directly or indirectly, out of:

* war, including undeclared or civil war;
* warlike action by a military force; or
* insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

A specific Medical Payments Exclusion is no longer needed in the policy due to the fact that they are now subject to Exclusion g. of Paragraph **2. Exclusions of SECTION I - COVERAGE C - MEDICAL PAYMENTS**, which are now excluded under Coverage **A.**

**CG 00 63 12 02 – War Liability Exclusion (Owners and Contractors Protective Liability Coverage Part and Products/Completed Operations Liability Coverage Part)**

When this endorsement is attached to your policy, coverage is restricted to exclude bodily injury or property damage, however caused, arising, directly or indirectly, out of:

* war, including undeclared or civil war;
* warlike action by a military force; or
* insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**CG 00 64 12 02 – War Liability Exclusion (Liquor Liability Coverage Part, Pollution Liability Coverage Part, Railroad Protective Liability Coverage Part, and Underground Storage Tank Policy)**

When this endorsement is attached to your policy, a war exclusion is added to exclude injury or damage, however caused, arising, directly or indirectly, out of:

* war, including undeclared or civil war;
* warlike action by a military force; or
* insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

GAC 3324C
(Ed. 01 03)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto, it is agreed that this insurance does not apply to any liability, loss, damage, cost or expense of whatsoever nature, directly or indirectly, regardless of any other cause or event contributing concurrently or in any other sequence and caused by or resulting from or in connection with:

**A.  War and Military Action**

Any war, invasion, acts of foreign or domestic enemies, hostilities, (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property, including loss of access, by or under the order of any government or public or local authority.

**B.  Terrorism**

Any terrorist act, including but not limited to an act of terrorism, or preparation in respect of action, or threat of action, designed to influence the government de jure or de facto of any nation or any political division thereof, or in pursuit of political, religious, ideological, or similar purposes to intimidate the public or a section of the public of any nation by any person or group(s) of persons whether acting alone or on behalf of or in connection with any organization(s) or government(s) de jure or de facto, and which (i) involves violence against one or more persons; or (ii) involves damage to property; or (iii) endangers life other than that of the person committing the action; or (iv) creates a risk to health or safety of the public or a section of the public.

**C.  Biological or Chemical Incident**

Any incident involving the threat or actual use, release or escape of pathogenic or poisonous biological or chemical materials or of nuclear materials, or to any incident that directly or indirectly results in nuclear reaction or radiation or radioactive contamination. This provision supersedes any other exclusion relating to nuclear reaction, nuclear radiation or radioactive contamination.

The Company shall not have a duty of any kind including the duty to defend any claim or suit seeking to impose such loss, costs, expenses, liability for damages, or any other relief.

This exclusion applies to all coverages under this policy.

**All other terms and conditions remain unchanged.**



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

IL 72 10
(Ed. 01 03)

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

### DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

**A.   Rejection Of Offer**

You have rejected the offer of terrorism coverage for Acts of Terrorism that are certified under the Terrorism Risk Insurance Act of 2002 as an Act of Terrorism. An exclusion of terrorism losses has been made a part of this policy.

**B.   Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceed the applicable insurer retention. **You have rejected this offer of coverage.**

IL 72 10 (Ed. 01/03) XS

EXH 2-49



**Administrative Offices**
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

**TAU 2522**
(Ed. 08 94)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LIMITATION OF COVERAGE TO DESIGNATED PRODUCTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### SCHEDULE

**Description of your product:**

TWO WHEELED, INLINE SKATEBOARD (THE WAVE)

This insurance applies only to "bodily injury," "property damage," "personal injury" or "advertising injury" included in the "products—completed operations hazard" and arising out of "your product" shown in the Schedule.



GREAT AMERICAN INSURANCE COMPANIES
Subsidiaries of American Financial Corporation
580 WALNUT STREET, CINCINNATI, OHIO 45202

CG 20 15
(Ed. 11 88)

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

### ADDITIONAL INSUREDS--VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

#### SCHEDULE

**Name of Person or Organization (Vendor):**     ALL VENDORS

**Your Products:**

(If no entry appears above, information required to complete this endorsement
will be shown in the Declarations as applicable to this endorsement.)

**WHO IS AN INSURED** (Section II) is amended to include as an insured any person or
or organization (referred to below as "vendor") shown in the Schedule, but
only with respect to "bodily injury" or "property damage" arising out of
"your products" shown in the Schedule which are distributed or sold in the
regular course of the vendor's business, subject to the following additional
exclusions:

1. The insurance afforded the vendor does not apply to:

    a. "Bodily injury" or "property damage" for which the vendor is obli-
       gated to pay damages by reason of the assumption of liability in a
       contract or agreement. This exclusion does not apply to liability
       for damages that the vendor would have in the absence of the con-
       tract or agreement.

    b. Any express warranty unauthorized by you;

    c. Any physical or chemical change in the product made intentionally
       by the vendor;

    d. Repackaging, unless unpacked solely for the purpose of inspection,
       demonstration, testing, or the substitution of parts under instruc-
       tions from the manufacturer, and then repackaged in the original
       container;

Copyright, Insurance Services Office, Inc., 1986, 1988
EXH 2-51

e.  Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

f.  Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

g.  Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2.  This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

Copyright, Insurance Services Office, Inc., 1986, 1988

**AES 3103**
(Ed. 06 04)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## METAL GAS EXCLUSION

This insurance does not apply to "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" arising out of or allegedly due to the existence, inhalation, exposure to or contact with Manganese, Aluminum, Zinc, Magnesium, Cadmium, Nickel, Beryllium, Chromium, Arsenic, Iron, Iron Oxide, Copper, Copper Oxide or any other metal gas, fume or metal by-product of metal heating, processing or welding.



Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

CG 82 25
(Ed. 03 98)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## COMMERCIAL GENERAL LIABILITY
## BLANKET ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

GENERAL LIABILITY COVERAGE PART

**A. WHO IS AN INSURED (Section II)** is amended to include as an Insured any person or organization (called additional Insured) whom you are required to add as an additional Insured on this policy under:

1. a written contract or agreement or;

2. an oral contract or agreement where a certificate of insurance showing that person or organization as an additional Insured has been issued;

but the written or oral contract must be:

3. currently in effect or becoming effective during the term of this policy; and

4. executed prior to the "bodily injury," "property damage," "personal injury," or "advertising injury" which first manifests on or after the date of the inception of this policy period, as shown in the Declarations Page of the policy but prior to the earlier of the date of expiration or cancellation of this policy.

**B.** With respect to the insurance afforded such Additional Insured, the following additional provisions apply:

1. that person or organization is only an Additional Insured with respect to liability arising out of:

a. premises or equipment you own, rent, lease, or occupy; or

b. your ongoing operations performed for that Additional Insured by or for you.

The insurance provided to such Additional Insured does not apply to "bodily injury" or "property damage" included within the "products—completed operations hazard."

2. The Limits of Insurance applicable to any such Additional Insured are those specified in the written contract or agreement or in the Declarations for this policy, whichever are less and are subject to the terms and conditions of this coverage form. These Limits of Insurance are inclusive of and not in addition to the Limits of Insurance shown in the Declarations.

3. A person's or organization's status as an Additional Insured under this endorsement ends 30 days after your operations or agreement for that Additional Insured are completed or cease, or the expiration of this policy, whichever is earlier.

**C.** The insurance provided to any Additional Insured does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of an architect's, engineer's, or surveyors' rendering of or failure to render any professional services including:

1. the preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, design or specifications; and

2. supervisory, inspection, or engineering services.

CG 82 25 (Ed. 03/98) XS                (Page 1 of 2)                          EXH 2- 54

Coverage provided herein shall serve as excess over any other valid and collectible insurance available to any Additional Insured whether the other insurance is primary, excess, contingent or on any other basis unless a written contractual agreement specifically requires this insurance be primary.

EXH 2- 55

## GREAT AMERICAN E & S INSURANCE COMPANY

### PLEASE READ THIS CAREFULLY.

### SURPLUS LINES NOTIFICATION

NOTICE:

1.  THE INSURANCE POLICY THAT YOU (x ) HAVE PURCHASED  (    ) ARE APPLYING TO PURCHASE IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE INSURERS ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2.  THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLIES TO CALIFORNIA LICENSED INSURERS.

3.  THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4.  CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINE INSURERS APPROVED BY THE INSURANCE COMMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THE LIST.

5.  FOR ADDITIONAL INFORMATION ABOUT THE INSURER, ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CALL THE CALIFORNIA DEPARTMENT OF INSURANCE TOLL-FREE TELEPHONE NUMBER 1-800-927-4357.

6.  IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

CASN (Ed. 01/05) PRO

EXH 2- 56

# EXHIBIT 3

1  Thomas V. Girardi, SBN 36603 (tgirardi@girardikeese.com)
   Graham B. Lippsmith, SBN 221984 (glippsmith@girardikeese.com)
2  GIRARDI | KEESE
3  1126 Wilshire Boulevard
   Los Angeles, CA 90017
4  (213) 977-0211; (213) 481-1554 FAX

5
   Lorin E. Brennan (SBN 75915)(leb@lindelaw.net)
6  Douglas A. Linde (SBN 217584)(dal@lindelaw.net)
7  Erica L. Allen (SBN 217584)(ela@lindelaw.net)
   THE LINDE LAW FIRM
8  9000 Sunset Blvd., Suite 1025
9  Los Angeles, CA 90069
   Tel: (310) 203-9333; Fax: (310) 203-9233
10

11 Attorneys for Plaintiff RHYN NOLL

12

13         UNITED STATES DISTRICT COURT

14   CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

15

16 RHYN NOLL, an individual,          ) Case No. SACV 08-617 AG (MLGx)
                     Plaintiff,       ) Honorable Andrew J. Guilford
17                                    ) Complaint filed: June 3, 2008
18          v.                        )
                                      ) [PROPOSED] SECOND AMENDED
19 STREET SURFING, LLC; WAL-         ) COMPLAINT FOR:
20 MART STORES, INC.; TARGET         ) (i)  TRADEMARK INFRINGEMENT;
   CORPORATION; TSA STORES,          ) (ii) UNFAIR COMPETITION and
21 INC.; ACADEMY SPORTS &            ) FALSE DESIGNATION OF ORIGIN;
22 OUTDOORS; BENNY'S, INC.; BIG 5    ) (iii) COMMON LAW TRADEMARK
   SPORTING GOODS                    ) INFRINGEMENT; and
23 CORPORATION; CHICK'S              ) (iv) UNFAIR TRADE PRACTICES.
24 SPORTING GOODS, INC.; DICK'S      )
   SPORTING GOODS, INC.;             ) DEMAND FOR JURY TRIAL
25 DUNHAM'S ATHLEISURE               )
26 CORPORATION; F.A.O. SCHWARZ,      )
   INC.; G.I. JOE'S, INC.; JOE'S     )
27 SPORTS OUTDOOR & MORE;            )
28

SECOND AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT, *etc.*
Page 1

EXHIBIT

ALL-STATE LEGAL®

3

EXH 3- 1

1  MICHIGAN SPORTING GOODS          )
2  DISTRIBUTORS, INC. d/b/a MC      )
   SPORTS; MODELLS SPORTING         )
3  GOODS, INC.; RIP CURL, INC.; RON )
   JON SURF SHOP OF FLA, INC.;      )
4  SHEEL'S ALL SPORTS, INC.;        )
5  SPORT CHALET, INC.; WINMARK      )
   CORPORATION d/b/a PLAY IT        )
6  AGAIN SPORTS; and DOES 1         )
7  through 10, inclusive.           )
                    Defendants.     )
8  _____)
9

10  Plaintiff RHYN NOLL ("NOLL") complains and alleges as follows:

11

12                  **INTRODUCTION AND OVERVIEW**

13        1.     This is an action for trademark infringement and unfair competition

14  based on confusingly similar marks used on the same and related goods.  As shown by

15  attachments to this complaint, Plaintiff is the owner of the trademark

16  STREETSURFER which was registered in the United States Patent and Trademark

17  Office ("USPTO") on February 20, 2001 for goods in Class 28 that include

18  skateboards and skateboard accessories.  Defendants with knowledge of Plaintiff's

19  mark, have sold and continue to sell skateboards bearing the confusingly similar name

20  "Street Surfing" in competition with Plaintiff both within the United States and by

21  export from the United States to Europe, Asia and Africa.  In this complaint, Plaintiff

22  seeks to recover damages for the infringement of his rights, and to obtain a permanent

23  injunction against further infringement.

24

25                   **JURISDICTION AND VENUE**

26        2.     This Court has federal question jurisdiction under 28 U.S.C. §§ 1331,

27  1338(a) & 1338(b) as a matter arising under a federal statute regarding trademarks

28

EXH 3- 2

along with related claims of unfair competition.

3.    The claims asserted in this Complaint arose in this judicial district and all Defendants do business in this judicial district.

4.    Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b), 1391(c) & 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

5.    This is an action arising under the Lanham Act (15 U.S.C §§ 1501 *et seq.*) including pendant state law claims.  In this action Plaintiff seeks damages, an accounting, an injunction, costs and attorneys' fees for trademark infringement (15 U.S.C. §§ 1114 & 1117) and unfair competition (15 U.S.C. § 1125), as well as damages and other relief based upon pendant claims related to the infringement and misappropriation of Plaintiff's intellectual property.

## **PARTIES**

6.    Plaintiff RHYN NOLL (sometimes referred to as "NOLL") is a resident of California.

7.    Defendant WAL-MART STORES, INC. (sometimes referred to as "WALMART") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 702 SW 8th Street, Bentonville, Arkansas, that operates retail stores within this judicial district.

8.    Defendant TARGET CORPORATION (sometimes referred to as "TARGET") is a corporation organized and existing under the laws of Minnesota with its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota, that operates retail stores within this judicial district.

9.    Defendant TSA STORES, INC. (sometimes referred to as "SPORTS AUTHORITY") is a corporation organized and existing under the laws of Delaware with its principal place of business at 1050 W. Hampden Ave., Englewood, Colorado, that operates retail stores within this judicial district.

10.     Defendant ACADEMY SPORTS & OUTDOORS is a corporation organized and existing under the laws of Texas with its principal place of business at 1800 N. Mason Road, Katy, TX 77449, that purchased infringing merchandise from this judicial district.

11.     Defendant BENNY'S, INC. is a corporation organized and existing under the laws of Rhode Island with its principal place of business at 340 Waterman Avenue, Esmond, RI 02917, that purchased infringing merchandise from this judicial district.

12.     Defendant BIG 5 SPORTING GOODS CORPORATION is a corporation organized and existing under the laws of Delaware with its principal place of business at 2525 E. El Segundo Blvd., El Segundo, CA 90245, that purchased infringing merchandise from this judicial district.

13.     Defendant CHICK'S SPORTING GOODS, INC. is a corporation organized and existing under the laws of California with its principal place of business in Pennsylvania at 300 Industry Road, Pittsburgh, PA 15275, that purchased infringing merchandise from this judicial district.

14.     Defendant DICK'S SPORTING GOODS, INC. is a corporation organized and existing under the laws of Delaware with its principal place of business in Pennsylvania at 300 Industry Road, Pittsburgh, PA 15275, that purchased infringing merchandise from this judicial district.

15.     Defendant DUNHAM'S ATHLEISURE CORPORATION is a corporation organized and existing under the laws of Delaware with its principal place of business in Michigan at 5000 Dixie Highway, Waterford, MI 48329, that purchased infringing merchandise from this judicial district.

16.     Defendant F.A.O SCHWARZ, INC. is a corporation organized and existing under the laws of Delaware with its principal place of business in New York at 875 Avenue of the Americas, 20th Floor, New York, NY 10001, that purchased infringing merchandise from this judicial district.

EXH 3- 4

17.   Defendant G.I. JOES, INC. is a corporation organized and existing under the laws of Oregon with its principal place of business at 9805 S.W. Boeckman Road, Wilsonville, OR 97070, that purchased infringing merchandise from this judicial district.

18.   Defendant JOE'S SPORTS, OUTDOOR & MORE is a corporation organized and existing under the laws of Oregon with its principal place of business at 9805 S.W. Boeckman Road, Wilsonville, OR 97070, that purchased infringing merchandise from this judicial district.

19.   Defendant MICHIGAN SPORTING GOODS DISTRIBUTORS, INC. d/b/a MC SPORTS is a corporation organized and existing under the laws of Michigan with its principal place of business at 3070 Shaffer S.E., Grand Rapids, MI 49512, that purchased infringing merchandise from this judicial district.

20.   Defendant MODELL'S SPORTING GOODS is a corporation organized and existing under the laws of Delaware with its principal place of business in New York at 498 Seventh Avenue, 20th Floor, New York, NY 10018, that purchased infringing merchandise from this judicial district.

