1  David A. Gauntlett (SBN 96399)
   James A. Lowe (SBN 214383)
2  **GAUNTLETT & ASSOCIATES**
   18400 Von Karman, Suite 300
3  Irvine, California  92612
   Telephone:  (949) 553-1010
4  Facsimile:   (949) 553-2050
   info@gauntlettlaw.com
5  jal@gauntlettlaw.com

6  Attorneys for Plaintiff
   Street Surfing, LLC
7

8                  **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

10

11  STREET SURFING, LLC,                    )  Case No.:  SACV 11-01027-AG (ANx)
                                            )
12                      Plaintiff,          )
                                            )  Hon.  Andrew J. Guilford
13          vs.                             )
                                            )  **NOTICE OF APPEAL TO THE**
14  GREAT AMERICAN E&S INSURANCE            )  **UNITED STATES COURT OF**
    COMPANY,                                )  **APPEALS FOR THE NINTH**
15                                          )  **CIRCUIT**
                        Defendant.          )
16                                          )
                                            )
17  _____)

18

19

20

21

22

23

24

25

26

27

28

173192.1-10580-001-2/17/2012                              **Notice of Appeal**

1    NOTICE IS HEREBY GIVEN that Plaintiff Street Surfing, LLC appeals to the

2  United States Court of Appeals for the Ninth Circuit, the judgment in this case (Document

3  No. 45), the Order Granting Defendant Great American E&S Insurance Company's Motion

4  for Summary Judgment (Document No. 44), and from all orders related thereto of the United

5  States District Court for the Central District of California — Southern Division, Honorable

6  Andrew J. Guilford presiding.

7

8  Dated:  February 17, 2012              /s/ David A. Gauntlett

9                                          David A. Gauntlett
                                           James A. Lowe
10                                         GAUNTLETT & ASSOCIATES
                                           18400 Von Karman, Suite 300
11                                         Irvine, California  92612
                                           Telephone:  (949) 553-1010
12                                         Facsimile:   (949) 553-2050
                                           info@gauntlettlaw.com
13                                         jal@gauntlettlaw.com
14
15                                         Attorneys for Plaintiff
                                           Street Surfing, LLC
16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3                               JS-6

4

5

6              UNITED STATES DISTRICT COURT

7          FOR THE CENTRAL DISTRICT OF CALIFORNIA

8

9
    STREET SURFING, LLC,              )    CASE NO. SACV 11-01027
10                                    )
                                      )
11              Plaintiff,            )    [IN CHAMBERS] ORDER GRANTING
                                      )    GREAT AMERICAN E&S
12         v.                         )    INSURANCE COMPANY'S MOTION
                                      )    FOR SUMMARY JUDGMENT;
13                                    )    DENYING STREET SURFING, LLC'S
    GREAT AMERICAN E&S                )    MOTION FOR PARTIAL SUMMARY
14  INSURANCE COMPANY,                )    JUDGMENT; DENYING PLAINTIFF'S
                                      )    MOTION FOR LEAVE TO FILE
15                                    )    ADDITIONAL DECLARATION
                Defendant.            )
16                                    )
    _____

17

18

19         Plaintiff Street Surfing, LLC ("Plaintiff") and Defendant Great American E&S Insurance

20  Company ("Defendant") have both filed motions for summary judgment ("Motions").  Plaintiff's

21  Motion asks the Court to find that Plaintiff's insurance policy required Defendant to defend and

22  settle an intellectual property case against Plaintiff.  Defendant's Motion asks the Court to find

23  that it has no such duties.  Because each Motion requires essentially the same analysis, the Court

24  considers both Motions jointly.

25         After considering all of the arguments and papers submitted, the Court GRANTS

26  Defendant's Motion, and DENIES Plaintiff's Motion.

27

28

## BACKGROUND

Plaintiff is a company that has produced a patented skateboard known as "The Wave" since 2004. (Defendant's Statement of Uncontroverted Facts ("DSUF") ¶ 5.) Defendant was Plaintiff's general liability insurer from August 22, 2005 through September 22, 2007. (Plaintiff's Statement of Uncontroverted Facts ("PSUF") ¶ 2.) The Policy was divided into two periods: from August 22, 2005 extended through September 22, 2006 ("2005 Policy") and from September 22, 2006 through September 22, 2007 ("2006 Policy.") (DSUF ¶¶ 1-2.)