21   Defendant RIP CURL, INC. is a corporation organized and existing under the laws of California with its principal place of business at 3030 Airway Avenue, Costa Mesa, CA 92626, that purchased infringing merchandise from this judicial district.

22.   Defendant RON JON SURF SHOP OF FLA, INC. is a corporation organized and existing under the laws of Florida with its principal place of business at 4151 N. Atlantic Avenue, Cocoa Beach, FL 32931, that purchased infringing merchandise from this judicial district.

23.   Defendant SCHEEL'S ALL SPORTS, INC. is a corporation organized and existing under the laws of North Dakota with its principal place of business at 4550 15th Avenue, Fargo, ND 58103, that purchased infringing merchandise from this judicial district.

24.    Defendant SPORT CHALET, INC. is a corporation organized and existing under the laws of Delaware with its principal place of business in California at One Sport Chalet Drive, La Canada, CA 91011 that purchased infringing merchandise from this judicial district.

25.    Defendant WINMARK CORPORATION d/b/a PLAY IT AGAIN SPORTS is a corporation organized and existing under the laws of Minnesota with its principal place of business at 4200 Dahlberg Drive, Minneapolis, MN 55422, that purchased infringing merchandise from this judicial district.

26.    Defendant STREET SURFING, LLC (sometimes referred to as "STREET SURFING") is a limited liability company organized and existing under the laws of Nevada with its principal place of business at 4299 MacArthur Blvd Ste 200, Newport Beach, California.

27.    Plaintiff is informed and believes that Defendants DOES 1 through 10, inclusive, created, assembled, distributed, manufactured, or sold goods bearing Plaintiff's trademark or have otherwise contributed to the infringement of Plaintiff's rights in his trademark. The true names and capacities, whether corporate, individual or otherwise, of the Defendant DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will ask leave to amend this Complaint to show their true names and capacities when they have been ascertained.

28.    In this complaint, unless otherwise noted, the term "Defendants" refers to WALMART; TARGET; SPORTS AUTHORITY; ACADEMY SPORTS & OUTDOORS; BENNY'S, INC.; BIG 5 SPORTING GOODS CORPORATION; CHICK'S SPORTING GOODS, INC.; DICK'S SPORTING GOODS, INC.; DUNHAM'S ATHLEISURE CORPORATION; F.A.O. SCHWARZ, INC.; G.I. JOE'S, INC.; JOE'S SPORTS OUTDOOR & MORE; MICHIGAN SPORTING GOODS DISTRIBUTORS, INC. d/b/a MC SPORTS; MODELLS SPORTING GOODS, INC.; RIP CURL, INC.; RON JON SURF SHOP OF FLA, INC.; SHEEL'S

1  ALL SPORTS, INC.; SPORT CHALET, INC.; WINMARK CORPORATION d/b/a
2  PLAY IT AGAIN SPORTS; STREET SURFING, and DOES 1 through 10, and each
3  of them, and the term "Defendant" refers to each of these Defendants individually.
4  Plaintiff is informed and believes that at all relevant times, each Defendant was the
5  agent, affiliate, officer, director, manager, principal, partner, joint venturer, alter-ego
6  or employee of the remaining Defendants, acted within the scope of such agency and
7  positions, and actively participated in, ratified or adopted all of the conduct alleged in
8  this complaint, with full knowledge of all the facts and circumstances, including, but
9  not limited to, full knowledge of each of the violations of Plaintiff's rights and
10 resulting damages to Plaintiff.

## GENERAL ALLEGATIONS

13  29.    Plaintiff is a skateboard manufacturer who, since at least 1994, has
14 manufactured and sold skateboards, and skateboard accessories, including riser pads,
15 wheels and clothing, under the trademark STREETSURFER.

16  30.    In 2000, Plaintiff applied to the United States Patent and Trademark
17 Office ("USPTO") for a federal registration of his STREETSURFER trademark.  On
18 February 20, 2001, the USPTO registered Plaintiff's STREETSURFER mark on the
19 Principal Register under Registration No. 2430013 in Class 28 for goods described as
20 "Skateboards and skateboard accessories, namely, riser pads."

21  31.    Defendant STREET SURFING, along with Defendants Does 1 through
22 10, manufacture, advertise and sell a wheeled skateboard-like device bearing the word
23 mark "Street Surfing."

24  32.    Defendants   WALMART;   TARGET;   SPORTS   AUTHORITY;
25 ACADEMY SPORTS & OUTDOORS BENNY'S, INC.; BIG 5 SPORTING GOODS
26 CORPORATION; CHICK'S SPORTING GOODS, INC.; DICK'S SPORTING
27 GOODS, INC.; DUNHAM'S ATHLEISURE CORPORATION; F.A.O. SCHWARZ,
28 INC.; G.I. JOE'S, INC.; JOE'S SPORTS OUTDOOR & MORE; MICHIGAN

SPORTING GOODS DISTRIBUTORS, INC. d/b/a MC SPORTS; MODELLS SPORTING GOODS, INC.; RIP CURL, INC.; RON JON SURF SHOP OF FLA, INC.; SHEEL'S ALL SPORTS, INC.; SPORT CHALET, INC.; WINMARK CORPORATION d/b/a PLAY IT AGAIN SPORTS; along with Defendants Does 1 through 10, advertise and sell at retail outlets to the public a wheeled skateboard-like device bearing the word "Street Surfing" which Plaintiff is informed and believe they acquired from the other Defendants.

33.     Plaintiff's STREETSURFER mark is well-known as designating Plaintiff's goods and is a valuable asset of Plaintiff.

34.     Defendants' manufacture, advertising and sale of a product bearing the "Street Surfing" name is confusingly similar to Plaintiff's STREETSURFER mark and is likely to cause and have caused confusion, including reverse confusion, mistake, or deception.

35.     On information and belief Plaintiffs allege that since at least on or about January of 2005, or such other date as may be later determined, Defendants, and each of them, have been offering for sale, selling, distributing or advertising wheeled skateboard devices in the United States using the "Street Surfing" name including on the skateboards and in advertising for such skateboards.

36.     In addition, on information and belief Plaintiffs allege that since at least on or about January of 2005, or such other date as may be later determined, Defendants have been offering for sale, selling, distributing, advertising or exporting from the United States to other countries, including those in Europe, Asia and Africa, boards using the "Street Surfing" and in advertising for such boards.

37.     Plaintiff has requested that Defendant STREET SURFING cease and desist from the sale of products using the "Street Surfing" name.  To date, Defendant STREET SURFING has ignored Plaintiff's demand to cease and desist, and continues to sell products in willful violation of Plaintiff's federally registered mark.

# FIRST CLAIM FOR RELIEF
# FEDERAL TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1114)

(By Plaintiff Against All Defendants)

38.     Plaintiffs incorporate by reference all allegations in this Complaint as if fully set forth herein. Defendants' "Street Surfing" logo is a reproduction, copy, or colorable imitation of Plaintiff's registered STREETSURFER trademark.

39.     Defendants have been selling, offering for sale, distributing, or advertising skateboards and related products using the "Street Surfing" logo in commerce within the United States in a manner which is likely to cause confusion, including reverse confusion, mistake, or to deceive.

40.     Defendants have been selling, offering for sale, distributing, advertising or exporting skateboards and related products using the "Street Surfing" logo from the United States to other countries including those in Europe, Asia and Africa and by so doing have engaged in acts of American foreign commerce in a manner which is likely to cause confusion, including reverse confusion, mistake, or to deceive, which is sufficiently great to cause a direct and cognizable injury to Plaintiff, and which establishes sufficiently strong links to American commerce in relation to such other countries to justify action by this court to remedy such infringing conduct.

41.     Defendants have been applying the "Street Surfing" logo, to skateboards and related products and in advertisements intended to be used in commerce within the United States in connection with the sale, offering for sale, distribution, or advertising of their infringing products in a manner which use is likely to cause confusion, including reverse confusion, mistake, or to deceive.

42.     Defendants, by applying their "Street Surfing" logo, to skateboards and advertisements used in international commerce including countries in Europe, Asia and Africa, have engaged in acts of American foreign commerce in a manner which is likely to cause confusion, including reverse confusion, mistake, or to deceive, which is

EXH 3- 9

1   sufficiently great to cause a direct and cognizable injury to Plaintiff, and which
2   establishes sufficiently strong links to American commerce in relation to such other
3   countries to justify action by this court to remedy such infringing conduct.

4       43.    As a result of Defendants' conduct, Plaintiff has suffered and will
5   continue to suffer damage to his business, including diversion of trade, loss of income
6   and profits, and a dilution of the value of his rights in an amount to be proven at trial.

7       44.    Defendants have profited from their conduct, and Plaintiff seeks a full
8   accounting from Defendants of all infringing skateboards and related products
9   manufactured or sold by them or under their authority using the "Street Surfing" logo,
10  along with recovery of all of their profits from so doing or from otherwise engaging in
11  the infringing conduct alleged above.

12      45.    Plaintiff has suffered and will suffer irreparable injury due to the
13  infringing conduct of Defendants unless Defendants are permanently enjoined from
14  continuing such conduct, including in particular: (i) from the sale, offering for sale,
15  distribution or advertising of their infringing skateboards and related products in
16  commerce within the United States; (ii) from the sale, offering for sale, distribution,
17  advertising or export of their infringing skateboards and related products to other
18  countries including those in Europe, Asia and Africa; and (iii) from the sale, offering
19  for sale, distribution, advertising or export of their infringing skateboards and related
20  products on their web site.

21      46.    Plaintiff also seeks recovery of all of his costs and attorneys fees in this
22  case in an amount to be proven at the conclusion of this case, including expert witness
23  fees.

24
25
26
27
28

## SECOND CLAIM FOR RELIEF
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125)

(By Plaintiff Against All Defendants)

47.    Plaintiff incorporates by reference all allegations in this Complaint as if fully set forth herein.

48.    Defendants' conduct with respect to the use of the "Street Surfing" logo on skateboards and related products, as alleged, constitutes a use in commerce within the United States of a symbol or false designation of origin which is likely to cause confusion, including reverse confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' products or commercial activities by Plaintiff.

49.    Defendants' conduct with respect to the use of their infringing skateboards and related products in international commerce including in Europe, Asia and Africa, as alleged, constitutes a use in American foreign commerce of a symbol or false designation of origin which is likely to cause confusion, including reverse confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff or as to the origin, sponsorship, or approval of Defendants' products or commercial activities by Plaintiff, which is sufficiently great to cause a direct and cognizable injury to Plaintiff, and which establishes sufficiently strong links to American commerce in relation to such other countries to justify action by this court to remedy such infringing conduct.

50.    As a result of Defendants' conduct, Plaintiff has suffered and will continue to suffer damage to his business including diversion of trade, loss of income and profits, and a dilution of the value of their rights in an amount to be proven at trial.

51.    Defendants have profited from their conduct, and Plaintiff seeks a full accounting and recovery from Defendants of all profits arising from their conduct.

SECOND AMENDED COMPLAINT FOR TRADEMARK INFRINGMENT, *etc.*
Page 11

52.    Plaintiff has suffered and will suffer irreparable injury due to the infringing conduct of Defendants unless Defendants are permanently enjoined from continuing such conduct, including in particular: (i) from the sale, offering for sale, distribution or advertising of their infringing skateboards  and related products in commerce within the United States; (ii) from the sale, offering for sale, distribution, advertising or export of their infringing skateboards and related products to other countries including those in Europe, Asia and Africa; and (iii) from the sale, offering for sale, distribution, advertising or export of their infringing skateboards and related products on their web site.

53.    Plaintiff also seeks recovery of all of his costs and attorneys fees in this case in an amount to be proven at the conclusion of this case, including expert witness fees.

## THIRD CLAIM FOR RELIEF
## COMMON LAW TRADEMARK INFRINGEMENT
### (Cal. Bus. & Prof. Code § 14259)

(By Plaintiff Against All Defendants)

54.    Plaintiff incorporates by reference all allegations in this Complaint as if fully set forth herein.

55.    Defendants' "Street Surfing" logo is a reproduction, copy, or colorable imitation of Plaintiff's STREETSURFER trademark.

56.    Defendants have been using their "Street Surfing" logo in connection with the sale, offering for sale, distribution, or advertising of their infringing products in California in a manner which is likely to cause confusion, including reverse confusion, to cause mistake, or to deceive.

57.    Defendants have been applying their "Street Surfing" logo on skateboards and related products and in advertisements intended to be used in connection with the sale, offering for sale, distribution, or advertising of their infringing products in California in a manner which is likely to cause confusion,

EXH 3- 12

1   including reverse confusion, mistake, or to deceive.

2       58.    As a result of Defendants' conduct, Plaintiff has suffered and will

3   continue to suffer damage to his business including diversion of trade, loss of income

4   and profits, and a dilution of the value of his rights in an amount to be proven at trial

5       59.    Defendants have profited from their conduct, and Plaintiff seeks a full

6   accounting from Defendants of all infringing products manufactured or sold by them

7   or under their authority using the "Street Surfing" logo, along with recovery of all of

8   their profits from so doing or from otherwise engaging in the infringing conduct

9   alleged above.

10      60.    Plaintiff has suffered and will suffer irreparable injury due to the

11  infringing conduct of Defendants unless Defendants are permanently enjoined from

12  continuing such conduct including in particular: (i) from the sale, offering for sale,

13  distribution or advertising of their infringing skateboard devices and related products

14  in commerce within California; and (ii) from the sale, offering for sale, distribution, or

15  advertising of their infringing skateboards and related products on their web site in

16  California.

17      61.    Plaintiff also seeks recovery of all of his costs and attorney's fees in this

18  case in an amount to be proven at the conclusion of this case, including expert witness

19  fees.

20

21

22

23

24

25

26

27

28

EXH 3- 13

## FOURTH CLAIM FOR RELIEF
## CALIFORNIA UNFAIR TRADE PRACTICES
### (Cal. Bus. & Prof. Code §§ 17000 et seq.)
(By Plaintiff Against All Defendants)

62.    Plaintiff incorporates by reference all allegations in this Complaint as if fully set forth herein.

63.    Defendants' conduct in using "Street Surfing" logo in connection with the manufacture, distribution, offering for sale or sale of skateboards and related products constitutes an unlawful, unfair, or fraudulent business act or practice, and their conduct in using their "Street Surfing" logo, in connection with the advertising of skateboards and related products constitutes unfair, deceptive, untrue, or misleading advertising.

64.    Defendants' conduct in using their "Street Surfing" logo, in connection with the manufacture, distribution, offering for sale, sale or advertising of their infringing skateboards and related products is likely to cause confusion, including reverse confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' products or commercial activities by Plaintiff.

65.    Plaintiff reasonably believes that Defendants' conduct as alleged above is ongoing and will continue to be a threat to Plaintiff unless Defendants are restrained and enjoined from continuing to engage in such conduct.

66.    As a result of Defendants' conduct, Plaintiff has suffered injury in fact and will continue to suffer injury including diversion of trade, loss of income and profits, and a dilution of the value of his rights in an amount to be proven at trial.

67.    Defendants have profited from their conduct, and Plaintiff seeks a full accounting from Defendants of all profits arising from their conduct and restitution or disgorgement of all such profits.

68.   Plaintiff also seeks recovery of all of his costs in this case in an amount to be proven at the conclusion of this case, including expert witness fees.

69.   Defendants' conduct in this case also entitles Plaintiff to recover his attorneys' fees in an amount to be proven at the conclusion of this case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, on each on every Claim for Relief as follows:

On Plaintiff's First Claim for Relief:

1.   That Plaintiff be awarded damages as allowed by law due to such trademark infringement, in an amount to be proven at trial;

2.   That Plaintiff be awarded all profits of Defendants due to such trademark infringement, in an amount to be proven at trial;

3.   That Plaintiff be awarded treble damages or profits due to such trademark infringement, as allowed by law and as the court deems fair and just; and

4.   That Defendants, and each of them, and their respective agents and employees, and those acting in concert with them, be enjoined from further infringing Plaintiff's trademark including within the United States and by export of infringing products to other countries including Europe, Asia and Africa, and through their web page.

On Plaintiffs' Second Claim for Relief:

1.   That Plaintiff be awarded damages as allowed by law due to such unfair competition, in an amount to be proven at trial;

2.   That Plaintiff be awarded all profits of Defendants due to such unfair competition, in an amount to be proven at the time of trial;

3.   That Plaintiff be awarded treble damages or profits due to such unfair competition, as allowed by law and as the court deems fair and just; and

4.   That Defendants, and each of them, and their respective agents and employees, and those acting in concert with them, be enjoined from engaging in

1  further acts of unfair competition including within the United States, by export of

2  infringing products to other countries including Europe, Asia and Africa, and through

3  their web page.