According to Plaintiff's August 16, 2005 insurance application ("Application"), Plaintiff had already been in business for six months under the name Street Surfing LLC when it applied for insurance. (DSUF ¶ 7); (Declaration of Brian DeSoto in Support of Defendant's Motion, "DeSoto Decl.," Ex. C.) Plaintiff's sole product was "the Wave" skateboard, which displayed the Street Surfing logo. (DSUF ¶ 7.) Plaintiff was selling this product to wholesalers, retailers, and consumers, and had earned $600,000 in sales. (DSUF ¶ 7); (DeSoto Decl., Ex. C.) On the Application, Plaintiff listed its website as www.streetsurfing.com. (DSUF ¶ 7.) Plaintiff's President signed the Application, acknowledged that Defendant intended to rely upon the information contained within it, and represented that the information was true and correct. (DSUF ¶ 7.) Along with the Application, Plaintiff included a letter describing its product. (DSUF ¶ 7.) The letter is on Street Surfing letterhead, bears the Street Surfing logo, and again identifies Plaintiff's website as www.streetsurfing.com.

In a sworn statement, Plaintiff's President confirmed that in early 2005, before the inception of the 2005 Policy, Plaintiff learned that Ryhn Noll ("Noll") owned a trademark registration for the "Streetsurfer" mark. (Plaintiff's Objs. to DSUF ¶ 5.) Plaintiff also swore that in early 2005, Plaintiff tried to contact Noll to buy the trademark from him. (Plaintiff's Objs. to DSUF ¶ 5.)

As part of Defendant's underwriting file, it maintained a copy of Plaintiff's www.streetsurfing.com website, captured on September 14, 2006, before the 2006 Policy began. (*See* DeSoto Decl., Ex. D.) The website print-out bears the date and time of capture at the

2

bottom right-hand side of the page. At the top of the page is a large header with the name "The Wave." There are various photos of people using The Wave. On the left-hand side, are buttons titled: "Learn More," "Online Store," "FAQ," "Visual Specs," "Videos," "What's New," and "Contact Us." There are also testimonials from satisfied clients proclaiming: "I'm Addicted!" Finally, at the bottom of the page is a large banner-style footer bearing the name "Street Surfing" and the sub-caption "The ultimate NEW Sport."

On June 3, 2008, Noll filed a case (the "Noll Action") for trademark infringement against Plaintiff. (DSUF ¶ 10); (PSUF ¶ 10.) The Noll Action alleges that Plaintiff's use of the term "Street Surfing" logo infringed upon Noll's trademark "Streetsurfer." (DSUF ¶ 11); (PSUF ¶¶ 13-26.) Noll alleged that Plaintiff had been "offering for sale, selling distributing advertising or exporting" skateboards using the infringing "Street Surfing" logo "since at least on or about January 2005, or such other date as may be later determined." (DSUF ¶ 11); (PSUF ¶ 16.) Noll alleged that he had registered the trademark "Streetsurfer" on February 20, 2001, and had been using the "Streetsurfer" name on his products since at least 1994. (DSUF ¶ 4.)

Plaintiff provided Defendant with notice of the Noll Action in September 2008. (PSUF ¶ 32.) In response, Defendant denied coverage on October 17, 2008. (PSUF ¶ 33.) In December 2009, Plaintiff settled the Noll Action. (PSUF ¶ 27.) Plaintiff now brings this lawsuit, claiming that Defendant had a duty to defend and settle the Noll Action under its 2005 and 2006 Policy ("Policy") covering Plaintiff.

The relevant terms of the Policy are as follows. The Policy establishes that Defendant had a duty to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies" and "the right and duty to defend the insured against any 'suit' seeking those damages." (DSUF ¶ 26); (PSUF ¶ 4.) "Personal and advertising injury" includes "[t]he use of another's advertising idea in your advertisement" or "infringing upon another's copyright, trade dress, or slogan in your 'advertisement.'" (DSUF ¶ 26); (PSUF ¶ 6.) Conversely, the Policy also states that Defendant had "no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply." (DSUF ¶ 26.) Advertisement is

3

defined as a "notice that is broadcast or published to the general public or specific market segments about your goods, products, or services for the purpose of attracting customers or supporters . . . [, including] . . . material placed on the Internet . . . ." (DSUF ¶ 26.)