4  On Plaintiffs' Third Claim for Relief:

5      1.    That Plaintiff be awarded damages as allowed by law due to such

6  trademark infringement, in an amount to be proven at trial;

7      2.    That Plaintiff be awarded all profits of Defendants due to such trademark

8  infringement, in an amount to be proven at trial;

9      3.    That Plaintiff be awarded any additional recovery due to such trademark

10 infringement as may be allowed by law and as the court deems fair and just; and

11     4.    That Defendants, and each of them, and their respective agents and

12 employees, and those acting in concert with them, be enjoined from further infringing

13 Plaintiff's trademark.

14 On Plaintiff's Fourth Claim for Relief:

15     1.    That Defendants be ordered to disgorge and Plaintiffs be granted

16 restitution of all profits derived by Defendants due to their unfair competition, in an

17 amount to be proven at trial; and

18     2.    That Defendants, and each of them, and their respective agents and

19 employees, and those acting in concert with them, be enjoined from engaging in such

20 acts of unfair competition.

21 On All Claims for Relief:

22     In addition, an all claims for relief:

23     1.    That Plaintiff be awarded his attorneys' fees as available under the

24 Lanham Act, the California Unfair Practices Act, or otherwise by law;

25     2.    That Plaintiff be awarded pre-judgment interest as allowed by law;

26     3.    That Plaintiff be awarded his costs of this action, including expert

27 witness fees; and

28     4.    That Plaintiff be awarded such further legal and equitable relief as this

EXH 3- 16

1   Court deems proper.

2

3   Dated:  January 12, 2009         **GIRARDI | KEESE**

4                                 **THE LINDE LAW FIRM**

5

6                             By:_____

7                             Thomas V. Girardi

8                             Graham B. Lippsmith

                               Lorin E. Brennan

9                             Douglas A. Linde

10                           Erica L. Allen

                             Attorneys for Plaintiff RHYN NOLL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury in this action pursuant to F.R.C.P. 38 and the Seventh Amendment of the United States Constitution.

Dated:  January 12, 2009                    GIRARDI | KEESE
                                            THE LINDE LAW FIRM

                                            By:_____
                                            Thomas V. Girardi
                                            Graham B. Lippsmith
                                            Lorin E. Brennan
                                            Douglas A. Linde
                                            Erica L. Allen
                                            Attorneys for Plaintiff RHYN NOLL

# EXHIBIT 4



Great American Custom
Insurance Services Division

Part of
Great American Insurance Group

725 South Figueroa, Suite 3400
Los Angeles, CA 90017
213.430.4300
213.629.8223 fax
www.GAmCustom.com

**Michael Cullins**
Senior Claims Analyst
Phone: (213) 430-4493
Fax: (213) 430-8472
Email: Claims@GamCustom.com

October 17, 2008

Via certified and regular mail

Lawrence J. Hilton, Esq.
HEWITT & O'NEIL LLP
19900 MacArthur Boulevard, Suite 1050
Irvine, CA 92612

Re:   **Rhyn Noll v. Street Surfing, LLC, et al.**
**U.S.D.C. (Central Dist. of Cal.) Case No. SACV08-00617 AHS (MLGX)**
**Insured:**                              **Street Surfing, LLC**
**Great American Policy No.:**      **PL 3791711-02 (9/22/06-9/22/07)**
**Great American Claim No.:**        **537506336**

Dear Mr. Hilton:

Great American E&S Insurance Company ("Great American") has received and reviewed your tender (on behalf of Street Surfing, LLC) of the Noll action. The Noll action is a trademark infringement lawsuit, with an additional claim for unfair competition and unfair trade practices relating to the infringement.

Great American has determined that no coverage is afforded to Street Surfing, LLC for the Noll action under the Great American Policy No. PL 3791711-02. Great American therefore respectfully denies your tender of that lawsuit.

## I.   SUMMARY OF GREAT AMERICAN'S POSITION

A.   **Two Exclusions In The Great American Policy Exclude Coverage For The *Noll* Action.**

(1)   Exclusion No. 2.i of the basic policy form excludes coverage for "personal and advertising injury" arising out of infringement of copyright, patent, trademark, trade secrets or other intellectual property rights.

EXHIBIT
4

EXH 4- 1



**GREATAMERICAN**
*Custom*

(2)     The policy's "Advertising Injury Amendment" endorsement excludes coverage for "'advertising injury' arising out of any actual or alleged infringement of intellectual property rights or violation of laws relating to patents, trademarks, trade dress, trade names, trade secrets and know-how."

**B.     Other Issues.**

(1)     The "personal and advertising injury" "offense" (under Coverage "B" of the Great American policy) of "use of another's advertising idea in your 'advertisement'" may be alleged in the Noll action.  However, coverage for this "offense" is excluded by the two above-mentioned exclusions.
(2)     The "personal and advertising injury" "offense" (under Coverage "B" of the Great American policy) of "infringing upon another's copyright, trade dress or slogan in your 'advertisement'" is not alleged in the Noll action.

(3)     No coverage under Coverage "A" of the Great American policy is available for the Noll action, because that action does not allege any "bodily injury" or "property damage."

Unless we are provided with additional facts which give rise to a potential for coverage, Great American respectfully declines coverage for Street Surfing in the Noll action.  Our detailed explanation for this denial of coverage is set forth below.

## II.   BACKGROUND

We summarize below the allegations raised in the Noll action.  This summary is necessary in order to explain Great American's position regarding the insurance coverage issues raised by this lawsuit.  Nothing in this summary should be construed as an indication that Great American agrees with the plaintiff's claims.  No such agreement is intended.

**A.     General Allegations.**

Plaintiff states that his lawsuit "is an action for trademark infringement and unfair competition based on confusingly similar marks used on the same and related goods," and which is "related to the infringement and misappropriation of plaintiff's intellectual property."  (Complaint, at Paragraph Nos. 1 and 5.)



Plaintiff is a skateboard manufacturer who has manufactured and sold skateboards (and skateboard accessories) under the trademark "Street surfer" since 1994. Plaintiff registered the trademark "Street surfer" with the U.S. Patent and Trademark Office, effective February 20, 2001.

Since at least January 2005, defendant Street Surfing has manufactured – and all of the defendants have distributed, advertised and sold – skateboards using the name and/or logo "Street Surfing." The defendants' manufacturing, distributing, advertising and selling of skateboards bearing the "Street Surfing" name "is confusingly similar to plaintiff's Street surfer mark and is likely to cause and have caused confusion, mistake, or deception." (Complaint, at Paragraph No. 18.)

## B.   First Cause Of Action.

The first cause of action of the Complaint in the Noll action is for "federal trademark infringement," in violation of 15 U.S.C. Section 1114.

Plaintiff alleges that the defendants' "Street Surfing" logo is a "reproduction, copy, or colorable imitation of plaintiff's registered Street surfer trademark," and that the defendants have been "selling, offering for sale, distributing, or advertising skateboards and related products using the 'Street Surfing' logo in commerce within the United States [and overseas] in a manner which is likely to cause confusion, mistake, or to deceive." (Complaint, at Paragraph No. 24.)

Plaintiff seeks compensatory damages, an accounting (and restitution) of defendants' profits, injunctive relief, and statutory attorneys' fees in this cause of action.

## C.   Second Cause Of Action.

The second cause of action of the Complaint in the Noll action is for "unfair competition and false designation of origin," in violation of 15 U.S.C. Section 1125.

Plaintiff alleges that the defendants' conduct with respect to the use of the "Street Surfing" logo "constitutes a use in commerce within the United States of a symbol or false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of defendants with plaintiff, or as to the origin, sponsorship, or approval of defendants' products or commercial activities by plaintiff." (Complaint, at Paragraph No. 33.)

EXH 4- 3



Plaintiff seeks compensatory damages, an accounting (and restitution) of defendants' profits, injunctive relief, and statutory attorneys' fees in this cause of action.

**D.     Third Cause Of Action.**

The third cause of action of the Complaint in the <u>Noll</u> action is for "common law trademark infringement."

Plaintiff alleges that the defendants have been using their "Street Surfing" logo on skateboards and in advertisements connected to the sale, distribution and advertising "of their infringing products in California in a manner which is likely to cause confusion, mistake, or to deceive."  (Complaint, at Paragraph Nos. 41-42.)

Plaintiff seeks compensatory damages, an accounting (and restitution) of defendants' profits, injunctive relief, and any statutory attorneys' fees available in this cause of action.

**E.     Fourth Cause Of Action.**

The fourth cause of action of the Complaint in the <u>Noll</u> action is for "California unfair trade practices," in violation of California <u>Business & Professions Code</u> Section 17000, et seq.

Plaintiff alleges that the defendants' use of the "Street Surfing" logo in manufacturing, distributing and selling their skateboards constitutes an unlawful, unfair or fraudulent business act or practice.  Plaintiff also alleges that the defendants' use of the "Street Surfing" logo in the advertising of the skateboards constitutes unfair, deceptive, untrue, or misleading advertising.

Plaintiff seeks an accounting (and restitution) of defendants' profits, injunctive relief, and statutory attorneys' fees in this cause of action.

## III.     THE GREAT AMERICAN POLICY

Street Surfing was insured under Great American Policy No. PL 3791711-02. That policy was in effect for the time period of September 22, 2006 to September 22, 2007.  The policy was a renewal of an earlier Great American policy (Policy No. PL 3791711-00).



**GREATAMERICAN.**
*Custom*

## IV.   GREAT AMERICAN'S POSITION

**A.   Coverage "B" Insuring Agreement.**

The basic insuring agreement of Coverage "B" the Great American policy states:

> a.    We will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the Insured against any "suit" seeking those damages.  However, we will have no duty to defend the Insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

> b.    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

"Personal and advertising injury" is defined in the policy as:

> . . . injury including consequential "bodily injury" arising out of one or more of the following offenses:

> > a.    false arrest, detention or imprisonment;

> > b.    malicious prosecution;

> > c.    the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

> > d.    oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

EXH 4- 5



e.    oral or written publication, in any manner, of material that violates a person's right of privacy;

f.    the use of another's advertising idea in your "advertisement"; or

g.    infringing upon another's copyright, trade dress or slogan in your "advertisement".

"Advertisement" is defined as follows:

"Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a.    notices that are published include material placed on the Internet or on similar electronic means of communication; and

b.    regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**B.    Exclusion No. 2.i Excludes Coverage For The _Noll_ Action.**

Exclusion No. 2.i of the basic insuring agreement of the Great American policy states that there is no coverage for:

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

As noted above, the <u>Noll</u> action is a trademark infringement lawsuit. Exclusion No. 2.i therefore excludes coverage for such action.

EXH 4- 6



**GREAT**A**MERICAN.**
*Custom*

The second sentence of the exclusion states that there *is* coverage for infringement of copyright, trade dress or slogan which occurs in an "advertisement." However, the <u>Noll</u> action does not allege any of these three specific types of infringement.

C.    **The "Advertising Injury Amendment" Endorsement Excludes Coverage For The *Noll* Action.**

The Great American policy includes an endorsement entitled "Advertising Injury Amendment." That endorsement states:

> This insurance does not apply to "advertising injury" arising out of any actual or alleged infringement of intellectual property rights or violation of laws relating to patents, trademarks, trade dress, trade names, trade secrets and know-how.

This endorsement excludes coverage for the <u>Noll</u> action. Plaintiff alleges that he was injured by the defendants' advertising of a skateboard with the infringing name "Street Surfing" on it. Also, plaintiff himself claims that his lawsuit is "related to the infringement and misappropriation of plaintiff's intellectual property." (Complaint, at Paragraph No. 5.) In addition, the causes of action set forth in the <u>Noll</u> action allege infringement of intellectual property rights relating to trademarks and/or trade names.

D.    **"Use Of Another's Advertising Idea In Your 'Advertisement'".**

The "personal and advertising injury" "offense" of "use of another's advertising idea in your 'advertisement'" may be alleged in the <u>Noll</u> action. The Complaint alleges that the defendants infringed on plaintiff's registered trademark ("Street surfer") by using the confusingly similar name "Street Surfing." The Complaint also alleges that this conduct constitutes a "false designation of origin." The Complaint further alleges that the defendants used their infringing mark ("Street Surfing") in advertisements. Great American acknowledges, without admitting, that this may constitute a potential "offense" of "use of another's advertising idea in your 'advertisement'."

However, as noted above, the two trademark infringement exclusions exclude coverage for this "offense."

E.    **"Infringing Upon Another's Copyright, Trade Dress Or Slogan In Your 'Advertisement'".**

EXH 4- 7



The <u>Noll</u> action does not allege the "offense" of "infringing upon another's copyright, trade dress or slogan in your 'advertisement'."

The <u>Noll</u> action does not allege infringement upon plaintiff's copyright(s) or slogan(s) in an advertisement. The name "Street surfer" was a registered trademark, not a copyright, and the <u>Noll</u> action alleges trademark infringement, not copyright infringement. Also, the <u>Noll</u> action does not allege infringement upon any "slogan" of the plaintiff's.

In addition, the <u>Noll</u> action does not allege infringement of plaintiff's "trade dress." There are no allegations of infringement of plaintiff's packaging, or of the overall look of the plaintiff's skateboard. Instead, the <u>Noll</u> action alleges that the defendants infringed on plaintiff's *trademark* – its registered name of "Street surfer."

**F.   <u>No Coverage Under Coverage "A".</u>**

Coverage "A" of the Great American policy states that Great American will (1) indemnify Street Surfing for those monetary amounts that Street Surfing becomes "legally obligated to pay as damages" because of covered "bodily injury" or covered "property damage" which was caused by an "occurrence"; and (2) defend Street Surfing against any "suit" seeking damages potentially covered under the policy.

The <u>Noll</u> action does not allege any "bodily injury" or "property damage."

### V.   NON-WAIVER OF RIGHTS/RESERVATION OF RIGHTS

Great American reserves the right to assert any and all other terms, provisions, conditions and/or exclusions set forth in its policy which may be applicable to the <u>Noll</u> action.

This letter may not be interpreted as a waiver of any defense or rights which Great American may have with respect to coverage for the <u>Noll</u> action. All such defenses and/or rights are expressly reserved.

### VI.   CONCLUSION

For the reasons set forth above, Great American takes the position that there is no coverage or potential coverage afforded to Street Surfing for the <u>Noll</u> action under the Great American policy. Great American therefore respectfully declines your tender of that lawsuit.

EXH 4- 8



GREATAMERICAN.
*Custom*

Should you believe that coverage for the <u>Noll</u> action has been wrongfully denied or rejected, in whole or in part, you may have the matter reviewed by the California Department of Insurance, Claims Services Bureau, 300 South Spring Street, 11th Floor, Los Angeles, CA 90013.  Their telephone number is (213) 897-8921.

Should you disagree with our position, and/or should you have any other facts or materials which you wish us to consider in this regard, please provide us with your position, and/or the additional facts/materials, as soon as possible for our review.

Should you have any questions concerning this letter, or should you wish to discuss this claim, please do not hesitate to contact the undersigned.

Very truly yours,

Michael Cullins
Senior Claims Analyst
GREAT AMERICAN E&S INSURANCE COMPANY


Cc: MarketScout Corporation
    Two Lincoln Centre, 5420 LBJ Freeway, Suite 850
    Dallas, TX  75240

EXH 4- 9

# EXHIBIT 5



# GAUNTLETT & ASSOCIATES
### ATTORNEYS AT LAW

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email:   info@gauntlettlaw.com
Website: www.gauntlettlaw.com

Our File Number:
10580-001

December 1, 2008

### CONFIDENTIAL INSURED-INSURER COMMUNICATION
This communication is an insured-insurer communication within the meaning of Civil Code
§ 2860(d), which provides in relevant part: "Any information disclosed by the insured or by the
independent counsel is not a waiver of the privilege as to any other party."

### VIA E-MAIL /CONFIRMATION VIA U.S. MAIL
michael.cullins@gamcustom.com

Michael Cullins
Great American Custom Insurance Services
725 S Figueroa St., Suite 3400
Los Angeles, CA 90017

    Re:    ***Rhyn Noll v. Street Surfing, LLC, et al.***
                 **USDC, C.D. Cal., Case No. SACV08-00617**
                 **("*Noll* suit")**
                 **Insured: Street Surfing, LLC**
                 **Insurer:  Great American E&S Ins. Co.**
                 **Policy Nos.:  PL 3791711 (effective 8/22/05 to 8/22/06)**
                                        **PL 3791711-02 (effective 9/22/06 to 9/22/07)**
                 **Policy Type:  BusinessPro General Liability**
                 **Claim No.:  537506336**

Dear Mr. Cullins:

    This law firm represents your insured Street Surfing, LLC as coverage counsel in
connection with the *Noll* suit. Street Surfing gave Great American E&S Ins. Co. notice of the
claim in September 2008 but it did not formally respond until October 17, 2008. It recently
denied coverage over the telephone and then affirmed that denial by letter of October 17, 2008.
We write to explain why Great American's denial of coverage is erroneous. We explain why the
policies potentially cover plaintiff Rhyn Noll's allegations and require Great American to defend
and reimburse any settlement payment.