The Policy and the subsequent Advertising Injury Amendment list three exceptions to coverage. For ease of reference, the exclusions' shorthand name as it appears in the motion papers is included below in brackets.

**Material Published Prior to Policy Period** ["*Prior Publication Exclusion.*"] "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**Infringement Of Copyright, Patent, Trademark or Trade Secret** ["*IP Exclusion.*"] "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

["*AI Amendment.*"] This insurance does not apply to "advertising injury" arising out of any actual or alleged infringement of intellectual property rights or violation of laws relating to patents, trademarks, trade dress, trade names, trade secrets and know-how.

(DSUF ¶¶ 26-27); (PSUF ¶ 9.)

The parties also submitted to the Court various facts related to their prior correspondence regarding Defendant's liability. The Court does not rely on these facts to decide these Motions, and will not repeat them here.

4

## PRELIMINARY MATTERS

The parties submitted voluminous evidence supporting their Motions. While much of the evidence was undisputed, there were also a substantial number of evidentiary objections. On motions with voluminous objections "it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010) (quoting *Doe v. Starbucks, Inc.*, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009)). This is especially true where, as here, "many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence." *Id.* For example, Plaintiff claims that Defendant's Divisional Vice President-Claims lacks foundation to testify that "Great American issued Policy 3291711, with a Policy period of August 22, 2005 to August 22, 2006 ("2005 Policy"), to Street Surfing. A true and correct copy of the 2005 Policy is attached as Exhibit A hereto. Pursuant to Street Surfing's request, Great American extended the expiration of the 2005 Policy to September 22, 2006." (Plaintiff's Objections to DeSoto Declaration ("Plaintiff's DeSoto Objs."), ¶2.) Plaintiff provides no explanation for its basis in claiming that DeSoto lacks the authority to testify about this basic fact.

For those evidentiary rulings that benefit from further explanation, there is a full analysis included in the relevant section of this Order. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118, 1122 (E.D. Cal. 2006) (condemning the prevalent and time-consuming practice of "fil[ing] objections on all conceivable grounds" and concluding that "the court will [only] proceed with any necessary rulings on defendants' evidentiary objections").

## MOTION FOR LEAVE TO FILE AN ADDITIONAL DECLARATION

On November 28, 2011, Plaintiff filed a Motion for Leave to File an Additional Declaration supporting its Motion ("Motion for Leave"). Although all of the briefing had already

concluded, Plaintiff argued that the additional filing was proper because the Court pushed back the hearing for its own reasons of calendar management.

Although the Court found it necessary to continue the hearing, that was not an invitation to file what essentially amounts to a sur-reply. The Court strongly discourages parties from continuing to file additional papers after the briefing has concluded. Plaintiff's additional filing is unfair to Defendant, and unduly burdens the Court. The Court DENIES the Motion for Leave.

The Court is particularly comfortable denying Plaintiff's Motion for Leave because the submitted evidence was ultimately not relevant to the Court's ruling on the Motions. The additional evidence would not have affected the Court's analysis and thus its exclusion does not harm Plaintiff. Without any showing of harm, there is no substantive impact from denying the Motion for Leave.

**LEGAL STANDARD**

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *Id.* at 322-23. If the non-moving party meets this burden,

6

then the motion will be denied.  *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).  Here, with cross-motions for summary judgment, both sides indicate summary judgment is appropriate.

## ANALYSIS

Plaintiff alleges that Defendant is liable for damages related to the Noll Action under two separate provisions of the Policy.  First, Plaintiff argues that the Noll Action was covered under the general liability provision of the Policy because it involved "[t]he use of another's advertising idea in your advertisement."  (DSUF ¶ 26.)  Second, Plaintiff argues that the Noll Action was covered under the exception to the IP Exclusion because it involved "infringing upon another's slogan in your 'advertisement.'"  (DSUF ¶ 26.)

Defendant admits that the general liability provision of the Policy may trigger a duty to defend the Noll action.  But Defendant argues that it is nonetheless relieved of any such liability under the three Policy exclusions.  First, Defendant argues that the Noll Action is barred from coverage under the Prior Publication Exclusion, because it arises out of oral or written publication of material whose first publication took place before the beginning of the policy period.  (DSUF ¶ 26.)  Second, Defendant argues that the Noll Action is barred from coverage under the IP Exclusion because it arises out of trademark infringement—not out of slogan infringement as Plaintiff suggests.  Finally, Defendant argues that the Noll Action is barred from coverage under the AI Amendment because it arises out of out of an "alleged infringement of intellectual property rights or violation of laws relating to . . . trademarks"—again, not out of slogan infringement as Plaintiff suggests.  (DSUF ¶ 26.)