EXHIBIT

5

Great American must defend because Mr. Noll makes allegations that potentially fall within the policies' "personal and advertising injury" coverage, namely, the "use of another's advertising idea in your 'advertisement' " offense. The intellectual property, prior publication, knowing violation of the rights of another, and breach of contract exclusions do not bar a defense, either.

Street Surfer is entitled to settle this case for a reasonable amount without Great American's consent. It can then obtain reimbursement of its settlement payment irrespective of whether Great American's policies actually cover the payment since a potential for coverage exists and Great American has breached its duty to defend.

## I.    RULES GOVERNING THE DUTY TO DEFEND

### A.    Great American's Defense Duty Is Broad, Arising Where There Is a Mere Potential for Indemnity Coverage under Its Policy

Any analysis of Great American's policy defense obligation starts with understanding the very low threshold required by California courts to trigger that duty. The duty to defend is much broader than the duty to indemnify. *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 605 (1986). It is axiomatic that an insurer must defend whenever the facts pleaded in the complaint demonstrate a mere *potential* for indemnity coverage under the policy. *Montrose Chemical Corp. v. Superior Ct.*, 6 Cal. 4th 287, 300 (1993). In other words, an insurer's defense obligation extends to all suits in which it is merely *possible* that the insured will be found liable for covered damages. While only a "bare potential or possibility of coverage" is required to implicate Great American's duty to defend,[1] to avoid that duty Great American must demonstrate that by no conceivable theory can the policy cover the claimed damages. *Id.*

> To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. **Facts merely tending to show that the claim is not covered, or may not be covered, but [that] are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales.** [Bold emphasis added].

*North American Bldg. Maintenance, Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 637-38 (2006).

So the insurer has a much heavier burden than the insured. The insured need only make a *prima facie* showing of a potentially covered liability by reference to the factual allegations of

---

[1] *See Belmonte v. Employers Ins. Co.*, 83 Cal. App. 4th 430, 433 (2000) ("Even the bare possibility of coverage is sufficient to trigger [the duty to defend]."); *Montrose*, 6 Cal. 4th at 300 ("Indeed, in that case we said that 'the insurer need not defend if the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*' The quoted language cannot reasonably be understood to refer to anything beyond a bare 'potential' or 'possibility' of coverage as the trigger of a defense duty." (citation omitted; emphasis in original)).

the complaint, any extrinsic evidence it intends to rely on, and to the policy terms. *Anthem Electronics, Inc. v. Pacific Employers Ins. Co.*, 302 F.3d 1049, 1054, 1059 n.3 (9th Cir. 2002). The burden then shifts to the insurer to demonstrate conclusively that there unequivocally is not even a mere potential for coverage.[2] "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose*, 6 Cal. 4th at 304.

The California Supreme Court has even stated that "the insured is entitled to a defense if the underlying complaint . . . might be amended to give rise to a liability that would be covered under the policy." *Anthem Electronics*, 302 F.3d at 1054.

Great American cannot meet its heavy burden in this case. The policy terms and underlying allegations indisputably establish Great American's defense duty, especially when viewed against the liberal backdrop of California insurance coverage law.

## B.   Facts Pleaded and Reasonably Inferable, Not Legal Labels, Trigger Duty to Defend

While the plaintiff Rhyn Noll has not separately labeled any of the causes of action in his Complaint "use of another's advertising idea in your 'advertisement,' " that is irrelevant to Great American's defense duty. The facts alleged, not labels attached, govern the duty to defend.[3] Indeed, this is an age-old rule first articulated by the California Supreme Court forty years ago in *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 (1966). It is beyond dispute. Even "remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty." *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 951 (9th Cir. (Cal.) 2002).

And, as will be demonstrated, Mr. Noll has certainly alleged facts that, if true, would require Great American to indemnify Street Surfing for the "personal and advertising injury" offense of use of another's advertising idea in Street Surfing's advertisement. At the minimum, that Mr. Noll is alleging Street Surfing committed that offense in its advertising is a reasonable inference to be drawn from the express allegations in the Complaint, and an allegation that Great American must defend. *See Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005) ("[T]hat the precise causes of action pled by the third-party complaint may fall outside policy

---

[2]*Montrose*, 6 Cal. 4th at 304. *See also Anthem Electronics*, 302 F.3d at 1054 ("[O]nce the insured has established [a] potential[ly covered] liability by reference to the factual allegations of the complaint, the terms of the policy, and any extrinsic evidence upon which the insured intends to rely, the insurer must assume its duty to defend unless and until it can *conclusively* refute that potential." (citation omitted; italics in original)).

[3]*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1034 (2002) ("The scope of the duty to defend does not depend on the labels given to the causes of action in the third party complaint."). *See also Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 510 (2001) ("[T]he duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pled by the third party."); *American Guarantee & Liab. Ins. Co. v. Vista Med. Supply*, 699 F. Supp. 787, 793-94 (N.D. Cal. 1988) (where underlying claimant pleaded wrongful termination count but not defamation count, holding insurer had duty to defend employer despite that wrongful termination was not covered by policy because defamation was covered and insurer was on notice of fact allegations by claimant that would support a defamation claim).

163110.2-10580-001-12/1/2008 3:51 PM

coverage does not excuse the duty to defend where, **under the facts alleged, reasonably inferable, or otherwise known,** the complaint could fairly be amended to state a covered liability." (emphasis added)).

## II.   GREAT AMERICAN HAS A DUTY TO DEFEND THE NOLL SUIT

### A.   Pertinent Policy Language

Great American issued primary businesspro general liability policy number PL 3791711 for the period August 22, 2005 through August 22, 2006 to Street Surfing. It renewed the policy for the period September 22, 2006 through September 22, 2007, under policy number PL 3791711-02. The policies provide indemnity for "personal and advertising injury" caused by an offense committed during the policy period and defense of suits that seek those types of damages. "Personal and advertising injury" includes injury arising out of the offense of "use of another's advertising idea in your 'advertisement.' "

COVERAGE B.  PERSONAL AND ADVERTISING INJURY LIABILITY

1.   Insuring Agreement

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

. . . .

    b.   This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

. . . .

1.   "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a.   notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b.   regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

. . . .

14.   "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following offenses:

. . . .

    f.   the use of another's advertising idea in your "advertisement" . . . .

So Great American's policies cover all damages Street Surfing becomes legally obligated to pay where it has used plaintiff Noll's advertising idea in Street Surfing's "advertisement." The policies also promise defense of suits that seek those types of damages.

**B.      The Three-Part Test for Advertising Injury**

Virtually identical policy language has been found to require a duty to defend when a three-part "advertising injury" test is met. *Westfield Cos. v. O.K.L. Can Line*, 155 Ohio App. 3d 747, 754, 804 N.E.2d 45, 50 (2003), held that the existence of a potentially covered "advertising injury" is established under Great American's policy language when the underlying complaint alleges:

    (1)      conduct that fits within one of the enumerated "advertising injury" offenses in the policy;

    (2)      that the insured engaged in "advertisement" as defined in the policy; and

    (3)      a causal connection between the injury and the insured's "advertisement."[4]

Great American has a duty to defend the *Noll* suit because this test is met for offense f, "use of another's advertising idea in your 'advertisement.' "  Great American itself concedes a potential for coverage under this offense in its October 17, 2008 denial letter.

**C.      The Noll Suit Alleges Use of Another's Advertising Idea in Street Surfing's Advertisement, a Covered "Personal and Advertising Injury" Offense under the Policies, Establishing Great American's Defense Duty**

    **1.      Element One of the Test Is Satisfied**

The first element is met because the Complaint alleges conduct that fits within the enumerated offense, "use of another's [Noll's] advertising idea . . . ."  California courts have found this undefined offense to be ambiguous,[5] requiring its construction against Great American

---

[4] The *Westfield* court actually employed a four-part test. California courts use a three-part test, though, because under its laws (applicable here), it is never the insured's burden to establish that an exclusion does not apply, the fourth part of the *Westfield* test.

While no California court has had an opportunity to address the precise language in Great American's policy, they have addressed similar language found in predecessor form policies. In those cases California employed almost the same "advertising injury" test as the *Westfield* court, absent the fourth element, so there is good reason to think that it would use elements one through three of the *Westfield* test here under Great American's policy language.

*See New Hampshire Ins. Co. v. R.L. Chaides Constr. Co., Inc.*, 847 F. Supp. 1452, 1455 (N.D. Cal. 1994), cited with approval by *Simply Fresh Fruit, Inc. v. Continental Ins. Co.*, 94 F.3d 1219, 1222 (9th Cir. 1996) ("Thus, an 'advertising injury' consists of three elements: (1) an advertising activity by the named insured; (2) allegations that fit into one of the offenses enumerated in the policy; and (3) an injury that arises out of one of those offenses which was committed . . . in the course of the advertising activity."): *See also New Hampshire Ins. Co. v. Foxfire, Inc.*, 820 F. Supp. 489, 493 (N.D. Cal. 1993) (same test); *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1277 (1992) ("[W]e hold that 'advertising injury' must have a causal connection with the insured's 'advertising activities' before there can be coverage."); *Pacific Group v. First State Ins. Co.*, 70 F.3d 524, 527 (9th Cir. (Cal.) 1995) (" 'To compel an insurer to defend under an advertising injury provision, the insured must demonstrate a causal connection between the plaintiff's claim in the underlying action and the defendant-insured's advertising.' ").

[5] *Atlapac Trading Co., Inc. v. American Motorists Ins. Co.*, No. CV 97-0781 CBM, 1997 WL 1941512 (C.D. Cal. Sept. 19, 1997) (finding predecessor offense of "misappropriation of advertising ideas" ambiguous).

and broadly in favor of coverage.[6]   Any reasonable interpretation of the phrase by the insured must be accepted.[7]   One contextually reasonable definition of the phrase is:

> employing another's *idea for solicitation of business* or a revolutionary new design as an enticement to customers as part of the insured's public notices about its goods, products and services.[8]

Had Great American wished a narrower meaning for the term "advertising idea" or the broader offense, it could have adopted one. *Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th 758, 764 (2001) ("[W]e cannot read into the policy what Safeco has omitted."). It did not.

This definition is in line with how courts from around the country have viewed the undefined and ambiguous offense, demonstrating that it is a reasonable interpretation. *See Ohio Cas. Ins. Co. v. Cloud Nine, LLC*, 464 F. Supp. 2d 1161, 1166 (D. Utah 2006) (The term "advertising idea" can be readily understood to include an "idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage.").

---

[6]*E.M.M.I. Inc. v. Zurich American Ins. Co.*, 32 Cal. 4th 465, 470, 471, 84 P.3d 385, 389, 9 Cal. Rptr. 3d 701, 705, 706 (2004) ("A policy provision is ambiguous when it is susceptible to two or more reasonable constructions. . . . 'Any ambiguous terms are resolved in the insureds' favor . . . .' " (internal quotation marks omitted); *TRB Investments, Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27, 145 P.3d 472, 50 Cal. Rptr. 3d 597 (2006) ("[I]nsurance coverage is 'interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] ... exclusionary clauses are interpreted narrowly against the insurer.' ").

[7]*MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648, 655, 3 Cal. Rptr. 3d 228, 73 P.3d 1205 (2003) ("[E]ven if [the insurer's] interpretation is considered reasonable, it would still not prevail, for in order to do so it would have to establish that its interpretation is the *only* reasonable one. '[W]e are not required, in deciding the case at bar, to select one "correct" interpretation from the variety of suggested readings' " because as long as the insured's interpretation is reasonable the insurer's alternative reasonable interpretation must be rejected in favor of coverage. (italics in original; citations omitted)).

[8]*See* Random House Unabridged Dictionary (1993):

**Use** [p. 2097]: "1. To employ for some purpose; put into service; make use of: *to use a knife*."

**Of** [p. 1343]: "5. (used to indicate apposition or identity). *Is that idiot of a salesman calling again?*"

**Another's** [p. 85]: "1. Being one more or more of the same; further; additional; *another's piece of cake.*"

**Advertising** [p.29]: "1. The act or practice of calling public attention to one's product, service, need, etc. by paid announcements, as goods for sale, in newspapers or magazines, on radio or television, etc."

**Idea** [p. 949]: "1. Any conception existing in the mind as the result of mental understanding, or activity; 2. A thought, conception or notion. *That is an excellent idea.*"

**In** [p. 964]: "1. (Used to indicate inclusion within space, a place or limits)."

**Your** [p. 2205]: "1. (A form or the possessive case of you used as an attributive adjective). *Your jacket is in that closet. I like your idea* (used to indicate that one belonging to one's self or to any person)."

**Advertisement** [p. 29]: "1. A paid announcement, as of goods for sale in newspapers or magazines, on radio or television, etc. 2. A public notice esp. (3) the action of making generally known; a calling to the attention of the public. *The news of the event will receive wide advertisement.*"

Indeed, using the name Lipitor for a pharmaceutical product when it is not Lipitor falls within the meaning of this offense, because an advertising idea is any idea or concept designed to call public or consumer attention to a product to solicit customers or increase sales. *Ohio Cas. Ins. Co. v. Albers Medical, Inc.*, No. 03-1037-CV-W-ODS, 2005 WL 2319820, at *4 (W.D. Mo. Sept. 22, 2005) ("An 'advertising idea' generally encompasses 'an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage.' "); *id.* ("[T]his definition is broad enough to include the use of the name Lipitor in promotional literature . . . [B]y labeling a substance . . . as Lipitor when the substance was not really the product produced by Pfizer under that name, Albers allegedly used Pfizer's idea for calling public/consumer attention to its product.").

While no California court has addressed the pertinent offense language, they have addressed the predecessor offense, "misappropriation of advertising ideas," which is almost the same and contains the pertinent language "advertising idea." *Atlapac Trading*, 1997 WL 1941512, at *1, *7. The *Atlapac Trading* court found that mislabeling a canola/olive oil blend as "pure olive oil" falls within the meaning of the predecessor offense and that the phrase is an advertising idea. *Id.* This suggests California would adopt the same definition.

Application of linguistic principles to the construction of the undefined offense in Great American's policies reveals both its ambiguity as well as the viability of Street Surfing's proposed definition. So properly understood, an "advertising idea" encompasses ideas or concepts used to solicit business or call attention to a product, including by proclaiming its desirable qualities.

Mr. Noll certainly claims to have an "advertising idea" under this definition. He alleges that he offers his skateboard products for sale with the word "StreetSurfer" affixed to them [Complaint ¶ 13] because that word is well known as designating his products. [Complaint ¶ 17] Plaintiff Noll's idea is to use the phrase "StreetSurfer" to market his skateboards and related products. Just as in *Albers Medical*, plaintiff is using a word associated with a product to solicit business; there the name Lipitor and here the phrase "StreetSurfer."

Indeed, Mr. Noll alleges defendant *advertises* its competing skateboard products by using the confusingly similar name "Street Surfing." [Complaint ¶ 15, 19] Clearly, "StreetSurfer" is an advertising idea or the plaintiff would not have alleged defendant is using an ideation of that phrase to advertise and move its products.

The parties are using the concept of a street surfer to call attention to and promote their products, including by proclaiming their desirable qualities, just as in *Pennfield Oil*[9] and

---

[9]*Pennfield Oil Co. v. American Feed Indus. Ins. Co. Risk Retention Group, Inc.*, No. 8:05CV315, 2007 WL 1290138, at *8 (D. Neb. March 12, 2007), citing *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F. 3d 1179, 1188 (11th Cir. 2002) ("'[A]n "advertising idea" can be any idea or concept related to the promotion of a product to the public' . . . Pennfield's representation of FDA approval is arguably a misappropriation of Alpharma's advertising ideas or style of doing business.") (advertising idea -- asserting that a product is FDA approved when it is not).

163110.2-10580-001-12/1/2008 3:51 PM

EXH 5- 7

*American Simmental.*[10] Skateboarding or wave boarding (one of the products at issue here) is like surfing but in the street. Surfing and its ocean lifestyle is a marketable concept to the youth. But not all people live near the beach. Thus, the parties have used ideations of the phrase "StreetSurfer" to draw attention to their skateboard products and invoke the image or advertising idea of a surfer to move product. They have also called attention to one of the desirable qualities of a skateboard or wave board, i.e., that one can surf on the street even if you do not live near the beach.