The Court begins its analysis by examining the caselaw surrounding proper interpretation of an insurance policy agreement.  The Court will then examine the exceptions.  If any of the exceptions apply, Defendant's Motion wins, and Plaintiff's Motion must fail.

7

## 1.    SCOPE OF DUTY TO DEFEND

An insurance company such as Defendant is obligated to "defend a suit where the evidence suggests, but does not conclusively establish, that the loss is not covered [until] undisputed facts conclusively show, as a matter of law, that there is no potential for liability." *Montrose v. Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 299 (1993.)  The insurance company must establish that the "complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage*."  *Id.* at 299-300 (citations omitted) (emphasis in original). "[A]nything beyond a bare 'potential' or 'possibility' of coverage'" triggers the company's duty to defend.  *Id.*  Thus, the insured need only show that the underlying claim "may fall within policy coverage [but] the insurer must prove it *cannot*."  *Id.*

To determine whether there is a duty to defend, courts usually begin by "comparing the allegations of the complaint with the terms of the policy."  *Id.* at 295.  But "facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy."  *Id.*  Conversely, "facts extrinsic to the third party complaint may obviate an insurer's defense duty" if those facts establish that "the underlying claim cannot come within the policy coverage by virtue of the scope of the insuring clause or the breadth of an exclusion." *Id.* at 300-301.  Although extrinsic facts may give rise to a defense obligation, an insurer is not required to speculate about "extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at a future date."  *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995).  Instead, an insurer's duty to defend is determined by "the allegations on the face of the third party complaint, and from extrinsic evidence available to it at the time."  *Id.*

## 2.    PRIOR PUBLICATION EXCLUSION

The Court begins its analysis of the Prior Publication Exclusion by comparing the allegations of the Noll complaint with the terms of the Policy.  The Court then takes into

consideration extrinsic evidence available to Defendant at the time. The exclusion bars coverage only if this analysis shows that there is no "conceivable theory" supporting liability. *Montrose*, 6 Cal. 4th at 299-300.

### 2.1 Allegations in the Noll Complaint

The Noll Complaint alleged that Plaintiff had been "offering for sale, selling, distributing advertising, or exporting" skateboards using the infringing "Street Surfing" logo since at least on or about January 2005. (DSUF ¶ 11.) The 2005 Policy did not begin until August 22, 2005. (DSUF ¶ 1.) Thus, the allegations in the Noll Complaint support Defendant's position that the Prior Publication Exclusion barred coverage.

Although Plaintiff is correct that the Noll allegations do not, by themselves, conclusively establish that coverage was barred, Defendant was entitled to rely upon the Complaint as pled. *Montrose*, 6 Cal. 4th at 295. Defendant was not required to speculate about "ways in which the third party claimant might amend its complaint at a future date," but could rely on "the allegations on the face of the third party complaint . . . ." *Gunderson*, 37 Cal. App. 4th at 1114. On its face, the Noll Complaint set the relevant time period as beginning before the Policy period, or earlier.

### 2.2 Extrinsic Evidence

Defendant also had Plaintiff's insurance Application at the time it received notice of the Noll Action. Thus, it was entitled to take this extrinsic evidence into account when determining coverage. Plaintiff's Application stated that Plaintiff had already been in business under the name Street Surfing for six months, selling a skateboard displaying the Street Surfing logo, and making $600,000 in sales. (DSUF ¶ 7.) It also reveals that Plaintiff was operating a website at the time called www.streetsurfing.com. (DSUF ¶ 7.) The Application thus places Plaintiff's entry into the market and use of the Street Surfing logo at approximately February 2005, which roughly conforms with the allegations in the Noll Complaint.

Plaintiff does not dispute these facts.  Instead, Plaintiff argues that these facts do not conclusively establish that Plaintiff was advertising before the Policy period, on the theory that the Prior Publication Exclusion does not apply to non-advertising activity.  Alternatively, Plaintiff claims that at the very least there is no evidence that it was using the Street Surfing logo in its advertising before the Policy period.  (Plaintiff's Objs. to DSUF ¶ 6.)  Thus, Plaintiff would have this Court find that it was an anonymous wholesaler selling a nondescript product, who somehow managed to make over half a million dollars in sales.