Mr. Noll also claims that Street Surfing *used* its idea of a street surfer. [Complaint ¶¶ 18-19, 33 ("Defendants' conduct with respect to the *use* of the 'Street Surfing' logo on skateboards . . .") (emphasis added)] Thus, the plaintiff has alleged defendant used its advertising idea, satisfying the first prong of the test.

### 2.  Elements Two and Three of the Test Are Satisfied

Element two of the "advertising injury" test requires allegations that Street Surfing engaged in an "advertisement," defined in the policy as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." Element three requires a nexus between the advertisement and the offense, i.e., allegations that Street Surfing used Mr. Noll's advertising idea in its advertisement. These elements are satisfied since Mr. Noll repeatedly alleges throughout the Complaint that Street Surfing used his street surfer idea in widespread commercial advertising, including on its website.

> 15. Defendant Street Surfing, along with Defendants Does 1 through 10, manufacture, advertise and sell a wheeled skateboard-like device bearing the word mark "Street Surfing."
>
> . . . .
>
> 18. **Defendants' manufacture, advertising and sale of a product bearing the "Street Surfing" name is confusingly similar to Plaintiff's STREETSURFER mark and is likely to cause and have caused confusion,** mistake, or deception.
>
> 19. On information and belief Plaintiffs allege that since at least on or about January of 2005, or such other date as may be later determined, **Defendants, and each of them, have been offering for sale, selling, distributing or advertising wheeled skateboard devices in the United States using the "Street Surfing" name including on the skateboards and in advertising for such skateboards.**
>
> 20. In addition, on information and belief Plaintiffs allege that since at least on or about January of 2005, or such other date as may be later determined, **Defendants have been** offering for sale, selling, distributing, **advertising** or exporting from the United States **to other countries, including**

---

[10] *American Simmental Ass'n v. Coregis Ins. Co.,* 282 F.3d 582, 587 (8th Cir. 2002) (An " 'advertising idea' generally encompasses 'an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage.' "); *id.* ("Blue Dane used the term 'fullblood' to call attention to its Simmental cattle[.]") (advertising idea -- falsely claiming that Simmental cattle are full-blooded).

those in Europe, Asia and Africa, boards using the "Street Surfing" and in advertising for such boards.

. . . .

33.     Defendants' conduct with respect to the use of the "Street Surfing" logo on skateboards and related products, as alleged, constitutes a use in commerce within the United States of a symbol or false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' products or commercial activities by Plaintiff.

. . . .

37.     Plaintiff has suffered and will suffer irreparable injury due to the infringing conduct of Defendants unless Defendants are permanently enjoined from continuing such conduct, including in particular: (i) from the sale, offering for sale, distribution or advertising of their infringing skateboards and related products in commerce within the United States; (ii) from the sale, offering for sale, distribution, advertising or export of their infringing skateboards and related products to other countries including those in Europe, Asia and Africa; and (iii) from the sale, offering for sale, distribution, advertising or export of their infringing skateboards and related products on their web site.

The advertising was clearly widespread since it was circulated in commerce throughout the United States and indeed to numerous countries on four different continents. It was also published over the internet. This suggests not only advertising but widespread circulation published to the general public to attract customers, meeting the policy's definition.

The website advertising is clearly an "advertisement." *Westfield*, 155 Ohio App. 3d at 755 ("A web page is advertising under any definition."). *See also AMCO Ins. Co. v. Lauren-Spencer, Inc.*, No. 2:06-cv-472, 2007 WL 1795970, at *6-7 (S.D. Ohio June 20, 2007) (holding that insured's website displaying its allegedly infringing products is an "advertisement" within meaning of policy definition identical to Great American's); *id.* at *7 ("[T]he obvious point of the . . . website is to move product to make money, and such advertising is placing a product before the consumers' eyes to accomplish just that purpose."). In fact, the policy's definition expressly anticipates that a website is an "advertisement" under subdivisions (a) and (b).

Regardless, the 1st District Court of Appeal in *Tosoh SET v. Hartford Fire Ins. Co.*, No. A111641, 2007 WL 1242172, at *6 (Cal. Ct. App. April 30, 2007), found a generic allegation that the insured "advertised" created a potential for coverage and hence a duty to defend even though the underlying complaint did not specifically plead all of the elements in the policy's definition of "advertisement."

Although the Applied Materials complaint does not specify the media in which the advertisements appeared, the advertisement allegation nonetheless raises a potential for coverage. . . . [A] generic allegation that a competitor "advertised" certain disparaging claims creates the potential for coverage because the term "advertising" encompasses the types of activity covered under the Hartford policies. . . . A factual dispute about the nature of the advertising medium does not negate the potential for coverage, however. When there is a factual dispute on which coverage depends, that fact

> itself creates a potential for coverage and hence a duty to defend. (See *Horace Mann Ins. Co. v. Barbara B., supra*, 4 Cal.4th at pp. 1083-1084.) Tosoh need only show that the underlying claim may fall within the policy coverage; Hartford must prove that it cannot. . . . **Tosoh has met its burden by pointing to allegations that at least potentially come within the Hartford policies' definition of advertising.** [Emphasis added.]

Based on the foregoing, the three-part test is met for this offense. Great American's defense duty is triggered because its insured stands accused of using another's advertising idea, the concept of a street surfer, in its advertisement.

## III. NO POLICY EXCLUSION ELIMINATES THE POTENTIAL FOR COVERAGE

### A. Policy Exclusions Are Narrowly Interpreted Against the Insurer and Must Apply In All Possible Worlds To Bar A Defense

None of the policy exclusions apply. Great American must prove the applicability of an exclusion. *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (1998) ("[T]he burden is on the insurer to prove the claim is specifically excluded."). Since the duty to defend is based on the mere *possibility* of a covered liability, to meet its burden Great American must prove with conclusive evidence and undisputed facts that an exclusion applies "in all possible worlds."

> [A]n **insurer may only defeat an existing potential for coverage by undisputed facts that conclusively negate such coverage.** This is particularly true where the insurer seeks to defeat coverage by reliance on an exclusion. An insurer may rely on an exclusion to deny coverage only if it provides conclusive evidence demonstrating that the exclusion applies. . . . Thus, **an insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds.** [Emphasis added.]

*J. Lamb, Inc.*, 100 Cal. App. 4th at 1038-39.

Great American cannot meet its burden for the use of another's advertising idea offense in connection with the four exclusions we anticipate Great American may assert.

### B. The IP Exclusion and Endorsement Cannot Bar a Defense

Great American's intellectual property exclusion precludes coverage for trademark infringement and other intellectual property rights:

> This insurance does not apply to: . . . "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement in your "advertisement" of copyright, trade dress or slogan.

Its advertising injury amendment endorsement [AES 3007 (Ed. 05/01) XS] similarly precludes coverage for:

"advertising injury" arising out of any actual or alleged infringement of intellectual property rights or violation of laws relating to patents, trademarks, trade dress, trade names, trade secrets and know-how.

While plaintiff Noll alleges Claims One and Three for federal and California state law trademark infringement, he also alternatively pleads Claim Two for Unfair Competition and False Designation of Origin under the Lanham Act, 15 U.S.C. § 1125. [Complaint ¶¶ 33, 35] The former claims fall into the exclusions but the latter does not.

There is no case law that would support a finding that unfair competition/ false designation claims must include trademark infringement or otherwise implicate intellectual property rights. Unfair competition claims may include infringement of trademarks and service marks but they do not always. The law of unfair competition covers a greater scope than the law of trademark infringement: "It is possible to be guilty of unfair competition even when trademark infringement is not present, if use of a similar but noninfringing mark or device is combined with unfair practices in a manner which is likely to deceive purchasers regarding the origin of goods under all the circumstances." *Fotomat Corp. v. Photo Drive-Thru, Inc.*, 425 F. Supp. 693, 708-09 (D.N.J. 1977).

"Unfair competition . . . is a more broadly conceived tort than its frequent litigation partner, trademark infringement, and there are some instances where a defendant is guilty of competing unfairly without having technically infringed." *Professional Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 671 (5th Cir. 1975). The law of trademark is a branch of the broader area of the law called unfair competition; its scope is not co-extensive with the trademark law. *See e.g. Am Jurs 2d Trademarks and Trade Names* § 484 ("Its now universally agreed that the law of trademarks is only part of the larger field of unfair competition"); *Planatary Lock Up, Inc. v. Tech Splosion, Inc.*, 261 F.3d 1188 n.5 (11th Cir.) (2001) ("common law and statutory trademark infringement are merely specific aspects of unfair competition."). Unfair competition and trademark infringement thus have distinct bases, and an exclusion barring trademark claims, as here, would not bar unfair competition liability which could potentially still exist even if plaintiff's "StreetSurfer" trademark is found invalid or noninfringing.

Indeed, Mr. Noll pleads in the alternative a cause of action for unfair competition and false designation of origin. So even if his trademark claims are unsuccessful, liability could attach if Mr. Noll can prove marketplace confusion. The allegation of potential consumer confusion between the companies' identified terms "StreetSurfer" vs. "Street Surfing," even if not qualifying as marks, would constitute unfair competition and be sufficient to trigger a defense.

Advertisements can confuse the public about the relationship between a particular good and its source in a way that does not implicate trademark law. The same facts which could support assertion of a registered or unregistered trademark could also generate rights to recovery for unfair competition. In the latter case, liability would flow from public confusion even if the marks asserted could not establish liability.

163110.2-10580-001-12/1/2008 3:51 PM

EXH 5- 11

Unfair competition in the form of a Lanham Act § 1125 false designation of origin or false advertising claim, as plaintiff pleads here, includes conduct beyond violation of intellectual property or trademark rights. *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 922-23 (3d Cir. (Pa.) 1990) (False advertising claims relate to the publication of false or misleading statements about any product in print (including one's own product in print) and are not dependent on a related trademark claim of any sort.).

In fact, one prominent commentator notes the "false designation of origin" aspect of the Lanham Act, 15 U.S.C. § 1125(a) codifies common law cases which permit a manufacturer in one location to assert the right to truthfully use a geographic designation against another manufacturer who does not make the product in the named location. 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:49, at 27-105 (4th ed. 2004, revsd. Sept. 2007). According to McCarthy, a Lanham Act false designation of origin claim thus "exists apart from any trademark or certification mark rights in plaintiff, for it is founded on the false advertising prong of [§ 1125(a)]." *Id.* So here, plaintiff's Second Claim for false designation of origin under the Lanham Act has nothing to do with plaintiff's trademark rights, if any, but use of the words "Street Surfing" in advertising that may confuse consumers about where and by whom the products were made. It is beyond the exclusion.

The court in *Corporate Risk International* rejected an insurer argument that a broader exclusion than that in force here applied to Lanham Act unfair competition claims because the underlying plaintiff's claims went beyond the express terms of the exclusion.[11] The broader allegations here evidence possible exposure for unfair competition or a false designation of geographic origin that does not amount to trademark infringement and, as such, require a defense.

Assertion of a trademark exclusion to bar a defense for a complaint pleading both trademark infringement and unfair competition fails for the same reason that a trade secret exclusion does not preclude a defense to a complaint alleging alternative claims for misappropriation of trade secrets and trade libel. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Seagate Technology, Inc.*, 233 Fed. Appx. 614, 616, 2007 WL 1280737, *1 (9th Cir. (Cal.) 2007) ("The Policy's clause excluding claims arising out of the misappropriation of trade secrets does not establish that AISLIC owes no duty to defend. While Convolve's claims that Seagate misappropriated its technology would be excluded by that clause, such misappropriation claims are not necessary for Convolve to maintain trade libel claims against Seagate. A trade libel claim by Convolve against Seagate could proceed and succeed even if, as Seagate maintains, it

---

[11] *Corporate Risk Int'l, Inc. v. Assicurazioni Generali, S.p.A.*, No. 95-1440-A, 1996 U.S. Dist. LEXIS 19720, at *8-9 (E.D. Va. Mar. 15, 1996) ("After a reading of the underlying complaint, it is clear that the complained of conduct goes beyond trade or service mark infringement. . . . Each of the Lanham Act counts . . . complains of CRI's conduct in the promotion, sale, and offering for sale of its corporate security services in conjunction with the allegedly infringing marks. Further, at paragraph thirty, the complaint asserted that CRI's advertising activity was 'in direct contravention of Plaintiffs' CONTROL RISKS MARKS and other proprietary rights.' That reference to other proprietary rights is again made at paragraph sixty-five. Finally, . . . the Prayer for Relief asks that the underlying defendants be enjoined from 'engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive Defendants' customers' into believing that CRI's services were sponsored by Control Risks Group. The prayer also asks for damages resulting from CRI's 'unfair activities.'").

never misappropriated Convolve's technology."). Just as a defendant may commit trade libel without taking its competitor's trade secrets, Street Surfing may have to pay damages for unfairly competing even though it did not technically infringe any trademarks.

Should an insurer wish to exclude coverage for any suit that asserts at least one trademark infringement claim, it could have done so. It also could have excluded coverage for all forms of unfair competition, not just trademark infringement. Great American elected not to do so. A court cannot remake the contract for the insurer's benefit and the insured's detriment.[12]

So long as Great American cannot foreclose the possibility Street Surfing will be found liable for unfairly competing without infringing Mr. Noll's claimed trademark, it must defend. Until then, a "possible world" exists in which Great American's insured might be found liable for a covered damage.

The IP exclusion and endorsement does not eliminate the potential for coverage.

## C.    Policy Period Issues

### 1.    The Wrongful Conduct Potentially Occurred During Great American's Policy Periods

Street Surfing need only establish a "bare possibility of coverage" to implicate Great American's duty to defend.[13] The Complaint is unclear precisely when the wrongful conduct occurred, but based on the Complaint's allegations it appears the conduct occurred during Great American's policy periods, 8/22/05 to 8/22/06 and 9/22/06 to 9/22/07. Mr. Noll alleges the wrongful conduct occurred *"on information and belief . . . since at least on or about* January of 2005, *or such other date* as may be later determined." [Complaint ¶ 19] It also alleges the conduct continued through the present day. [Complaint ¶¶ 35, 37] This implicates both Great American policies since the accused wrongful conduct[14] appears to have commenced sometime

---

[12]*Powerine Oil Co., Inc. v. Superior Court*, 37 Cal.4th 377, 392 (2005) ("We do not relate any provision of any contract, including the standard policy underlying any individual policy, for any purpose."); *Safeco Ins. Co. of America v. Robert S.*, 26 Cal.4th 758, 763-64 (2001) . . . ("We cannot read into the policy what Safeco has admitted."); *Fireman's Fund Ins. Co. v. Atlantic Richfield Co.*, 94 Cal.App.4th 842, 852 (2001) ("With respect to the words used to express the mutual intent of the parties, several courts have observed that insurance companies' failure to use available language to include certain types of liability gives rise to the inference that the parties intended not to so limit coverage.")

[13]*Belmonte v. Employers Ins. Co.* 83 Cal. App. 4th 430, 433 (2000) ("Even the bare possibility of coverage is sufficient to trigger [the duty to defend]."); *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993) ("Indeed, in that case we said that 'the insurer need not defend if the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*' The quoted language cannot reasonably be understood to refer to anything beyond a bare 'potential' or 'possibility' of coverage as the trigger of a defense duty." (citation omitted; emphasis in original)).

[14]Each Great American policy requires that the wrongful act/offense occur during the policy period. [Policies, Coverage B Insuring Agreement, ¶ 1.b.] *See also Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1032-1033 (2002) (Under Coverage B of a CGL policy, "[t]he triggering event is the insured's wrongful act, not the resulting injury to the third party claimant. Indeed, coverage will exist for a personal injury 'offense,' committed during the term of the policy, even if the injury occurs after the policy expires.").

163110.2-10580-001-12/1/2008 3:51 PM

in 2005 and continued through the filing of the Complaint on June 3, 2008. Plaintiff seeks damages based on Street Surfing's profits from 2005 through 2008. [Plaintiff Mediation Brief and Exhibit "2" thereto]

### 2.     The Prior Publication Exclusion Cannot Bar a Defense

The prior publication exclusion[15] does not apply because the Complaint is uncertain about when the wrongful conduct first occurred. It may have first occurred around January 2005, but it may also have first occurred later in 2005 during Great American's policy period. The potential for coverage and thus Great American's defense duty exists despite the exclusion.

Anyway, the prior publication exclusion applies only to speech-based personal injury offenses such as defamation and invasion of privacy, not to non-speech-based advertising injury offenses such as the use of another's advertising ideas – the policy offense at issue here. So the prior publication exclusion cannot relieve Great American of its duty to defend. There are no California decisions to the contrary. The primary California prior publication case is *Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165 (2000). It is inapposite because a speech-based offense (defamation) was at issue. *Ringler* did not address whether the prior publication exclusion applies to claims of trademark infringement or the use of another's advertising ideas. It is not dispositive or even persuasive on those issues.