The Court disagrees with Plaintiff.  Plaintiff's Application is conclusive evidence that Plaintiff was engaged in pre-Policy advertising using the Street Surfing logo. The Application establishes that Plaintiff was selling products with the Street Surfing logo, resulting in $600,000 in sales.  (DSUF ¶ 26.)  The Policy defines advertising as "broadcast[ing] or publish[ing a notice] to the general public or specific market segments about your goods, products, or services for the purpose of attracting customers or supporters . . . [, including] . . . material placed on the Internet . . . ."  (DSUF ¶ 26.)  The fact that the logo was affixed to the product itself was a way to publish information about Plaintiff's product.  Indeed, the whole point of using a logo is to broadcast information about the product's origin, distinguish the product from competitors' products, and attract future customers or supporters who might like what they see.

The Application also establishes that Plaintiff was using the Street Surfing name and logo in its public website.  The Court finds that operating a website entitled www.streetsurfing.com qualifies as placing "material . . . on the Internet" about Plaintiff's "goods, products, or services for the purpose of attracting customers or supporters . . . ."  (DSUF ¶ 26.)  Importantly, the Application was given *by Plaintiff* to Defendant, under oath, for the express purpose of relying upon it to make its policy determination.  Defendant is now utilizing those documents for that exact purpose.  These facts are distinguishable from those in *Atlantic Mutual Ins. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017 (2002).  Plaintiff relied on this case at oral argument for the proposition that a third-party declaration was not reliable enough to establish that a policy exclusion applied.  But the third-party declaration in *Lamb* was executed by the defendant insurance company's *own* claims adjuster, who stated he had spoken with a representative of the insured, and that

10

representative had confirmed that the infringing activity occurred before the policy began. *Id.* at 1040. In contrast, the Application here was executed by Plaintiff in a sworn statement. Plaintiff cannot challenge the accuracy of documents it previously swore were accurate, nor can Plaintiff now stop Defendant from relying on documents Plaintiff previously asked Defendant to rely upon.

Further, the Court's own review of Plaintiff's website pages leaves no doubt that the website's purpose was to attract potential consumers (whether those customers were individuals or retail stores) to Street Surfing products. (*See* DeSoto Decl., Ex. D.) Before the 2006 Policy period began, that website contained photos, reviews, and an online store. Plaintiff raises evidentiary objections to the use of pages from Street Surfing's website, marked as Exhibit D ("Exhibit D") to the DeSoto Declaration. (Plaintiff's Objs. to DSUF ¶ 9); (Plaintiff's DeSoto Objs., ¶¶ 1-7.) First, Plaintiff objects to DeSoto's Declaration, arguing that his status as Defendant's Divisional Vice President-Claims does not qualify him to testify about Defendant's business records. (Plaintiff's DeSoto Objs. ¶ 1.) Second, Plaintiff also argues that DeSoto may not authenticate Exhibit D because he fails to state how he knew the information came from a web page, who maintained the web page, or why the date on the printout is allegedly accurate. (Plaintiff's Objs. to DSUF ¶ 9 (citing *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1091 n. 75 (C.D. Cal. 2005)). The Court overrules Plaintiff's objections, and finds that DeSoto is qualified to testify about the nature, origin, and source of the website printout because it was maintained as part of Defendant's business records. DeSoto declared that he was personally familiar with the records he was authenticating. (DeSoto Decl. ¶ 4.) He also declared that he could testify based upon the books and records maintained by Defendant in the regular course of business. (*Id.* ¶ 1.) These statements are sufficient to qualify DeSoto to authenticate the records. *See United States v. Ray,* 930 F.2d 1368, 1370 (9th Cir. 1990) (qualified witness does not have to be custodian of records, just "understand the record-keeping system"); *Quinones v. Chase Bank USA, N.A.,* No. 09-cv-2748, 2011 U.S. Dist LEXIS 109450, *34 (S.D. Cal. Sept. 26, 2011) (finding that under *Ray*, a Vice President acting as a company liaison was a qualified witness).