In contrast, *Arnette Optic Illusions, Inc. v. ITT Hartford Group*, 43 F. Supp. 2d 1088 (C.D. Cal. 1998); a published California decision, is directly on point. Justice Moreno of the California Supreme Court, while sitting on the District Court, penned that decision and found that under California law the prior publication exclusion does not apply to trademark infringement claims nor the advertising injury offenses of "infringement of . . . slogan" or "misappropriation of advertising ideas," virtually the identical offense that is at issue here. Justice Moreno reasoned that:

> Courts are split regarding whether the first publication exclusion applies to all advertising injuries or only to libel, slander and invasion of privacy. In *Irons Home Builders Inc. v. Auto-Owners Ins. Co.*, 839 F. Supp. 1260, 1265 (E.D. Mich. 1993), the court found that the exclusion applied only to advertising injury resulting from slander, libel or invasion of privacy. . . . The court explained,
>
>> The exclusion provision refers to the "oral or written publication of material." It mimics the provisions of the policy that relate to advertising injury involving libel, slander, and invasion of privacy. In each case, advertising injury is defined as the "oral or written publication of material" that is slanderous or libelous or invades privacy .... Given the duplicative language of the provision, it is a reasonable construction of the provisions that it only applies to libel, slander and invasion of privacy [not to offenses such as use of another's advertising idea].

>       . . . .

---

[15]Policy exclusion c ("This insurance does not apply to: . . . 'Personal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.").

> Hartford argues that "the 'first publication' exclusion has been declared clear and unambiguous." While this overstates the case law, at least one court has found that the first publication exclusion applies to all types of advertising injury, not just libel slander and invasion of privacy. . . .
>
> Arnette argues that at the very least, the lack of a controlling in-circuit authority indicates that the policy language is ambiguous. . . .
>
> Arnette has the better argument here, especially in light of the breadth of the duty to defend. . . .
>
> Even under the more exacting standard of the duty to indemnify, because both Hartford's and Arnette's interpretations of the policy language are reasonable, and because the case law supports both interpretations, the Court finds that the language in question is ambiguous and must be interpreted in favor of Arnette's reasonable expectation of coverage.

*Id.* at 1096, 1097. Thus, in the only significant and published case applying California law that is directly on point, the prior publication exclusion was found to be ambiguous and, therefore, limited to the defamation and privacy offenses. *Arnette Optic Illusions* governs here, not *Ringler*. The prior publication exclusion, then, cannot relieve Great American of its duty to defend under any given policy period.

The decision in *Arnette Optic Illusions* was not only in accord with earlier cases,[16] but has been echoed in subsequent decisions from around the country. In *Westfield Companies v. O.K.L. Can Line*, 155 Ohio App. 3d 747, 758 (2003), the court held that the prior publication exclusion is limited to speech-based torts and did not apply to trade dress infringement:

> [W]e hold that this exclusion applied only to advertising injuries based upon libel, slander, disparagement, and invasion of privacy. Under Ohio law, "an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." The language of the exclusion quoted above mimicked the language of the libel, slander, disparagement, and invasion-of-privacy coverage provisions. The insurance policy provided that " '[p]ersonal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses: * * * d.) *[o]ral or written publication of material* that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; e.) *[o]ral or written publication of material* that violates a person's right to privacy." (Emphasis added.) Given this duplicate language, we hold that this exclusion applied only to provisions other than those concerning the offense of trade-dress infringement. [Footnote omitted.]

A federal district court in Florida recently surveyed the prior publication landscape and concluded that the split of authority at the very least made the exclusion ambiguous, requiring that it be interpreted in favor of coverage.

---

[16]*Irons Home Builders, Inc. v. Auto-Owners Ins. Co.*, 839 F. Supp. 1260, 1264-65 (E.D. Mich. 1993); *Jerry Madison Enters., Inc. v. Grasant Mfg. Co., Inc.*, No. 89 CIV 2346 (MBM), 1990 U.S. Dist. LEXIS 1649 (S.D.N.Y. Feb. 14, 1990) (finding exclusion applicable only to libel, slander or invasion of privacy).

> The court acknowledges the existence of a split of authority on whether the "first publication" exclusion applies to all advertising injuries or only to slander, libel and invasion of privacy. . . . At the very least, this conflict and lack of any controlling in-circuit authority suggests that the language is capable of two reasonable interpretations, and hence, is by definition ambiguous, requiring that it be interpreted against the insurer and in favor of coverage.

*Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1342 (S.D. Fla. 2001).

Rules of policy construction in California also require a finding of ambiguity where two reasonable interpretations of a policy provision are put forth. *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 867 (1993). So any contrary interpretation of the prior publication exclusion put forth by Great American is simply further evidence of its ambiguity which, in turn, requires that the exclusion be construed in favor of Street Surfing's reasonable expectations of coverage. A California court will follow Justice Moreno's decision in *Arnette Optic Illusions* and find that the prior publication exclusion does not apply to the non-speech-based offenses at issue here. The exclusion cannot be used by Great American as a basis for limiting its defense duty.

There is another reason that Great American cannot rely on the prior publication exclusion. A California appellate court decision following *Ringler* held that the exclusion can ordinarily only apply to an insurer's indemnity, not defense, duty. *See J. Lamb, Inc.*, 100 Cal. App. 4th at 1040 ("Even though it may ultimately be determined that Atlantic Mutual has a viable defense to coverage by virtue of the application of the 'first publication' exclusion, this can only affect its liability for indemnification.").

Even assuming the prior publication exclusion applies (it does not), *Ringler* does not govern. *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069 (7th Cir. 2004), is more on point.

The *Ringler* court interpreted the prior publication exclusion and developed the "substantially same material" test in light of the principles of substantive defamation law.

> Clearly, any useful interpretation of the [prior publication] exclusionary language necessarily turns on the meaning of the word "material." We therefore turn to the question of how this word should be construed in **the context of the law of defamation.**

*Ringler*, 80 Cal. App. 4th at 1179 (emphasis added). After discussing defamation law in great detail (*id.* at 1179-81) – including the truth defense and that a *defamation defendant* need not justify the truth of *every word* of the allegedly defamatory matter, just that the *gist* of the remark is *"substantially true"* (*id.* at 1180-81) – the *Ringler* court reasoned that the prior publication exclusion barred coverage for defamatory materials published during the policy period if *"substantially the same* material" was published before inception of the policy.

> As seen, it is not the literal truth or falsity of **each word or detail** used in a statement which determines whether or not it is defamatory; rather, the determinative question is whether the "**gist** or **sting**" of the statement is true or false, benign or defamatory, **in substance. For this reason,** we interpret the language of the Policy exclusion at issue as barring coverage of republication of

> any identifiably defamatory "material" whenever the first publication *of substantially the same material* occurred before the inception of the policy period, without regard to whether or not the defamatory material is literally restated in precisely the same words.

*Id.* at 1181-82 (italics in original; bold emphasis added; citations omitted). The *Ringler* test is therefore not relevant in the trademark or Lanham Act context, which torts are defined by their own body of law. Even if a California court did eventually rule that the prior publication exclusion applies to Lanham Act or trademark infringement claims (no California state court has, but a California federal court led by a California Supreme Court justice has ruled that it does not), it would not apply the *Ringler* "substantially same material" test. *Ringler* simply has no relevance to the issues facing Great American.

Even if *Ringler* applies, the prior publication exclusion cannot bar a defense because plaintiff's fact allegations show the wrongful conduct potentially first occurred after Great American's policy period commenced. [Complaint ¶ 19 (Street Surfing started using plaintiff's street surfer concept in its advertising sometime in 2005)] Moreover, extrinsic evidence, which Great American must consider in determining its defense obligation,[17] demonstrates distinct advertising employing variations of the accused street surfer concept first occurred during each of Great American's policy periods. [**Exhibits "1"** and **"2"** (ads from Street Surfing's website, www.streetsurfing.com)]

For example, in January 2006, squarely within Great American's first policy period, Street Surfing *first* advertised lime green wheels for its wave skateboards. **Exhibit "1"** states under News, "January, 2006 *Street Surfing debuts* Lime Green Wheels especially made for the wave." When you click on Buy Now from the same webpage those wheels are advertised and offered for sale, again using the Street Surfing concept. [**Exhibit "1"** p. 4 ("*NEW!* Lime Green *Street Surfing* Wheels for the Wave . . . Our price $9.95 . . . Add to Cart")] While ads of defendant's skateboards and other related products may (or may not) have occurred earlier, January 2006 is the first time the distinct **Exhibit "1"** products and ads ran. These ads necessarily differ in substance than any earlier ads because they market completely new products.

Street Surfing first ran other distinct ads during Great American's second policy period, in 2007. For example, it first advertised and offered for sale a "*New* Ultimate *Street Surfer* Wheel Set" at that time for $37.95. [*See* **Exhibit "2"** website advertisement] This is a different product first advertised in 2007 that uses the accused advertising idea of street surfing. These

---

[17]*Lamb*, 100 Cal. App. 4th at 1034 ("The scope of the duty [to defend] . . . rests on whether the *alleged facts or known extrinsic facts* reveal a *possibility* that the claim may be covered by the policy." (emphasis in original)); *El-Com Hardware, Inc. v. Fireman's Fund Ins. Co.*, 92 Cal. App. 4th 205, 217 (2001) (A defense was due under "advertising injury" coverage even though the complaint was silent on advertising activity where the insurer received additional facts demonstrating advertising); *Indian Harbor Ins. Co. v. Hartford Cas. Ins. Co.*, No. B192829, 2007 WL 2955564 at *8-9 (Cal. 2007) ("That the Adidas complaint does not expressly mention Skecher's 1996 to 1999 advertising activities does not mean those activities cannot be encompassed by the complaint's broadly worded allegations... Here, as in El-Com, the Skechers catalog depicting allegedly infringing products put Hartford on notice of claims potentially covered under its policy.").

extrinsic ads satisfy even *Ringler's* "differ in substance" test because they are not substantially the same material.

The **Exhibit "1"** and **"2"** ads and the accused material also differ in substance because the 2006 ad uses the words "street surfing" while the 2007 ad uses "street surfer."

Nonetheless, *Taco Bell*, 388 F.3d 1069 is more analogous than *Ringler* because it involved the misappropriation of an advertising idea just like this case, not defamation. That court gave a concrete example of why the prior publication exclusion did not operate to bar coverage, which is directly analogous to the facts of this case. The insured's 1997 commercials, running during Continental's policy period, misappropriated the underlying plaintiff's basic advertising idea of a "Psycho Chihuahua" – i.e., of a clever, little, feisty dog with an attitude. *Id.* at 1072. And the later republished commercials, occurring in 1998 during Zurich's policy period, misappropriated that same basic idea. Namely, "the idea of the Chihuahua's poking its head through a hole at the end of the commercial." *Id.* at 1073. The republished ads used the same basic misappropriated idea as the first ads cast in a slightly different light. In the earlier ads the clever, feisty Chihuahua was doing certain things and in the later ads the clever, feisty Chihuahua was doing others, including poking its head through a hole. Even though the pre- and post-policy published material used the same basic idea and were very similar, the prior publication exclusion did not bar coverage because that same basic idea – the clever, feisty Chihuahua – was used or pictured in a slightly different fashion each time.[18]

Similarly, while Street Surfing's initial and later ads, **Exhibits "1"** and **"2,"** use the street surfer concept, they involve different products and variations of that idea. Different pictures are used in the ads, they have different layouts, and Street Surfing uses different advertising text. Additionally, sometimes the words "street surfer" are used and other times "street surfing." *Taco Bell* supports Street Surfing and demonstrates the prior publication exclusion cannot apply.

No matter whether Great American applies the *Ringler* or *Taco Bell* standard, the prior publication exclusion does not bar a defense. Both the plaintiff's allegations and extrinsic evidence show some distinct accused wrongful conduct first occurred during Great American's policy periods.

**D.    The Knowing Violation of Rights of Another Exclusion Cannot Bar a Defense**

Great American's policies exclude coverage for " 'personal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the

---

[18]*See also International Communication Materials, Inc. v. Employers Ins. of Wausau*, No. 94-1789, 1996 WL 1044552, at *4 (W.D. Pa. May 29, 1996) (Insurer contended the first publication exclusion encompassed the entire theme of the insured's advertising, even though the objectionable material continued over a period of time in different forms. The court flatly rejected the insurer's proposed construction, noting that "[i]f Wausau had intended that the exclusion apply to advertising campaigns or material that is 'similar to' material published before the inception of the policies, it could have provided such language." The court held the first publication exclusion "does not preclude coverage for material published within the policy period, even if similar to previously published material, or if part of an 'advertising campaign.' ").

rights of another and would inflict 'personal and advertising injury.' " But the court in *Cloud Nine*, 464 F. Supp. 2d at 1168-1169 clarified that such an exclusion does not excuse an insurer from defending a Lanham Act false designation of origin claim like the one plaintiff alleges. This is because the elements of such a claim do not necessarily require that the insured act with knowledge that its conduct would cause advertising injury. *Id.* The court reasoned that while such exclusion may end up preventing indemnity, it cannot bar a defense because the potential for a covered liability exists in spite of the exclusion.

### E.    The Breach of Contract Exclusion Cannot Bar a Defense

Great American's policies exclude coverage for " 'personal and advertising injury' arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement.' " The Complaint does not assert any liability stemming from a contract so Great American must defend.

Although not alleged, Street Surfing entered into a contract with Mr. Noll on March 27, 2008 where he agreed to transfer his rights, title and interest in the purported "Street Surfer" mark to Street Surfing. Mr. Noll has since repudiated the contract, informing Street Surfing he does not intend to perform. Mr. Noll may be liable for breach of contract but Street Surfing is not since it is not the party who breached. Thus, any Street Surfing liability for "personal and advertising injury" could not possibly arise out of breach of contract.

Additionally, since the contract did not exist until 2008, Street Surfing's alleged wrongful conduct during Great American's policy periods, 2005 – 2007, had nothing to do with the contract.

In any event, the exclusion does not apply. There is an exception to the exclusion for liability arising out of the breach of an implied contract to use another's advertising idea in your 'advertisement.' The contract here allows Street Surfing to use another's (Noll's) advertising idea, "Street Surfer," coming within the exception.

Finally, the Court rejected Street Surfing's motion for preliminary injunction, indicating the parties may not have formed an enforceable contract. [Plaintiff Mediation Brief and Exhibit "3" thereto] If the same result occurs at trial, the breach of contract exclusion could not possibly apply since no contract would exist.

## IV.   GREAT AMERICAN MUST REIMBURSE ANY REASONABLE SETTLEMENT IRRESPECTIVE OF ACTUAL COVERAGE

### A.    Street Surfing Has the Right to Make a Reasonable Settlement and Seek Reimbursement from Great American Since It Has Breached the Contract

Great American has left Street Surfing to fend for itself, defend the *Noll* suit on its own, and protect its own interests. Great American breached the insurance contract because it has not immediately responded to the insured's September 2008 notice as required by California Code of Regulations § 2695.7(b) (insurer must accept or deny an insured's claim immediately upon

tender but in no event later than forty (40) calendar days of receiving proof of claim), nor has it immediately defended as required by California's Supreme Court. *Montrose v. Superior Court*, 6 Cal. 4th 287, 295 (1993) ("The defense duty is a continuing one, arising on tender of defense[.]"); *Buss v. Superior Court*, 16 Cal. 4th 35, 48-49 (1997) ("To defend meaningfully, the insurer must defend immediately."). Additionally, you orally advised defense counsel Larry Hilton on October 17, 2008 that there is no coverage for the claim and, thus, that Great American would not defend or indemnify Street Surfing in the *Noll* suit. That was followed by a written denial of coverage on the same date.

Great American thus lost any right it had under the contract to control the litigation and control settlement. It may not enforce the "no voluntary payments" clause or any other clause in the insurance policy that allowed it the right to control settlement. *Jamestown Builders, Inc. v. General Star Indemnity Co.*, 77 Cal. App. 4th 341, 347-348 (1999) ("First, insurers that decline a tendered defense are out of luck. An insured that has been abandoned by its carrier and left exposed to the possibility of a default judgment may protect its own interests by entering into a reasonable settlement without losing its right to recover on the policy. The no-voluntary-payments provision is superseded by an insurer's antecedent breach of its coverage obligation. And the burden of proof shifts to the insurer to show that the settlement was not reasonable or was the product of fraud or collusion." (citations omitted)). Street Surfing now has the unfettered right to settle the *Noll* suit for a reasonable amount.