Under these facts, Defendant was justified in concluding that there was no "conceivable theory" under which the Prior Publication Exclusion did not apply. *Montrose v. Chem. Corp.*, 6

Cal. 4th at 299-300. There is no possible ambiguity in the Prior Publication Exception or Policy's definition of "advertising" that affects the analysis at issue here. Also, the Noll Complaint as alleged does not support coverage. Finally, the Application conclusively establishes that the alleged infringement occurred before the Policy period. Because the evidence irrefutably shows Plaintiff's infringing activity began before the Policy period, Defendant had no duty to defend or settle the Noll Action.

### 2.3   Additional and Distinct Post-Policy Infringement

Plaintiff argues that even if the Court finds that it was advertising the Street Surfing logo before the Policy period, it engaged in additional, distinct, acts of infringement after the Policy period that are not barred by the Prior Publication Exclusion. The supposedly new acts of infringement are the Lime Green Wheels for the Wave in January 2006, and the New Ultimate Street Surfer Wheel Set, in January 2007. (Plaintiff's Statement of Genuine Issues and Additional Material Facts In Support of Opposition "PSGI" ¶ 31.) The advertising for the New Ultimate Street Surfer Wheel Set was the first time Plaintiff used the term Street Surfer, as opposed to Street Surfing. (*Id.*)

The question here is whether these new acts of infringement were "substantially similar" to the prior acts, *Kim Seng Co.*, 179 Cal. App. 4th at 1043, or if they contain new matter raising "fresh wrongs" of infringement. *Taco Bell Corp. v. Cont. Cas. Co.,* 388 F.3d 1069, 1072-1076 (7th Cir. 2009). Plaintiff argues, relying on *Kim Seng* and *Taco Bell*, that its post-Policy acts are "sufficiently distinct" from its pre-Policy activity because they (a) used the term Street Surfer, as opposed to Street Surfing, and because they (b) introduced entirely new products. *Kim Seng Co.*, 179 Cal. App. 4th at 1041.

Neither of these post-Policy activities is sufficiently distinct from the prior, pre-Policy activity, to constitute fresh wrongs. The Noll Complaint attacked Plaintiff for using the term Street Surfing, not Street Surfer. Thus, the old term was sufficient to trigger the infringement claim. The change in term did not give rise to any distinct, new areas of infringement. Rather,

12

both terms infringed the exact same thing.  Although Plaintiff's subsequent use of the actual term "Street Surfing" might have solidified Noll's case, it did not substantively change or enlarge it. *See Ringler Assoc. v. Maryland Casualty Co.,* 80 Cal. App. 4th 1165, 1183 (2000) (prior publication exclusion bars coverage of "substantially the same offending material" previously published before the policy).  Likewise, Plaintiff's introduction of new products did not give rise to fresh wrongs.  Rather, the new products infringed in the exact same way that the old products did—by using advertising terms that infringed on the trademark "Street Surfer."  Thus, the introduction of new products is irrelevant to the analysis here.

A brief review of *Kim Seng* and *Taco Bell* illustrates why Plaintiff's activity does not get around the Prior Publication Exclusion.  In *Kim Seng*, the underlying action alleged that plaintiff infringed on the trademark "Que Huong."  *Kim Seng*, 179 Cal. App. 4th at 1042.  The court found that Plaintiff's pre-policy use of the trademark "Que Huong" was "substantially similar" to Plaintiff's post-Policy use of the phrase "Bun Tuoi Hieu Que Huong Brand."  *Id.*   In *Taco Bell*, the court came out the other way and found that the pre-policy advertising involving a "psycho Chihuahua" was sufficiently distinct from the post-policy ads showing the dog's head popping out of a hole in the TV screen at the end of the commercial.   *Taco Bell Corp.,* 388 F.3d at 1073.  The court reasoned that the new commercial contained "new matter that the plaintiff in the liability suit against the insured alleges as fresh wrongs."  *Id.*

This case is analogous to *Kim Seng*, not *Taco Bell.*  As in *Kim Seng*, Plaintiff's additional activities do not add anything new to Noll's claim.  The post-Policy activity infringes the exact same content as the pre-Policy activity.  Unlike the head popping out of the TV in *Taco Bell*, Plaintiff's post-policy activity does not infringe a "fresh" piece of Noll's advertising strategy or trademarks.  Rather, Plaintiff's advertising simply continued to infringe upon the trademark Street Surfer.  The fact that Plaintiff did so with the term Street Surfing, rather than Street Surfer, does not add to, expand, or otherwise change Noll's claim.  Thus, this Court declines to find that this activity established any fresh wrongs here that would waive the Prior Publication Exception.