Indeed, in *Hamilton v. Maryland Casualty Co.*, 27 Cal. 4th 718, 728 (2002) the Supreme Court explained again California's well-established rule that an insurer who breaches its defense obligation is required to reimburse the settlement amount paid by its insured so long as it is reasonable and noncollusive. The insured need not obtain the insurer's consent to settle.

> As we have explained in previous cases, the denial of coverage and a defense entitles the policyholder to make a reasonable, noncollusive settlement without the insurer's consent and to seek reimbursement for the settlement amount in an action for breach of the covenant of good faith and fair dealing. " '[W]here the insurer has repudiated its obligation to defend[,] a defendant in the absence of fraud may, without forfeiture of his right to indemnity, settle with the plaintiff upon the best terms possible, taking a covenant not to execute.' "

*See also Noya v. A.W. Coulter Trucking*, 143 Cal. App. 4th 838, 842-843 (2006) ("When an insurer denies coverage and a defense, the insured is entitled to make a reasonable, noncollusive settlement without the insurer's consent and may seek reimbursement for the settlement amount and for any breaches of the covenant of good faith and fair dealing. 'In effect, when the insured tenders the suit, the carrier is receiving its chance to be heard. Having rejected the opportunity and waived the chance to contest liability, it cannot reach back for due process to void a deal the insured has entered to eliminate personal liability.' " (citations omitted)).

We bring this to your attention because we believe the underlying case may settle imminently. Although Great American has lost its rights, Street Surfing wants to give it yet another opportunity to honor its contract, defend its insured, and fund a reasonable settlement.

163110.2-10580-001-12/1/2008 3:51 PM

EXH 5- 20

### B.   Street Surfing Need Not Prove the Settlement Payment is Actually Covered

Where an insurer tortiously breaches its duty to defend, the insured is responsible to pay for any resulting default judgment, even if the judgment is not covered under the insurance policy. *See Amato v. Mercury Casualty Co.*, 53 Cal. App. 4th 825, 831-835 (1997) and the cases *Amato* discusses for this principle. The same is true when an insurer breaches its duty to defend resulting in even an uncovered *litigated* judgment. *Mullen v. Glens Falls Ins. Co.*, 73 Cal. App. 3d 163 (1977).

The *Amato* court reasoned that when an insurer refuses to defend a potentially covered suit a default judgment is the proximate result of such conduct and thus a proper damage even if not covered by the policy. It also found that if it permitted an insurer to disprove coverage for the judgment based on hindsight that would encourage insurers not to defend. An actual coverage standard would also place an impossible burden on an insured: without a litigated judgment, it is not possible for one to determine whether the policy actually covers the plaintiff's damages. Thus, the insured would have to conduct a "trial within a trial," and it should not bear this burden. That is, it would have to try the underlying case in the coverage case.

The same reasoning applies to settlements when an insurer refuses to defend a potentially covered suit. Forcing the insured to prove actual coverage for a settlement after a breach of the duty to defend would encourage insurers not to defend so they could rely on hindsight to defeat coverage. It would place an impossible burden on the insured since no litigated judgment exists. Additionally, a reasonable settlement payment of a potentially covered liability is the proximate result of an insurer wrongfully refusing to defend, and the proper tort measure of damages.

Indeed, even under a contract theory of damages a settlement payment in a potentially covered suit must be paid. At the time of contracting Great American could reasonably foresee its insured would settle a high stakes potentially covered case for a reasonable amount if it refused to defend in breach of its contract, particularly where the insured's anticipated attorneys' fees and expert costs are exorbitant. Any reasonable litigant would settle in such a scenario.

Without a litigated judgment in the underlying case only the potential for coverage of a case can be determined. The broad duty to defend and settle thus flows from this potential alone, not from any final determination of indemnity.

> [T]he nature of the obligation to defend is itself necessarily uncertain. Although insurers have often insisted that the duty arises only if the insurer is bound to indemnify the insured, this very contention creates a dilemma. No one can determine whether the third party suit does or does not fall within the indemnification coverage of the policy until that suit is resolved. . . The carrier's obligation to indemnify inevitably will not be defined until the adjudication of the very action which it should have defended. Hence the policy contains its own seeds of uncertainty; the insurer has held out a promise that by its very nature is ambiguous. *** We point out that the carrier must defend a suit which potentially seeks damages within the coverage of the policy . . . "[Modern] procedure has made for so much greater flexibility or plasticity in pleading that this rule must be applied with extreme care to include all the potentialities of the pleading and the policy coverage, . . ." (Italics added.) [T]he insurer need not

> defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.

*Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 271-72, 275 (1966).

An insurer that fails to defend is not allowed to reduce damages owed to its insured by trying to show that portions of a judgment are for "noncovered claims." "Whittling down" is forbidden by California for good reason. Just as in *Amato, Gray v Zurich*, 65 Cal. 2d at 280 rejected a non-defending insurer's attempt to reduce its liability for a judgment based on a hindsight allocation of coverage because it would impose an impossible burden on the insured and it would encourage insurers not to defend. The same reasoning applies to a settlement.

> Defendant argues [that] the judgment has not necessarily been rendered on a theory within the policy coverage. Thus defendant would limit the insured's recovery . . .
>
> We [previously] rejected a similar proposal . . . . The insurer contended that we should apply a "tort" theory of damages to its wrongful refusal to defend. Such a theory, we explained, would impose upon the insured "the impossible burden" of proving the extent of the loss caused by the insurer's breach. As this court said in an analogous situation: "Having defaulted such agreement the company is manifestly bound to reimburse its insured for the full amount of any obligation reasonably incurred by him. It will not be allowed to defeat or whittle down its obligation . . . Sustaining such a theory . . . would tend . . . to encourage insurance companies to similar disavowals of responsibility with everything to gain and nothing to lose." [Citations omitted.]

"The *Gray* rule of automatic liability" has been repeatedly upheld and applied both to litigated judgments and default judgments. In case of settlement after the insurer wrongfully fails to defend like here, liability for the full amount is not automatic but is presumed, subject only to a review for reasonableness and noncollusiveness.[19]

> The general rule is long-settled in California that "an insurer that wrongfully refuses to defend is liable on the judgment against the insured." . . . It is no defense that the ultimate judgment against the insured is not necessarily rendered on a theory within the coverage of the policy. [Citations omitted].

*Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 902 (9th Cir. 2000).

Based on the above authority, Great American is responsible to reimburse any reasonable settlement amount Street Surfing can negotiate irrespective of actual coverage for the payment since, as explained above, the suit exposes Street Surfing to liability potentially covered under the policy. This is a proper measure of damages for Great American's breach of its defense obligation, whether in tort or contract.

---

[19] *Hamilton*, 27 Cal. 4th at 728.

163110.2-10580-001-12/1/2008 3:51 PM

EXH 5- 22

### C.   A Reasonable Settlement

A substantial settlement payment to plaintiff is reasonable given: (1) the risk Street Surfing faces if it does not settle Mr. Noll's high stakes unfair competition suit, and (2) Street Surfing's ongoing cost to defend the case, particularly because Great American has forced Street Surfing to pay for its own defense.

Mr. Noll's lawsuit exposes Street Surfing to considerable liability. Although unwilling to specify an exact number, Mr. Noll claimed at the October 17, 2008 settlement discussions it would take "a seven figure contribution" to settle the case. His mediation brief, which defense counsel already forwarded to Great American, demands $1.8 million in damages plus a royalty going forward. Mr. Noll believes he will incur substantial damages in the marketplace and that he has a strong chance of prevailing at trial. He contends Street Surfing unfairly competed resulting in consumer confusion and causing these damages. He bases his damage claims on Street Surfing's profits, as he is entitled to do under the Lanham Act. [Complaint, Count Two Prayer ¶ 2; Plaintiff Mediation Brief]

Defense counsel opines the amount in controversy will easily exceed $1 million. Street Surfing reports $36 million in sales for the wave skateboard and related products in which it used plaintiff's claimed advertising idea of a street surfer. [Plaintiff Mediation Brief] According to counsel the court may apply a reasonable royalty percent of sales anywhere between 2% and 5% to set damages. Street Surfing's exposure thus ranges from $700,000 to at least $1.8 million plus Mr. Noll's attorney fees. [Complaint, ¶ 38] Mr. Noll will seek even more than that at trial according to his mediation brief.

Liability could also be problematic. "StreetSurfer" and "Street Surfing" are similar and are used in the same channels of trade, on skateboards and related products. There is a strong likelihood of consumer confusion. [Plaintiff Mediation Brief]

The current negotiations present a real opportunity given Street Surfing's seven figure risk exposure[20] and the relatively low litigation costs the parties have incurred thus far. The likelihood of settling will dwindle as litigation costs increase. [Plaintiff Mediation Brief]

The ongoing cost to defend the *Noll* suit alone justifies settling. Street Surfing retained Russ August & Kabat because of its expertise in these types of high stake business suits.

Lead defense counsel, Marc A. Fenster estimates it will cost in the range of $300,000 to $500,000 to defend the suit depending upon a number of factors, including the plaintiff's litigation tactics. This includes attorney fees and expert costs. Street Surfing will have to retain a survey expert and other experts.

---

[20]There are other reasons supporting a reasonable settlement but Street Surfing cannot share its defense counsel's privileged assessment and opinions. Great American is a breaching insurer. It does not come within the circle of privilege and does not have common interests with its insured. Street Surfing cannot risk waiving the attorney-client privilege in the underlying suit by sharing confidential information with its non-defending insurer. Certainly, if Great American honors its contract and agrees to defend, Street Surfing will reconsider its position.

Regardless of who prevails, Street Surfing will bear these expenses if it does not settle. Resolving this matter now is thus in Street Surfing's financial interests. Not only will it be able to terminate ongoing litigation costs, it will avoid perhaps millions of dollars in exposure between the potential judgment and plaintiff's attorney fees. It will avoid the risks of an uncertain trial.

Given the above, we anticipate Great American agrees Street Surfing should settle for a substantial six figure contribution. If Great American disagrees and believes such a settlement is unreasonable, or has any other objections to settling, please notify us as soon as reasonably practicable.

## V.    CONCLUSION

Given the Complaint and the policy language, fairly viewed in light of applicable law, Great American, at a minimum, should agree to defend subject to a reservation of rights in the present *Noll* suit. Because it has denied coverage and breached its contract defense obligation, Street Surfing plans to protect its own interests. It will pursue a reasonable settlement with the plaintiff.

Please immediately advise whether Great American has any intention of funding a settlement or defending its insured.

Very truly yours,

Joseph S. McMillen

JSM:arm

Encls. [Exhs. "1" and "2"]

cc:        Client (via e-mail)

# EXHIBIT 6

# LEWIS BRISBOIS BISGAARD & SMITH LLP

### ATTORNEYS AT LAW

221 NORTH FIGUEROA STREET, SUITE 1200, LOS ANGELES, CA 90012
PHONE: 213.250.1800 | FAX: 213.250.7900 | WEBSITE: www.lbbslaw.com

December 17, 2008

FILE NO.
24725-98

**VIA FACSIMILE [(949) 553-2050] AND U.S. MAIL**

Joseph S. McMillen, Esq.
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, CA 92612

| | | |
|---|---|---|
| Re: | **Rhyn Noll v. Street Surfing, LLC, et al.** | |
| | **U.S. Dist. Court (Central Dist. of Cal.) Case No. SACV08-00617 AHS (MLGx)** | |
| | **Insured:** | **Street Surfing, LLC** |
| | **Great American Policy Nos.:** | **PL 3791711 (8/22/05-8/22/06)** |
| | | **PL 3791711-02 (9/22/06-9/22/07)** |
| | **Great American Claim No.:** | **537506336** |
| | **Your File No.:** | **10580-001** |

Dear Mr. McMillen:

This firm has been retained to represent the interests of Great American E&S Insurance Company ("Great American") with respect to the coverage issues raised by the above-referenced Noll action.

Great American has received and reviewed your letter of December 1, 2008, in which you appear to address every possible issue raised by the duty to defend, and by Coverage "B" ("personal and advertising injury" coverage) of a CGL insurance policy. The fundamental point of the letter is your contention that potential coverage for the Noll action is triggered under Coverage "B" of Great American Policy Nos. PL 3791711 and/or PL 3791711-02.

For the reasons discussed below, Great American will, at present, stand by its October 17, 2008 denial of coverage for Street Surfing, LLC ("Street Surfing") relative to the Noll action.

The allegations of the Noll action are summarized in Great American's October 17, 2008 denial letter. We will not repeat that summary here. Similarly, the language of Coverage "B" of the Great American policy(ies) is quoted in Great American's October 17th correspondence. Again, we will not repeat that language here.

ATLANTA | CHICAGO | FORT LAUDERDALE | LAFAYETTE | LAS VEGAS | LOS ANGELES | NEW ORLEANS
ORANGE COUNTY | PHOENIX | SACRAMENTO | SAN BERNARDINO | SAN DIEGO | SAN FRANCISCO | TAM

4823-1188-1475.1

**EXHIBIT**

**6**

ALL-STATE LEGAL®

EXH 6- 1

LEWIS BRISBOIS BISGAARD & SMITH LLP

Joseph S. McMillen, Esq.
GAUNTLETT & ASSOCIATES
Re:     *Rhyn Noll v. Street Surfing, LLC, et al.*
Page 2


**1.      Potential Coverage Under The Basic Insuring Agreement Of Coverage "B".**

       Your letter argues, at considerable length (see pages 2-10 of your letter), that the "personal and advertising injury" "offense" of "use of another's advertising idea in your 'advertisement'" is alleged in the Noll action.

       As is clear from Great American's October 17th correspondence, Great American – without waiving any of its rights and without prejudice to its coverage position – does *not* presently dispute this contention.  In other words, Great American acknowledges, at present, that there may be a potential for coverage under the basic insuring agreement of Coverage "B" of the Great American policy(ies).

**2.      Applicable Exclusions.**

       The fact that potential coverage may be triggered for the Noll action under the basic insuring agreement does not end the coverage inquiry in this matter.

       Great American cited and relied upon two exclusions in its October 17, 2008 denial letter.  Both of these exclusion preclude coverage and potential coverage for the Noll action.

**A.      The Copyright/Patent/Trademark/Trade Secret Exclusion.**

       Exclusion No. 2.i of the basic insuring agreement of the Great American policy precludes coverage for:

> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

> However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

       The Noll action alleges trademark infringement.  Exclusion No. 2.i precludes coverage for such action.

       In Palmer v. Truck Insurance Exchange (1999) 21 Cal.4th 1109, the policy covered infringement of title or of slogan, but excluded coverage for infringement of trade mark, service mark or trade name.  The Supreme Court held that the underlying action, alleging infringement

LEWIS BRISBOIS BISGAARD & SMITH LLP

Joseph S. McMillen, Esq.
GAUNTLETT & ASSOCIATES
Re:    *Rhyn Noll v. Street Surfing, LLC, et al.*
Page  3

of the registered mark "Valencia," false designation of origin, and unfair competition did *not* allege infringement of title or of slogan, because the mark "Valencia" was neither the name of a literary or artistic work, nor a slogan (i.e., "a brief attention-getting *phrase* used in advertising or promotion" [emphasis in original]).  As such, the exclusion preclude coverage.  (Id., at p. 1120.)

In Aloha Pacific, Inc. v. California Insurance Guarantee Assn. (2000) 79 Cal.App.4th 297, the Court held that a policy's trademark infringement exclusion barred coverage for an underlying lawsuit alleging trademark infringement, false designation of origin, unfair competition, and trade dress infringement (relative to a dispute between manufacturers of potato chips); the Court noted that "trade dress" is a "species of trademark."  (Id., at pp. 317-318, 320-322.)

In Industrial Indemnity Co. v. Apple Computer, Inc. (1999) 79 Cal.App.4th 817, the Court held that a trademark infringement exclusion, including an exclusion of claims for unfair competition based on infringement of trademark, excluded coverage for a breach of contract claim premised on trademark infringement.  (Id., at pp. 828-830.)  The Court noted that "The policy term 'unfair competition' clearly includes both passing off and the narrower tort of trademark infringement.  To the extent a potential passing off claim might be based on advertising conduct not involving trademark infringement, we agree with Apple that ICSOP would be required to provide a defense under its advertising liability endorsement.  However, to the extent a potential passing off claim might be based entirely on advertising conduct that did infringe on a third party's trademark, it would be a form of 'unfair competition based upon infringement of trade mark' subject to ICSOP's exclusion.  [Citation omitted.]  It is irrelevant that the tort of passing off includes elements distinct from those of trademark infringement, if none of those elements was present in the circumstances of the Apple Corps lawsuit. . . . A potential for coverage is not created in such a case by the possibility that the third party plaintiff might allege broader tort claims theoretically encompassing both trademark infringement and other acts of unfair competition that are neither alleged in the complaint nor revealed by extrinsic facts."  (Id., at pp. 831-832.)  (See also Greenwich Insurance Co. v. RPS Products, Inc. (Ill. 2008) 882 N.E.2d 1202, 1212 [underlying claim alleged trademark infringement; court held "it is clear that the trademark exclusion operates to bar coverage in the case at bar"].)