2.4 Conclusion

The Court finds that the Prior Publication Exception relieved Defendant of any duty to defend Plaintiff in the Noll action. Defendant argues that "because it did not have a duty to defend, [it] cannot have had any duty to settle the *Noll* action." (Defendant's Notice of Motion, 3.) This Court agrees.

In ruling for Defendant, the Court is mindful that it is making two findings regarding two opposing Motions for summary judgment. First, ruling upon Defendant's Motion, the Court finds that Defendant has demonstrated an absence of a genuine issue of material fact regarding the application of the Prior Publication Exception, and Plaintiff has failed to provide sufficient evidence to rebut this showing. *Celotex*, 477 U.S. at 322-23. Indeed, Plaintiff has not provided any evidence to rebut Defendant's showing that Plaintiff was infringing before the Policy period, but instead has attempted to argue that the sworn statements in the Application did not demonstrate advertising activity. This argument is flatly contradicted by the definition in the Policy of "advertisement." Also, Plaintiff's evidence regarding new and distinct forms of post-Policy infringement do not meet its burden. Second, ruling upon Plaintiff's Motion, the Court finds that Defendant has successfully provided sufficient evidence to rebut Plaintiff's contention that the Policy did not establish a duty to defend. *Id.* at 322-23.

Because the Prior Publication Exception applies, the Court does not need to further analyze the other two exceptions. One exception is sufficient for Defendant to prevail.

**DISPOSITION**

The Court DENIES the Motion for Leave. The Court GRANTS Defendant's Motion for Summary Judgment. The Court DENIES Plaintiff's Motion for Partial Summary Judgment. Defendant has already submitted a Proposed Judgment. Upon this Order becoming final, the Court will concurrently sign and submit the Judgment.

14

IT IS SO ORDERED.

1

2    DATED: January 18, 2012

3
                                        _____
4                                              Andrew J. Guilford
                                          United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

**JAN 1 8 2012**

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION - SANTA ANA

| | |
|---|---|
| STREET SURFING, LLC, a Nevada limited liability company, | **CASE NO. SACV11-01027 AG (MLGx)** |
| Plaintiff, | |
| v. | **[~~PROPOSED~~] JUDGMENT** |
| GREAT AMERICAN E&S INSURANCE COMPANY, a Delaware corporation, | |
| Defendants. | |

On October 31, 2011, Defendant Great American E&S Insurance Company's ("Great American") Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment ("Motion"), came on regularly for hearing in Courtroom 10D of the above-entitled Court before the Honorable Andrew J. Guilford.

1   The Court having reviewed and considered the moving papers, the opposition

2   and reply thereto, as well as other matters presented in connection herewith, and

3   oral argument, GRANTED Great American's Motion.  It appearing to the

4   satisfaction of the Court that its ruling on Great American's Motion disposes of

5

6   each and every cause of action alleged by Plaintiff Street Surfing, LLC ("Street

7   Surfing"), and that there are no remaining causes of action alleged by Street Surfing

8   against Great American in this action, and that a final judgment can and should be

9   entered as to Street Surfing's action against Great American, and good cause

10  appearing therefor,

11  ~~IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant~~

12  ~~Great American had no duty to defend Street Surfing in the United States District~~

13  ~~Court for the Central District of California action styled Noll v. Street Surfing, LLC,~~

14

15  ~~Case No. SACV08-00617 ("Noll Action"), or to settle the Noll Action on Street~~

16  ~~Surfing's behalf under Great American Policy No. 3791711, effective August 22,~~

17  ~~2005 to September 22, 2006, or Great American Policy No. 3791711 – 02, effective~~

18  ~~September 22, 2006 to September 22, 2007.~~

19

20      IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant

21  Great American have judgment against Street Surfing, and that Street Surfing take

22  nothing by its Complaint against Great American.

23      IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this is a

24  final and appealable judgment between Plaintiff Street Surfing and Defendant Great

25  American as to all causes of action, claims, defenses, and issues in this action.

26  / / /

27

28

1    IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant

2    Great American recover its costs of suit herein from Street Surfing.

3

4
     DATED: JAN 18, 2012
5
                                        Andrew J. Guilford
6                                       United States District Court Judge
     OC #35172
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    3
                            [PROPOSED] JUDGMENT