The second sentence of the Great American exclusion (the "exception to the exclusion") reinstates coverage for infringement of copyright, trade dress or slogan which occurs in an "advertisement."  However, this "exception to the exclusion" is not applicable to the Noll action because the Noll action does not allege any of these three specific types of infringement.

LEWIS BRISBOIS BISGAARD & SMITH LLP

Joseph S. McMillen, Esq.
GAUNTLETT & ASSOCIATES
Re:     *Rhyn Noll v. Street Surfing, LLC, et al.*
Page  4

As a result, despite the fact that potential coverage may exist for the <u>Noll</u> action under the basic insuring agreement of Coverage "B," there is nevertheless no coverage or potential coverage for such lawsuit by virtue of the applicability of Exclusion No. 2.i.

**B.     The "Advertising Injury Amendment" Endorsement.**

The Great American policy includes an endorsement entitled "Advertising Injury Amendment."  That endorsement states:

> This insurance does not apply to "advertising injury" arising out of any actual or alleged infringement of intellectual property rights or violation of laws relating to patents, trademarks, trade dress, trade names, trade secrets and know-how.

This advertising injury exclusion is *broader* than Exclusion No. 2.i of the basic insuring agreement of the Great American policy (discussed above), and contains no "exception to the exclusion" as in Exclusion No. 2.i.

This exclusion applies where (1) there is an "advertising injury"; (2) the "advertising injury" "aris[es] out of" the infringement of intellectual property rights or violation of laws; and (3) the infringement of intellectual property rights or violation of laws relates to one of the enumerated offenses identified in the exclusion.  Each of these elements exists in the <u>Noll</u> action.

**(1)     "Advertising Injury".**

The exclusion applies to an injury relating to the insured's "advertising activities."  Such "advertising activities" are alleged in the <u>Noll</u> action.

**(2)     Arising Out of Intellectual Property Rights Or Violation Of Laws.**

The exclusion applies to advertising injury "arising out of" infringement of "intellectual property rights," or violation of laws, relating to "patents, trademarks, trade dress, trade names, trade secrets and know-how."

California court *broadly* interpret the phrase "arising out of" to mean "originating from, incidental to, connected to or related to."  (See <u>Aloha Pacific</u>, <u>supra</u>, at pp. 318-319.)  As a result, the advertising injury need only be minimally related to or have some connection with the alleged infringement of intellectual property rights or violation of certain laws.

LEWIS BRISBOIS BISGAARD & SMITH LLP

Joseph S. McMillen, Esq.
GAUNTLETT & ASSOCIATES
Re:     *Rhyn Noll v. Street Surfing, LLC, et al.*
Page  5

The California Supreme Court has defined "intellectual property" to mean "an 'intangible incorporeal right' existing separately from the physical medium that embodies it." (Simplicity Pattern Co. v. State Board of Equalization (1980) 27 Cal.3d 900, 906.)

The United States Bankruptcy Code (11 U.S.C. Section 101 [35A]), defines "intellectual property" as including:

    (A)     trade secrets;
    (B)     invention, process, design, or plant protected under title 35;
    (C)     patent application;
    (D)     plant variety;
    (E)     work of authorship protected under title 17; or
    (F)     mask work protected under Chapter 9 of title 17;

to the extent protected by applicable non-bankruptcy laws.

Random House Webster's Unabridged Dictionary defines "intellectual property" as:

Property that results from original creative thought, as patents, copyright, material, and trademarks." (2d Ed. 1998).

Based on the above definitions of "intellectual property," it is clear that the Noll action alleges infringement of intellectual property rights, and/or violation of laws (including 15 U.S.C. Section 1114 and 15 U.S.C. Section 1125), which relate to "patents, trademarks, trade dress, trade names, trade secrets and know-how." Plaintiff *himself* claims, in his general allegations, that his lawsuit is "related to the infringement and misappropriation of plaintiff's intellectual property." (Complaint, at Paragraph No. 5.) That allegation is incorporated into *each* cause of action of plaintiff's Complaint.

      **(3)**     **The Infringement Of Intellectual Property Rights And/Or Violation Of Laws Relate To One Or More Of The Enumerated Offenses Identified In The Exclusion.**

The advertising injury exclusion applies to infringement of intellectual property rights, or violation of laws, which are "related to" (1) patents; (2) trademarks; (3) trade dress; (4) trade names; (5) trade secrets; and (6) know-how.

Lewis Brisbois Bisgaard & Smith LLP

Joseph S. McMillen, Esq.
GAUNTLETT & ASSOCIATES
Re:    *Rhyn Noll v. Street Surfing, LLC, et al.*
Page  6

The causes of action set forth in the Noll action – including statutory trademark infringement, statutory unfair competition/false designation of origin, common law trademark infringement, and statutory unfair trade practices – *do* allege "infringement of intellectual property rights or violations of laws relating to . . . trademarks . . . [and/or] trade names. . . ." As such, the exclusion precludes coverage and potential coverage for the Noll action.  (See Palmer, supra; Aloha Pacific, supra; Industrial Indemnity, supra.)

Consequently, despite the fact that potential coverage may exist for the Noll action under the basic insuring agreement of Coverage "B," there is nevertheless no coverage or potential coverage for such lawsuit by virtue of the applicability of the "Advertising Injury Amendment" endorsement.

**C.      Your December 1, 2008 Letter.**

Your December 1st letter attempts to distinguish the two above-discussed exclusions by arguing that, although coverage for the first and third causes of action of the Noll Complaint may be barred, coverage for the second cause of action ("unfair competition and false designation of origin") may not necessarily be barred.  (See pages 10-13 of your letter.)  You claim that "unfair competition" may be a broader tort that trademark infringement.

The contention that coverage for a claim of unfair competition may exist despite one or more policy exclusions for infringement of intellectual property rights (including, without limitation, trademark infringement) has been *rejected* both in California and in other states. (See Palmer, supra [trademark infringement exclusion precluded coverage for infringement of trademark, false designation *and* unfair competition claims]; Industrial Indemnity, supra [claim or suit alleging "breach of contract" or "unfair competition" was not covered or potentially covered where the factual basis for the claim or suit amounted to trademark infringement, and where trademark infringement – as well as "unfair competition based upon infringement of trade mark, service mark or trade name" – was excluded by the policy; policy excluded all forms of unfair competition based upon or relating to trademark infringement, including statutory trademark claims, common law trademark claims, *and* claims of "passing off"; artful pleading will not avoid a trademark infringement exclusion]; Aloha Pacific, supra [policy excluded coverage for claims of trademark infringement, trade dress infringement, false designation of origin, and unfair competition relating to trade dress]; see also Superformance International, Inc. v. Hartford Casualty Insurance Co. (4th Cir. 2003) 332 F.3d 215, 222-223 ["All of these claims – Count VII of the Shelby complaint and all six counts of the Ford complaint – thus allege various sorts of trademark violations and related unfair competition based on these violations.  None of the allegations go any further than the scope of the Lanham Act's purpose. . . .  And complaints

4823-1188-1475.1

EXH 6- 6

LEWIS BRISBOIS BISGAARD & SMITH LLP

Joseph S. McMillen, Esq.
GAUNTLETT & ASSOCIATES
Re:   *Rhyn Noll v. Street Surfing, LLC, et al.*
Page  7

falling within the scope of the Lanham Act are precisely the type excluded from coverage by the terms of the Hartford policy"; Court rejected claim that trademark dilution and trade dress infringement were outside the exclusion; "All of the claims made in the complaints against Superformance – trademark infringement, trade dress infringement, and trademark dilution, as well as unfair competition based on those violations – are varieties of trademark claims" and therefore excluded; Nestle USA, Inc. v. Travelers Casualty & Surety Co. of America (9th Cir. 2001) 2001 U.S.App.LEXIS 5253; Parameter Driven Software, Inc. v. Massachusetts Bay Insurance Co. (6th Cir. 1994) 25 F.3d 332, 337 [underlying complaint alleged false designation of origin, unfair competition, common law trademark infringement and trade name infringement relating to computer programs for business applications; held no coverage; "The insurance policy excludes coverage for advertising offenses 'arising out of . . . infringement of trademark.' All four counts of Personnel's complaint were based upon Parameter's use of the trademark PDS. An insurer in Michigan 'is not required to defend against claims for damage expressly excluded from policy coverage.' [Citation omitted.] We find that the clear language of the policy exclusion for infringement of trademark applies, and agree that Massachusetts Bay had no duty to defend Parameter"].)

This argument is also unavailing in the Noll action. As you have stated in your own letter, an analysis of coverage is dictated by the *facts* alleged, not the labels used on the causes of action. (Citing Scottsdale Insurance Co. v. MV Transport (2005) 36 Cal.4th 643, 654; Atlantic Mutual Insurance Co. v. J. Lamb, Inc. (2002) 100 Cal.App.4th 1017, 1034; Barnett v. Fireman's Fund Insurance Co. (2001) 90 Cal.App.4th 500, 510; American Guarantee & Liability Insurance Co. v. Vista Medical Supply (N.D. Cal. 1988) 699 F.Supp. 787, 793-794.)

The *facts* alleged in the general allegations (which are incorporated into the second cause of action), and in the second cause of action itself, of the Noll Complaint are that (1) plaintiff's suit is "based on confusingly similar marks used on the same and related goods" and is "related to the infringement and misappropriation of plaintiff's intellectual property" (Complaint, at Paragraph Nos. 1 and 5); and (2) the defendants' conduct with respect to the use of the "Street Surfing" logo "constitutes a use in commerce within the United States of a symbol or false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of defendants with plaintiff, or as to the origin, sponsorship, or approval of defendants' products or commercial activities by plaintiff." (Complaint, at Paragraph No. 33.)

Thus, any "unfair competition" alleged by Noll occurred *in the course of* Street Surfing's alleged "infringement of copyright, patent, trademark, trade secret or other intellectual property rights" (Exclusion No. 2.i) and/or "infringement of intellectual property rights or violation of

LEWIS BRISBOIS BISGAARD & SMITH LLP

Joseph S. McMillen, Esq.
GAUNTLETT & ASSOCIATES
Re:     *Rhyn Noll v. Street Surfing, LLC, et al.*
Page  8

laws relating to patents, trademarks, trade dress, trade names, trade secrets and know-how" (the
"Advertising Injury Amendment" endorsement).  As in Industrial Indemnity, supra, and Aloha
Pacific, supra, Noll's claim of "unfair competition" does not stand alone, or stand on different
facts, and Noll *cannot* maintain his action absent trademark infringement or violation of other
intellectual property rights.

There are no *facts* alleged in the Complaint, or which are otherwise reasonably inferable
or known to (or made apparent or presented to) Great American which indicate that Noll is
attempting to allege any particular misconduct on the part of Street Surfing which does not
relate to or arise out of Street Surfing's alleged violation of Noll's intellectual property rights
(including its alleged trademark infringement).  Moreover, nothing in your December 1, 2008
letter (or its enclosures) provides any new or different facts in this regard.

**3.      Other Policy Terms/Exclusions.**

Your December 1st letter also discusses the "prior publication" exclusion, and the similar
or related issue of whether Street Surfing's alleged misconduct occurred during the policy period
of the Great American policies.  (See pages 13-18 of your letter.)

Great American did not cite or rely upon these policy provisions for its denial of coverage.
Therefore, the discussion of these issues is irrelevant.

In addition, your letter argues that the exclusion for "'personal and advertising injury'
caused by or at the direction of the insured with the knowledge that the act would violate the
rights of another and would inflict 'personal and advertising injury'" is not applicable to the Noll
action.  (See pages 18-19 of your letter.)

Again, Great American did not cite or rely upon this exclusion for its denial of coverage.
Therefore, the discussion of this exclusion is irrelevant.

Moreover, your letter argues that the "breach of contract" exclusion is not applicable to
the Noll action.  (See page 19 of your letter.)

Once again, Great American did not cite or rely upon this exclusion for its denial of
coverage.  Therefore, the discussion of this exclusion is irrelevant.

LEWIS BRISBOIS BISGAARD & SMITH LLP

Joseph S. McMillen, Esq.
GAUNTLETT & ASSOCIATES
Re:    *Rhyn Noll v. Street Surfing, LLC, et al.*
Page  9


4.    **Further Handling.**

     The remainder of your letter claims that Great American has improperly denied coverage for Street Surfing in the Noll action, such that Street Surfing may settle with Noll and seek reimbursement from Great American of all sums (both for settlement and defense) incurred by Street Surfing.  (Citing Hamilton v. Maryland Casualty Co. (2002) 27 Cal.4th 718, and Noya v. A.W. Coulter Trucking (2006) 143 Cal.App.4th 838.)  (See pages 19-24 of your letter.)

     For the reasons discussed above, Great American's denial of coverage for Street Surfing in the Noll action was correct and proper.  As such, this principle is inapplicable.  Even the Amato decision cited in your letter (Amato v. Mercury Casualty Co. (1997) 53 Cal.App.4th 825) notes that the above principle is only applicable where an insurer has erred in evaluating the coverage issues raised by an underlying claim.

     Your letter indicates that "the underlying case may settle imminently."  We request that you continue to keep Great American and us apprised of all developments in this regard.  In addition, should you have any additional facts which you wish Great American and us to consider, please provide us with same as soon as possible.

     In the meantime, Great American continues to reserve the right to assert any and all other terms, provisions, conditions and/or exclusion set forth in its policies which may be applicable to the Noll action.  This letter may not be interpreted as a waiver of any defenses or rights which Great American may have with respect to coverage for the Noll action.  All such defenses and/or rights are expressly reserved.

     Should you wish to discuss Great American's coverage position, please do not hesitate to contact us.

Very truly yours,

Michael R. Velladao
Bruce S. Bolger
LEWIS BRISBOIS BISGAARD & SMITH LLP

MRV/BSB:wp


4823-1188-1475.1

LEWIS BRISBOIS BISGAARD & SMITH LLP

Joseph S. McMillen, Esq.
GAUNTLETT & ASSOCIATES
Re:    *Rhyn Noll v. Street Surfing, LLC, et al.*
Page  10


cc:    Michael Cullins (via e-mail only)
       Senior Claims Analyst
       GREAT AMERICAN CUSTOM INSURANCE SERVICES, INC.
       725 S. Figueroa Street, Suite 3400
       Los Angeles, CA  90017

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| STREET SURFING, LLC, a Nevada limited liability company | GREAT AMERICAN E&S INSURANCE COMPANY, a Delaware corporation |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| David A. Gauntlett (SBN 96399); James A. Lowe (SBN 214383) GAUNTLETT & ASSOCIATES 18400 Von Karman, Suite 300, Irvine, CA 92612 - (949) 553-1010 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  
☐ 2 U.S. Government Defendant  
☐ 3 Federal Question (U.S. Government Not a Party)  
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only  
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  
☐ 2 Removed from State Court  
☐ 3 Remanded from Appellate Court  
☐ 4 Reinstated or Reopened  
☐ 5 Transferred from another district (specify):  
☐ 6 Multi-District Litigation  
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ MONEY DEMANDED IN COMPLAINT: $ In excess of $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Duty to Defend and Duty to Settle

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITION | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☒ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | IMMIGRATION | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | ☐ 465 Other Immigration Actions | | |

## SACV11-01027

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)    CIVIL COVER SHEET    Page 1 of 2.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): RhynNoll v. Street Surfing, LLC, et al., U.S. District Court, Central District of California, Case No. SACV08-00617 AG (MLGx)

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☑ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Street Surfing, LLC - Orange County, California | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Great American E&S Insurance Company - States of Ohio and Delaware |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County, California | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date  July 11, 2011

   **Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

## SACV11- 1027 AG (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[ ]  Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[X]  Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ]  Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, CA 92612
Phone: (949) 553-1010; Fax: (949) 553-2050

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STREET SURFING, LLC, a Nevada limited liability company,<br><br>PLAINTIFF(S)<br><br>v.<br><br>GREAT AMERICAN E&S INSURANCE COMPANY, a Delaware corporation,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>SACV11-01027 AG(ANx)<br><br><br>SUMMONS |

TO:   DEFENDANT(S):   GREAT AMERICAN E&S INSURANCE COMPANY

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _David A. Gauntlett, James A. Lowe____, whose address is _GAUNTLETT & ASSOCIATES, 18400 Von Karman, Suite 300, Irvine, CA 92612____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.   You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____JUL 11 2011____

By: _____
      Deputy Clerk

                    (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*